1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OFFSHORE GROUP | ) | Case No. 15-12422 (BLS) |
| INVESTMENT LIMITED, et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |

Wilmington, Delaware
January 14, 2016
10:37 a.m.

DISCLOSURE STATEMENT

TRANSCRIPT OF AN ELECTRONIC RECORDING
BEFORE THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the OGIL Debtors | RAY C. SCHROCK, ESQ.<br>RONIT J. BERKOVICH, ESQ.<br>EDWARD MCCARTHY, ESQ.<br>GABRIEL A. MORGAN, ESQ.<br>  WEIL GOTSHAL<br>      - and -<br>DANIEL J. DEFRANCESCHI, ESQ.<br>ZACHARY I. SHAPIRO, ESQ.<br>  RICHARDS LAYTON & FINGER P.A. |
| For Wells Fargo | ANDREW I. SILFEN, ESQ.<br>  ARENT FOX LLP |
| For Ad Hoc Committees | ROBERT J. DEHNEY, ESQ.<br>  MORRIS, NICHOLS, ARSHT & TUNNELL<br>      - and -<br>DENNIS F. DUNNE, ESQ.<br>EVAN FLECK, ESQ.<br>  MILBANK TWEED |



```
 1   APPEARANCES (CONT'D):

 2

     For Su and F3 Capital   RACHEL B. MERSKY, ESQ.
 3                             MONSARK, MERSKY, MCLAUGHLIN
                               AND BRAUDER
 4                                   - and -
                             DEIRDRE BROWN, ESQ.
 5                             HOOVER SLOVACEK

 6   For Petrobras           GIANCLAUDIO FINIZIO, ESQ.
                             NEIL B. GLASSMAN, ESQ.
 7                             BAYARD PA

 8   For U.S. Trustee        TIMOTHY J. FOX, JR., ESQ.
                               U.S. DEPARTMENT OF JUSTICE
 9

     For Royal Bank of       KARA COYLE, ESQ.
10   Canada                    YOUNG CONAWAY
                                   - and -
11                           JAMES KTSANES, ESQ.
                             PETER KNIGHT, ESQ.
12                             LATHAM & WATKINS

13   For DSME                JEREMY RYAN, ESQ.
                             EMERY ABDEL-LATIF, ESQ.
14                             POTTER ANDERSON & CORROON

15                              - - - - -

16   Audio Operator:         DANA MOORE

17   Transcribed by:         WILCOX & FETZER LTD.
                               1330 North King Street
18                             Wilmington, Delaware  19801
                               Ph:  (302) 655-0477
19                             Fax:  (302) 655-0479
                               E-mail:  Depos@wilfet.com
20

21                      Proceedings recorded by electronic

22   sound recording.  Transcript produced by

23   transcriptionist.

24                              - - - - -
```



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

```
1                    THE CLERK:  All rise.

2                    THE COURT:  Please be seated.

3    Mr. Schrock, good morning.

4                    MR. SCHROCK:  Good morning, Your

5    Honor.  Ray Schrock of Weil, Gotshal & Manges on

6    behalf of the Debtors.

7                    I'm here with my partner today, Ronit

8    Berkovich; my colleague, Gabriel Morgan; as well as

9    my co-counsel, Mr. DeFrancheschi.

10                   We would first like to thank the

11   Court and the Office of The United States Trustee

12   for working with us as we move speedily towards

13   confirmation.

14                   And I also want to make a few

15   introductions to the Court.  With us in the

16   courtroom today we have the Debtors' chief

17   administrative officer and their witness in support

18   of confirmation of the disclosure statement,

19   Mr. DeClare.

20                   THE COURT:  Welcome, sir.

21                   MR. SCHROCK:  Also I have Brandon

22   Aebersold.  He is a managing director at Lazard

23   Freres.  He is also a witness in support of

24   confirmation.
```



```
 1                    THE COURT:  Very good.

 2                    MR. SCHROCK:  Seth Bullock, Managing

 3   Director of Alvarez and Marsal.  He is a witness in

 4   support of confirmation.

 5                    THE COURT:  Okay.

 6                    MR. SCHROCK:  Richard Law.  He is a

 7   managing director of Alvarez and Marsal Valuation

 8   Services in support of confirmation.

 9                    James Sullivan, Managing Director of

10   Epic Solutions, the Debtors' solicitation agent.

11                    THE COURT:  Validating agent, right?

12                    MR. SCHROCK:  Yes.  And also on the

13   phone we have Mr. James Eldridge of the firm Maples

14   and Calder from the Cayman Islands.

15                    THE COURT:  Very good.

16                    MR. SCHROCK:  Your Honor, we are

17   pleased to be before you today on the Debtors'

18   hearing to approve our disclosure statement and to

19   confirm the debtors' prepackage plan.

20                    This was a hard-negotiated effort

21   that's been going on for many months.  It has taken

22   the support of multiple stakeholder groups.  And if

23   this restructuring is successful, it will be a

24   testament to the hard work and commitment of
```

1  everyone involved for the benefit of the Debtors and

2  the employees that work at the company.

3           There has been a tremendous amount of

4  work, as Your Honor knows, to get here.  And we've

5  got a plan that has been overwhelmingly supported by

6  98.88 percent to the manage and 100 percent of the

7  revolving lenders in these cases.

8           We have more than sufficient creditor

9  support to confirm the plan.  And we have filed the

10  substantially final form of plan supplement

11  documents.

12           Here is how I would like to proceed

13  for the hearing, Your Honor.

14           THE COURT:  Okay.

15           MR. SCHROCK:  We filed an amended

16  agenda, as you see, last night.  At the last

17  hearing, we argued that Mr. Su did not have

18  standing.  Your Honor reserved a ruling on that.

19           And I think it makes the most sense,

20  Your Honor, because all of these things really go

21  together.  We would like to argue standing and the

22  merits of the plan objection all together.  Because

23  even if Your Honor does find that Mr. Su doesn't

24  have standing, we would also like to, frankly, be



1  heard on the merits.

2           We have got everyone here.  We think

3  that it's appropriate to actually hear everything

4  today.

5           And as to the points on delay, Your

6  Honor, I will handle those just in the context of

7  opening argument.  I can move for the introduction

8  of witnesses.  Some of the witnesses actually go to

9  the affect on the company of any delay, and we can

10  address all those issues in turn.

11           THE COURT:  I will hear from counsel.

12  Ms. Mersky.  Good morning.

13           MS. MERSKY:  Good morning, Your

14  Honor.  Rachel Mersky of Monsark, Mersky, McLaughlin

15  and Brauder on behalf of Nobu Su and F3.

16           As Your Honor should be aware as a

17  result of the filings this morning and the

18  additional reply brief filed last night by the

19  Debtors, there is a pending proceeding in the Cayman

20  Islands which will take place at 3:30 this

21  afternoon, which is the earliest it could be

22  scheduled.

23           The motion for injunction was filed

24  Tuesday.  Yesterday were the opening ceremonies for



1  the opening of the Royal Court.  Because in the

2  interim, in mid-December through mid-January, the

3  court is technically not open, and there is a new

4  opening ceremony.  The matter has been scheduled for

5  3:30.

6              We renew our request for an extension

7  and continuance at least until after the Cayman

8  court has issued its ruling, which will directly

9  affect the Debtors.  To the extent that the Cayman

10  court does enter the injunction, further acts that

11  are required by the plan would not be allowed to be

12  completed under Cayman law, so that the United

13  States courts recognize that order.  Shares could

14  not be transferred.  The process could not continue.

15              If the Cayman court does not enter

16  the injunction, that changes the underlying claims

17  from the standpoint of our clients' request that

18  this matter be continued and that an independent

19  third party on behalf of the Caymans be present to

20  pursue objections.

21              We do believe we have standing.  We

22  are prepared to proceed on standing.  And we

23  request, to the extent that we have an order, I

24  think, consistent with what the Debtors have



```
1    suggested, that we follow the Judge Walsh/Judge

2    Shannon protocol of allowing the objection and then,

3    after the objection, determining if there is

4    standing.  Thank you, Your Honor.

5                    THE COURT:  Mr. Schrock.

6                    MR. SCHROCK:  Yes, Your Honor.  So

7    regarding this hearing for an injunction later

8    today, just a few points:

9                    One, this motion for an injunction

10   was filed after they filed the plan objection later

11   in the day.  It is clearly -- and, Your Honor, I

12   would ask you to see it for what it is -- it is a

13   litigation tactic.

14                   But, importantly, the relief sought

15   in that proceeding, which is basically to prevent

16   the Vantage parent from doing anything in support of

17   the plan, is an apposite to the proceedings before

18   Your Honor today.

19                   We are -- the Debtors have a -- the

20   Vantage parent is not a party to these proceedings,

21   as we have said over and over again.

22                   We have a confirmation hearing for

23   the Debtors.  We are cooperating in the Vantage

24   parent going through a liquidation proceeding
```



1   because -- specifically because we understood the

2   Vantage parent wasn't going to be doing anything in

3   the Caymans and nothing would be required in order

4   to confirm the plan or have injunctive relief.

5                     And so I would make the following

6   suggestion:  We have everyone here.  We have the

7   Debtors ready with overwhelming evidence.  We have

8   arguments about standing.  We would like to --

9                     THE COURT:  Let me ask you a

10  question.

11                    MR. SCHROCK:  Sure.

12                    THE COURT:  And I think I know the

13  answer to this.  But were you to proceed today --

14                    MR. SCHROCK:  Uh-huh.

15                    THE COURT:  -- and put on your case

16  and prevail either on grounds of standing --

17                    MR. SCHROCK:  Uh-huh.

18                    THE COURT:  -- or on the merits as

19  you have proposed, and I were to enter a

20  confirmation order, --

21                    MR. SCHROCK:  Uh-huh.

22                    THE COURT:  -- is it the Debtors'

23  expectation that the plan would go effective this

24  afternoon?



1              MR. SCHROCK:  No, Your Honor.  That's

2    exactly where -- that's exactly where I was going,

3    that if there is going to be an injunction, you

4    know, if there is going to be a hearing, there is --

5    frankly, the hearing can still go forward.

6              And to the extent Your Honor thought

7    there was anything that was raised in that hearing

8    that you needed to hear from the parties, we could

9    deal with it -- we could deal with it at that time.

10             But, Your Honor, respectfully,

11   without getting into issues of, you know, Cayman

12   law, that's not why we're here.  We are here on the

13   Debtors' plan today, and there is nothing required

14   of the parent.

15             THE COURT:  Okay.  Any response?

16   Ms. Brown, welcome back.

17             MS. BROWN:  Thank you, Your Honor.

18   With respect to the injunction, it was intended to

19   be filed as soon as possible.  There is coordination

20   issues with Cayman counsel.

21             THE COURT:  I understand.

22             MS. BROWN:  It was filed on the 12th,

23   I think contemporaneous with the objection, around

24   the same time, even.  We crossed e-mails at that

```
 1   time.
 2                  It's not a litigation tactic.  This
 3   court denied our request for adjournment Thursday.
 4   We had to regroup, figure out some type of
 5   methodology to try to effect the type of issues that
 6   Mr. Su had raised.
 7                  The affidavit of Mr. Eldridge
 8   actually suggested that emergency injunction should
 9   be filed, and this was filed after the injunction
10   was filed.
11                  And so the Debtors -- Mr. Eldridge
12   states that he is Debtors' counsel in his
13   statement -- the debtors have acknowledged that an
14   injunction is an appropriate remedy.
15                  With respect to it being an apposite
16   to the plan, that's incorrect.  Vantage's assets are
17   what are going to make this plan work.  The
18   uncertainty and speculation that will result from
19   having a plan that is approved without having the
20   liquidator as a party and the potential for
21   fraudulent conveyances and preferences, leaves -- I
22   believe the plan -- the plan lacks feasibility on
23   that basis alone.
24                  The Vantage parent is not a party to
```



1    this proceeding, but their property is.  And our

2    position has been that the Court does not have

3    subject matter jurisdiction over non-debtor

4    property.  And the non-debtor property is what's at

5    issue here.

6                    Vantage parent is participating in

7    these proceedings by filing affidavits, which aren't

8    technically affidavits; by filing statements with

9    the Court; by being present on the conference call

10   today; being here at the hearing.

11                   It requires Vantage's approval of the

12   restructuring agreement to proceed with the

13   restructuring agreement.  Vantage has admitted that

14   the restructuring agreement has terms that they

15   could not agree to at the time it was signed.

16                   The affidavit of Mr. Eldridge states,

17   if you were to accept his proposition, that as of

18   November 25th, Vantage had no authority to agree to

19   a voluntary windup.  All parties have been noticed

20   about a voluntary windup.  The disclosure statement

21   is inadequate at this point because it has not been

22   updated.  The public shareholders have not received

23   notices that Vantage has taken the position that

24   they have entered into an agreement that they could

1   not enter into.

2              Vantage is intrinsic in these

3   proceedings.  The liquidation request -- I'm

4   sorry -- the injunction request in the Caymans is

5   broader than just asking Vantage not to act; it's

6   those acting in concert with Vantage, as well, in

7   the supporting affidavit, which is encompanied with

8   that.

9              And I do have an exhibit with the

10  summons and affidavit if the Court would like it.

11              THE COURT:  Sure.

12              MR. BROWN:  I have marked this as

13  Su's Exhibit Number 2.  May I approach, Your Honor?

14              THE COURT:  Sure.  Thank you.

15              MS. BROWN:  So our position is that

16  the injunctive proceeding is directly relevant to

17  this court.

18              In fact, it could save everybody a

19  lot of time and expense if the Cayman court were not

20  to be inclined to grant the injunction.  That would

21  certainly change the posture of F3 Capital and Mr.

22  Su in these proceedings.

23              Thank you, Your Honor.

24              MR. SCHROCK:  Your Honor, I really



1  believe this is designed for confusion.  But let

2  me -- the exhibit that was just handed up to you,

3  Your Honor, an order restraining Vantage Drilling

4  Company from doing or to agreeing to do anything in

5  support of the proposed restructuring presently

6  before the Court.

7              I just want to remind the Court of

8  how the restructuring has been structured.  We have

9  a prepackaged plan, because there is grave risks to

10 the business.  We have uncontroverted evidence in

11 support of that.

12             We have the parent that signed a

13 restructuring support agreement before the

14 proceeding.  We then cooperated with the indentured

15 trustee, counsel who is present in the courtroom

16 today, to foreclose on their collateral, which is

17 the stock of OGIL, and move forward.

18             But, Your Honor, Vantage Drilling

19 Company -- the Vantage Drilling Company is going

20 through a Cayman Islands proceeding.

21             But, again, Your Honor, Vantage

22 Drilling Company's property is not part of this

23 proceeding.  That's the whole point.  They have a

24 Cayman's Island proceeding.  That's going to run its



```
 1    course.
 2                   If they, you know, get an injunction
 3    which, Your Honor, we think is highly speculative
 4    that they even would ever get such relief, we don't
 5    need Vantage Drilling to do anything to confirm the
 6    plan.
 7                   And, Your Honor, these issues of
 8    Cayman law, that is an end run around this court now
 9    to say, "Well, listen.  We should now have a delay
10    in the confirmation hearing.  I'm going to go to the
11    Cayman Islands' proceeding and seek injunctive
12    relief," which we just think --
13                   THE COURT:  Well, I don't know that I
14    would say that it's an end run.  I have seen end
15    runs.
16                   And I guess I would observe two
17    things:  One, I think I largely told them, and you
18    did, too, that if they wanted relief or if they
19    needed relief, they needed to proceed, as it related
20    to these issues, in the Caymans.
21                   MR. SCHROCK:  Right.  Right.
22    Correct.
23                   THE COURT:  And that is what they
24    have done.
```



1               But I'm going to deny the request to

2     adjourn and to move today's hearing to the extent

3     it's predicated upon the proceedings in the Caymans.

4               And from my point of view -- again, I

5     have had now an opportunity since last week to get

6     significant submissions, and I appreciate them, from

7     all of the parties.  So I have got a better handle

8     on the dynamic that is before me.

9               And this is admittedly complex.  And

10    I admit I have observed and, frankly, been candid

11    with parties in this and in other cases that

12    sometimes it can take awhile for the Court to get up

13    to speed with the parties, as you have been living

14    with these transactions for months and months.

15               MR. SCHROCK:  Yes.

16               THE COURT:  But I believe I am up to

17    speed.  And I think that the Debtors'

18    characterization is accurate, that the matter that

19    is before me is the request to confirm a plan that

20    has been filed in this court.

21               There are other proceedings elsewhere

22    that may impact or may not impact whether or not

23    that plan goes effective or how that process plays

24    out, but that is not currently a consideration

 1   before me.  It is certainly within my authority, I

 2   think, to adjourn or to move any hearing that I have

 3   pending if I think prudence requires it.

 4              But, given, as I have said a number

 5   of times, the resources that have been committed and

 6   the statements that I have accepted from the Debtor

 7   and from the Debtors' management, that I have

 8   accepted, frankly, as candid, credible, and at face

 9   value, that there is a measure of business urgency

10   to moving forward with this.  I don't believe that

11   adjournment of this would serve any meaningful

12   purpose.

13              My further observation is that that

14   hearing is scheduled for this afternoon.  So one

15   might say, "Judge, why don't you just bounce this to

16   tomorrow?"

17              Um, if the Debtor were going to go

18   effective in the lobby outside immediately

19   afterwards, which we have seen with sales -- I have

20   closed sales in that lobby for the purpose of

21   frustrating effective appellate review (laughter in

22   courtroom) but the law was a little different then.

23   But that -- I'm being a little bit flip.  But if

24   that were at risk, then I think I would look at this

1  differently.

2              But, from my point of view, the

3  Debtor has commenced the case in this jurisdiction,

4  has properly invoked the jurisdiction of this court,

5  has a plan pending, which is the subject of an

6  objection, and so we have a confirmation hearing

7  today.

8              If other proceedings in another court

9  affect the Debtors' ability to move forward with a

10  plan that I may or may not confirm, so be it.  It's

11  not terribly different -- I mean, it's a little

12  sexier because it's down in the Caymans and all

13  that -- but it's not terribly different from a

14  proceeding that would have -- that would be subject

15  to regulatory approval, PUC or an FAA or any number

16  of different regulatory approvals and proceedings

17  that might even be in a different case concurrently

18  pending.

19              And as a general proposition, I think

20  that the Court's jurisdiction is properly invoked

21  and that we can move forward.

22              But I would make a further

23  observation.  And that is, while I have heard from

24  the parties with respect to how they wish to



```
 1   proceed, I will respectfully disagree.  And I
 2   believe that we should deal with standing as a
 3   threshold issue.
 4              MR. SCHROCK:  Okay.
 5              THE COURT:  And I will give you my
 6   reasons.
 7              As I said at the last hearing, and as
 8   you have probably seen from whatever other
 9   transcripts you have managed to dig up, I have, as I
10   said, generally adopted the practice that Judge
11   Walsh had, which was, I think prudent.  We need to
12   understand the issues that are raised.  Bankruptcy
13   standing is a complex issue.  It is.
14              MR. SCHROCK:  Uh-huh.
15              THE COURT:  You have now researched
16   the heck out of it.  And I have, as well.
17              But so my approach early in
18   proceedings is generally to not promptly move to
19   find that a party does or does not have standing,
20   but to allow the proceeding to move forward.
21              And I think I -- I don't think I
22   could have been clearer, that I was fully reserving
23   this issue and this question and that I saw it as a
24   gating issue, and I think the parties did, as well.
```



 1  Standing is always a gating issue.

 2                  But I now have significant

 3  submissions from the parties.  And I have had an

 4  opportunity to review them.  And I think that I

 5  would benefit from argument with respect to the

 6  standing issue.  And if standing exists and I

 7  conclude that they have standing or that I reserve

 8  that issue, then we would simply move directly into

 9  the hearing and move forward.

10                  But if Mr. Su does not have standing

11  and if F3 does not have standing, then those parties

12  would not be permitted to prosecute their

13  objections.

14                  And, obviously, the issues in the

15  Caymans would still be out there.  And we would be,

16  perhaps, guided by further proceedings in the

17  Caymans.  But the objections, themselves, would

18  likely be stricken on the grounds of standing.

19                  So I think that the most efficient

20  way to proceed, given the moving parts that you have

21  identified, would be to address the question of

22  standing and then determine, frankly, whether or not

23  we have a meaningfully contested confirmation.

24                  MR. SCHROCK:  Okay.  Thanks, Your



1  Honor.

2                    THE COURT:  So moving right along to

3  standing, you may proceed.

4                    MR. SCHROCK:  Your Honor, I would

5  first like to note -- and I do believe this is

6  relevant to standing.

7                    And I would point to Mr. Su's own

8  objection, specifically footnote three of his

9  objection on the front page where, you know, and I

10  read in a quote:  "F3 Capital's and Su's objection

11  to the disclosure statement of plan is not a

12  submission of the jurisdiction or authority of the

13  Bankruptcy Court for the resolution of any matter

14  involving F3 Capital and the Debtors, the Vantage

15  parent company, or the non-debtor affiliates, nor

16  its venue.  All the foregoing rights are expressly

17  reserved and preserved without exception and without

18  any way by filing or by any other participation in

19  these Chapter 11 cases."

20                    Your Honor, I have never seen, read,

21  heard of, dealt with a party filing an objection to

22  seeking to prosecute substantive rights while at the

23  same time saying, "I'm not even subject to the

24  jurisdiction of the Court."



```
 1                    And I guess one, you know, quasi

 2    related, you know, example that you could point to

 3    would probably be the -- you know, in some cases you

 4    will have sovereign nations who will attempt to file

 5    proofs of claim or parties of osert, file proofs of

 6    claim attempt to invoke the jurisdiction of the

 7    Court, try and resolve substantive rights, but then

 8    say, "But I'm not going to submit to the

 9    jurisdiction of the Court."

10                    And what's happened, and as we have

11    stated in our briefs, in those instances the courts

12    have refused to allow those parties to prosecute any

13    rights that they might otherwise have.  And I think

14    it's related to standing.

15                    And I would ask Your Honor to take

16    note that Mr. Su is doing this -- we are confident

17    he is doing this because he has been criminally

18    indicted in Brazil.  He knows that if he doesn't --

19                    MS. BROWN:  Let me object.  This is

20    speculation and hearsay.

21                    THE COURT:  Let's talk about the

22    merits.

23                    MR. SCHROCK:  Okay.  So Your Honor --

24                    THE COURT:  And I want to be clear.
```



```
 1                    MR. SCHROCK:  Yes.
 2                    THE COURT:  For purposes of standing,
 3    I don't care why somebody wants to appear.
 4                    MR. SCHROCK:  Okay.
 5                    THE COURT:  The question is whether
 6    they can appear.  And I recognize -- I have seen the
 7    submissions, and I recognize that these are
 8    contested and perhaps hot-button allegations and
 9    issues.  But right now I have got a party that wants
10    to prosecute an objection.
11                    MR. SCHROCK:  Okay.  Fair enough,
12    Your Honor.
13                    So, Your Honor, I note that Mr. Su
14    has failed to cite one case for the proposition that
15    really is on point that he has standing in these
16    cases.
17                    He has no -- undisputed, he has no
18    claims against the Debtors.  None.  He is a
19    shareholder of a shareholder.
20                    There's cases that we have cited in
21    our briefs that are directly on point on this.  Mr.
22    Su cited a case involving secondary liability for
23    directors and officers.  That is clearly not the
24    case here.  No one is suggesting that Mr. Su is
```



1   secondarily liable for the debts of OGIL.

2                   Mr. Su alleges that he is a fiduciary

3   and being treated differently.  I want to be clear:

4   Mr. Su has never been a director or officer of the

5   Debtors.

6                   The fact that he owned OGIL at one

7   point is not relevant.  The Debtors are not and this

8   plan does not, nor would a plan ever that we were

9   prosecuting, seek to release former owners of a

10  company before the company is ever owned become the

11  Debtors' property.

12                  The Debtors have standard releases

13  for directors and officers, and there are consensual

14  releases in the plan.  The Debtors carved out Mr. Su

15  from the releases.

16                  And, by the way, there was -- this

17  was for the benefit of the Vantage parent and the

18  Vantage parent in granting the party to consent for

19  releases, because there is litigation that the

20  Vantage parent is in litigation with Mr. Su.

21                  So if there was a release that would

22  be granted by the Vantage parent to Mr. Su, that

23  would release claims that are otherwise out there.

24  And so what we always try to do throughout these

1   proceedings is to say we are not going to affect the

2   rights of the Vantage parent.

3               So, Your Honor, paradoxically if the

4   debtors would be doing something to affect the

5   rights of the Vantage parent, which is the very

6   thing that they have painstakingly tried to avoid to

7   do, Mr. Su would then, I think, be able to have a

8   claim.

9               But here we are just granting

10  releases from the Debtors.  There is a consensual

11  release under the plan, consensual release from the

12  plan from a non-debtor parent.  Okay?  So there is

13  not a difference of directors and officers being

14  treated differently; it's just the scope of the

15  release being granted by the non-debtor.

16              Your Honor, Mr. Su pointed to the

17  Texas litigation involving the Debtors.  There is no

18  claim against the Debtors in the Texas litigation.

19  Mr. Su's counsel pointed out at the last hearing

20  that the property of the Debtors is at issue in that

21  proceeding.

22              Mr. Su is seeking money damages in

23  that proceeding.  He is not asking for to reclaim

24  property, to, you know, asserting rights to



1  property.

2              And, Your Honor, if somebody can

3  assert and get standing by simply having a claim

4  that related to the property of the Debtors while

5  seeking money damages against a third party, then,

6  frankly, many people could have standing, in which

7  case you would really see the creditor of creditor

8  cases, I think, go the opposite direction.  Because

9  in those cases you have a creditor that has an

10  interest and an instrument or something else that

11  is, you know, has a contractual relationship, and

12  there is privity of the debtor.  There is still one

13  step removed.

14              Now, Mr. Su asserts in his papers in

15  these Chapter 11 cases that he has a claim against

16  OGIL based on the share purchase agreement.  And,

17  Your Honor, that cannot possibly be true.  Mr. Su

18  signed on behalf of OGIL and personally caused OGIL

19  to enter into the transaction.  He cannot have a

20  claim, a fraud claim against OGIL.  He has never

21  alleged anything close to that in the pleadings.

22              Potential causes of action held by

23  the Debtors are irrelevant.  Mr. Su asserts, without

24  any evidence or factual detail, that certain

1   unspecified debtors may have causes of action that

2   relate to him.  This is speculative, conclusory, and

3   insufficient to form a basis for standing in these

4   cases.

5                    Your Honor, on the form of fiduciary

6   point, we do point, Your Honor, to the OPM Leasing

7   Services case where a former officer lacked

8   standing, and In Re W-H-E-T, which is at 33 B.R.

9   438.  We do think those cases are directly on point.

10                    Mr. Su is incorrect in asserting that

11  he has indemnification claims against the Debtors.

12  He does not.  He was not an officer or director of

13  the Debtors.  The Debtors are not releasing Mr. Su

14  as director, officer, former or otherwise, because

15  he was not a current, a former officer or director.

16                    Mr. Su asserts that OGIL's current

17  former officers are using their position to favor

18  themselves over others and treat some of the

19  situated parties differently.

20                    He is not an officer or director of

21  OGIL, Your Honor.  I don't think that argument holds

22  any weight.  That argument is -- we had trouble

23  understanding it.  We think it's irrelevant.

24                    The plan does not administer



```
 1   non-debtor property.  I think Mr. Su is alleging
 2   that, because we're using non-debtor property in
 3   these cases, that somehow Mr. Su would have
 4   standing.  There is not -- neither property is not
 5   at issue in these cases.  We are only administering
 6   the Debtors' property.
 7                 He pointed to aiding and abetting
 8   illegal actions against the Vantage parent
 9   shareholders.  That, Your Honor, is just a
10   speculative claim that we don't believe merits much
11   of a response in argument.
12                 These Chapter 11 cases do not harm
13   the Vantage parent.  These Chapter 11 cases are the
14   only way for the Vantage parent to get any kind of
15   meaningful recovery.
16                 If we don't save the business, if we
17   don't allow these companies to emerge, we really
18   believe that we are at significant chance -- there
19   is a significant chance we are going to have a
20   problem, that we are going to lose a contract, we're
21   not going to be able to bid, and we're going to have
22   a problem under -- you know, that's going to cause
23   the financing to blow up or, you know, for the
24   company to otherwise have a material adverse affect.
```

1 Mr. Su --

2            THE COURT:  Let me ask you a

3 question.  How much, then, of this analysis --

4            MR. SCHROCK:  Uh-huh.

5            THE COURT:  -- in terms of standing

6 and the affect on the parent is predicated upon the

7 evaluation that I think, as you've said a couple of

8 times, reflects that the lenders are -- or that the

9 company is a billion five away from being solvent?

10           MR. SCHROCK:  Your Honor, I think

11 that it's relevant.  That's where I was going to go

12 next, in that -- and it really has -- the valuation

13 has not been challenged, nor could it be challenged.

14 The, you know, the Vantage -- the Vantage parent

15 equity, I don't think anybody would dispute

16 meaningful, is billions of -- you know, over a

17 billion dollars out of the money.

18           They have intercompany claims that

19 are riding through up to the Vantage parent.

20 Mr. Aebersold is here.

21           But, you know, a shareholder of a

22 non-debtor parent trying to come into the proceeding

23 and, frankly, wreak havoc and otherwise do harm to

24 the business, we would respectfully ask that this



```
 1   court not countenance these tactics, that we be

 2   allowed to move forward expeditiously to

 3   confirmation.  The legal requirements have been met,

 4   but Mr. Su does not have standing in these cases.

 5                   THE COURT:  Okay.  As we did

 6   previously, I would hear from anybody else briefly

 7   on standing.  And then, Ms. Brown, you would have an

 8   opportunity to respond to all comers.  Okay?  Anyone

 9   else to add to the Debtors' observations?  All

10   right.  Very well, Ms. Brown.

11                   MR. BROWN:  Your Honor, again, the

12   tradition of this court, I only objected the one

13   time because what I thought was inappropriate

14   commentary, but there were a lot of other comments,

15   I believe, that were objectionable and

16   mischaracterized the position that Mr. Su has

17   asserted.

18                   With respect to standing, I would

19   first like to start with some of the exhibits.  I

20   have a copy of the share of purchase agreement

21   between Vantage Energy Services, F3, and Offshore

22   Group Investments Limited, which I have marked as

23   Exhibit 1 that I would like to offer.

24                   THE COURT:  Okay.  Sure.
```



```
1                    MS. BROWN:  May I approach?

2                    THE COURT:  Yes.  Great.  I think

3    this is already in the record.  Any objection to

4    admission --

5                    MR. SCHROCK:  No.  No objection.

6                    THE COURT:  -- as part of the record

7    for purposes of determining this.  Very good.

8                    MS. BROWN:  And so, for a practical

9    reason, I will go through some of the documents as

10   we go through the argument, as well.

11                   If you go to the signature lines, the

12   argument of the Debtors has been somewhat circular,

13   that Mr. Su was not a fiduciary of OGIL, was not an

14   officer or director of OGIL, but yet he signed a

15   share purchase agreement for OGIL transferring

16   valuable interest in several valuable vessels which

17   are listed on page one of the share purchase

18   agreement, in Paragraph D, full bakering, Pacific

19   class jack, up-drilling rigs that are being

20   delivered.  The share purchase agreement

21   specifically contemplated that these vessels would

22   be part of the deal.

23                   Mr. Su had to have been a fiduciary

24   of OGIL.  Otherwise, the share purchase agreement
```

1  was void, and those jack-ups should be returned.

2                  For the disputes regarding F3's right

3  to proceed on the share purchase agreement because

4  the agreement was void, F3 being the 100 percent

5  equity owner.  It's a circular argument.

6                  Mr. Su did not argue that he had

7  claims against OGIL directly.  What he argued was

8  that Vantage had made misrepresentations at the

9  inception of that deal, which induced F3 and OGIL

10  into the deal.

11                 Mr. Su only controls F3, so the

12  rights that have been asserted have been on behalf

13  of himself as the 100 percent owner in F3 to pursue

14  claims related to those misrepresentations.

15                The race of these agreements are

16  those vessels.  Now, we are getting into very

17  complicated international legal issues, and I'm not

18  going to assert that I am qualified on the

19  jurisdictions as to where all these vessels are

20  located and maritime rules where they are involved.

21  But maritime rules are inchoate, and they can arise

22  at the time of a breach of a contract.  If there is

23  a finding that the contract was breached, then an

24  inchoate wing can spring up.

```
 1                    There are other liens that could

 2   arise, as well, in the maritime cont -- maritime

 3   liens that could arise unrelated to Mr. Su.

 4                    The disclosure statement was

 5   completely vacant on anything dealing with maritime

 6   liens, which many times spring forward years later

 7   and not at the time of the agreement.

 8                    So I would assume that Mr. Su is, in

 9   fact, a former fiduciary of OGIL.  In the amended

10   plan filed by the Debtors, they specifically

11   excluded Mr. Su in the exculpation clause.  It

12   wasn't in the first plan.  It was only in the second

13   plan where they specifically excluded him and any

14   related affiliates.

15                    We are not sure why that was done,

16   why it wasn't done originally.  It seemed

17   retaliatory.  Other officers and directors or

18   fiduciaries were not excluded from the exculpation

19   clause.  But they made a conscious effort to exclude

20   Mr. Su in the amended plan, which was just filed a

21   couple of days ago.

22                    And so to say that Mr. Su is delaying

23   anything is simply without merit, because we're

24   running by the seat of our pants here trying to keep
```

1    up in what is a very complex international

2    bankruptcy.

3                     I have already handed up the ex parte

4    summons which I would like to offer and introduce as

5    evidence, Exhibit 2 of Mr. Su's.

6                     THE COURT:  Any objection to the

7    summons that was submitted as part of the record?

8                     MR. SCHROCK:  No, Your Honor.

9                     THE COURT:  Very well, it's admitted.

10   Okay.

11                    MS. BROWN:  In the summons there was

12   a copy of the restructuring agreement, which is

13   Exhibit A to the affidavit.

14                    In the restructuring agreement,

15   Vantage agrees to a voluntary windup.  Vantage has

16   acknowledged that that cannot happen.

17                    There is also an agreement that the

18   shares of OGIL that are 100 percent owned by Vantage

19   would be transferred as part of the restructuring

20   agreement.

21                    We have heard from the Debtors that

22   Vantage's property was not at issue.  Yet, that

23   100 percent ownership of OGIL is vested in Vantage.

24                    I am going to hand up what's been



1  marked as Exhibit 7, if I may.

2                    THE COURT:  Yes.  Thank you.

3                    MR. BROWN:  Exhibit 7 is the

4  statement of James Eldridge.  It's referred to as an

5  affidavit, but it's not an affidavit.  I am

6  presenting it for the purposes of statements by a

7  party against interests, not for the truth of the

8  matter of the other allegations set forth therein.

9  I would like to offer Exhibit 7.

10                    THE COURT:  The Debtor has already

11  filed this; right?

12                    MR. HARKIN:  We have, Your Honor.

13  This is Edmund Harkin on behalf of the Debtors.  But

14  we filed it as argumentative statement by counsel,

15  not as statement by the client.  And to come in as

16  hearsay facts as statements by the clients, I think,

17  would be inappropriate.  However, if they are coming

18  in as argument from counsel, we don't have a

19  problem.

20                    MR. BROWN:  Your Honor, a client is

21  bound by his attorney's representation.

22                    THE COURT:  Um, I'll admit it.  I

23  just want to make sure.  The Court practice often

24  has been, in dealing with attorney affidavits and



WILCOX & FETZER LTD
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1   attorney argument, while we don't treat it generally

2   as evidence, when a statement in this context is

3   being submitted by a party in support of its

4   position and its ability to move forward, it seems

5   to me that it's appropriate that it be treated,

6   frankly, as evidence.  And I will so proceed.

7                   MS. BROWN:  Thank you, Your Honor.

8   And I did want a copy of that.  That does not have

9   the jurats that are normally in an affidavit nor

10  follow the sworn declaration rules under the Federal

11  Code.

12                  THE COURT:  True.  But I would also

13  observe -- again, I recognize that Mr. Eldridge is

14  not -- I don't know if he is a barred attorney in

15  the United States, but I think we have generally

16  taken an approach that an attorney is an officer of

17  the court when making submissions and statements to

18  the court and is bound by a host of rules and

19  ethical obligations.

20                  And I would observe that with my

21  limited familiarity with both the British Columbian

22  system as well as the British system, itself, I'm

23  pretty certain that Mr. Eldridge knows where he

24  stands.

```
1              So I will take this on the -- and I'm
2    satisfied, even in the absence of the sworn
3    elements, I'm treating it essentially as sworn
4    testimony.
5              MR. BROWN:  Thank you, Your Honor.
6    And it does state, if you look at page two, that he
7    was instructed by the Debtors' counsel to prepare
8    the affidavit.
9              THE COURT:  I saw that.
10             MS. BROWN:  And that in page three,
11   paragraph four, that he is counsel for the Debtors
12   as well as Vantage.
13             With respect to the affidavit of
14   Mr. Eldridge, he has admitted that the restructuring
15   agreement was not proper for Vantage to have entered
16   into, although structures it in a way that it should
17   be excusable because maybe they didn't know that it
18   violated Cayman law when they entered into the
19   agreement.
20             However, Cayman law, Section 90, is
21   clear.  If I may, Your Honor, hand up the Companies
22   Law 2013 revisions, Exhibit 4 for Su.
23             THE COURT:  Sure.  Thank you.
24             MR. BROWN:  We look to Section 90 of
```



1   the Companies Law.  It states when a company may be

2   wound up voluntarily in 90B by virtue of a special

3   resolution.  Resolution.

4                When you look for the definition of

5   special resolution, you go to Section 60.  Section

6   60 -- all these Ss -- Section 60 provides that a

7   shareholder meeting is required.

8                None of that was done.  The Vantage

9   shareholders were circumvented.  Vantage's counsel

10  and the Debtors' counsel acknowledges that even if

11  there were a question because some case law took an

12  alternative position in 2011, that there was a

13  November 2015 case that states that they don't have

14  that authority.

15               He's pretty clear and strong in his

16  position that a shareholder meeting and special

17  resolution would have been required for a

18  voluntarily windup.  The restructuring --

19               THE COURT:  Let me circle back,

20  though, to where we started last week, which was if,

21  indeed, there are defects in the parent proceeding,

22  either that it wasn't properly commenced or it's not

23  legitimate or that relief is being requested from

24  that court that's not permissible, isn't that a



```
1    question for that court, not for this court?
2                 MR. BROWN:  I would say on those
3    issues.  But the reason I'm referencing this isn't
4    for those issues.
5                 THE COURT:  Okay.
6                 MS. BROWN:  It's because of the
7    duties of the board of directors, the duties they
8    have to shareholders and creditors of Vantage, the
9    common board of directors for the subsidiaries in
10   this case.
11                Mr. DeClare is on both sides.  He is
12   chief administrative officer of OGIL, chief
13   administrative officer of Vantage.  They entered
14   into an agreement that was knowingly contrary to
15   their fiduciary duties to shareholders where they
16   were required to have a shareholder meeting.
17                THE COURT:  Well, but again, it is
18   not unusual for officers or directors to hold
19   corollary positions in related entities.  And
20   individuals in Mr. DeClare's position have a
21   closetful of hats, and they put their subsidiary hat
22   on when they are supposed to put that on, and then
23   they put their parent hat on when they are supposed
24   to have that on.
```

```
 1                    And we operate, as a matter of

 2    Delaware law, at least as a threshold matter, for

 3    the proposition as a basic general corporate issue

 4    that parties will recognize those tensions and act

 5    appropriately and accordingly.

 6                    And so, the issue that's before me, I

 7    think, is there an allegation that Mr. DeClare or

 8    others have acted inappropriately in commencing and

 9    proceeding with this case?  And if, indeed, they

10    have not necessarily taken the steps necessary as

11    parent officers or directors, the remedy for that

12    would rest not with this court but with the Caymans

13    court.

14                    MR. BROWN:  And I appreciate your

15    comments, but I think I'm trying to get to an issue

16    that is a couple of steps removed from where you are

17    currently at.

18                    THE COURT:  Okay.

19                    MR. BROWN:  The issue I'm trying to

20    get to is what the Debtors discharge as meaningless

21    or a silly argument, which I disagree with.

22                    The directors of the Debtors worked

23    with directors of Vantage, even while wearing

24    separate hats, in order to assist them in breaching
```



```
 1   their fiduciary duties to Vantage.
 2                  THE COURT:  Okay.  I understand.  Now
 3   I'm following.
 4                  MS. BROWN:  There is Texas case law
 5   that says that aiding and abetting can be the
 6   basis -- aiding and abetting of fiduciary duty,
 7   aiding and abetting shareholder oppression can be
 8   the basis for a direct claim by a shareholder.  And
 9   I have cited to that case law in our brief.
10                  THE COURT:  I saw it.
11                  MR. BROWN:  Now, I understand those
12   are claims that have not gone forward in their
13   entirety.  We would argue that that breach continues
14   with the Doug Smith affidavits in the winding up
15   proceeding.
16                  We do not -- Doug Smith being a
17   representative of Vantage as well as the Debtors'
18   subsidiaries.  We do not take the position that
19   Wells Fargo is completely a non-creditor.  Any
20   creditor can petition in the proceedings in the
21   Caymans.
22                  We do take the position that Vantage
23   is improperly injecting itself in that proceeding,
24   the Vantage board.
```



1                    THE COURT:  Okay.

2                    MR. BROWN:  I would also go to

3    Mr. Eldridge's affidavit, Exhibit 7.  If you go to

4    the exhibit that's attached, it's the register of

5    members of Offshore Group.

6                    You continually hear that Vantage's

7    property is not at issue in this case.  As of

8    January 6, and presumably as of the date that the

9    statement was actually signed, which I'm

10   double-checking, January 12th, Vantage continued to

11   own 100 percent of the shares of OGIF.  It says that

12   two days ago Vantage owned 100 percent of the OGIL

13   shares.  They have said today that they are not

14   going to take any action to transfer those shares.

15                   That's one of the reasons the

16   injunction is filed, to prevent Maples Corporate

17   Services Limited from transferring those shares.

18                   In the Caymans it's a complicated

19   process, as I understand it, and it's in the

20   Companies Law on how you perfect an interest against

21   shares and what a share meets.  Certificates bearer

22   paper don't represent any property in the Caymans.

23   It requires being listed on the company's register

24   of members.  The same with secured debt.  It has to



1   be on the register of mortgages.  It's a completely

2   different process than we have.

3                    At this time, according to the

4   Debtors' own pleadings, Vantage owns 100 percent of

5   OGIL.  That's non-debtor property which the debt

6   court does not have subject matter jurisdiction

7   over.

8                    This is not -- we kept hearing that

9   the Debtors want to cast this as an innkeeper's

10  case, so a shareholder of a -- you know, a

11  shareholder of a shareholder or a creditor of a

12  creditor doesn't have a right in this case.

13                   I have tried to highlight some of the

14  issues where that's not what's really going on here.

15  It's a much more complicated scenario.

16                   If you look at the summons, the

17  affidavit exhibits which the Court has seen

18  before -- it's the arbitration demand, the response,

19  the counterclaim -- those all deal with the

20  subsidiaries' assets, the race.

21                   Now, while I did not cite this case

22  in our briefing, there is standing allowed based on

23  a right against race, and that's in the case of In

24  James Wilson Associates 965 F.2d 160, pin site 169.



```
 1   It's a 1992 case.  They determined that anyone who

 2   has a --

 3                  THE COURT:  What's the jurisdiction

 4   in that case?

 5                  MR. BROWN:  Seventh Circuit.

 6                  THE COURT:  Okay.

 7                  MR. BROWN:  They stated that

 8   anyone -- everyone that has claim for a race has a

 9   right to be heard before the race is disposed of,

10   since that disposition will extinguish all such

11   claims.

12                  Mr. Su's voluminous litigation

13   between Vantage and Su relates to the share purchase

14   agreement, how it got into arbitration.  Vantage

15   agreed that the arbitration could go forward based

16   on the share purchase agreement.  That was related

17   to the transfer of the OGIL shares, which the Debtor

18   today wants to take from Vantage, which it currently

19   owns.

20                  This is a transparent effort to

21   hinder and delay Mr. Su's efforts to recover against

22   Vantage for what he believes to be

23   misrepresentations.

24                  It also hinders his abilities on a
```



```
 1    promissory note which I will introduce as note --
 2    I'm sorry -- Su Exhibit 5.
 3                    THE COURT:  Okay.
 4                    MR. BROWN:  If I may approach.
 5                    THE COURT:  Sure.  Thank you.
 6                    MR. BROWN:  The promissory note is
 7    for a face value of $60 million.  It is a separate
 8    agreement from the share purchase agreement.  It
 9    happens later in time, but it also specifically
10    relates to the race that the Debtors are trying to
11    administer in the bankruptcy.
12                    If you look at Paragraph 8, Page 2,
13    it refers to the Platinum Explorer, another valuable
14    vessel.
15                    This note is also subject to the
16    proceedings where Vantage has sought a constructive
17    trust over it to prevent Mr. Su from doing anything
18    to execute on it.  The same with the shares that he
19    has in Vantage.  As they showed you in some of the
20    pleadings, they were successful with a temporary
21    injunction which is on appeal with the Texas Supreme
22    Court and has not been decided yet.
23                    But, again, we have an issue where
24    assets that Mr. Su has a direct related claim to,
```



 1   based on litigation claims that are currently

 2   pending, as well as potential other claims that

 3   could arise if the Court grants him power, which

 4   would hinder and delay his collection efforts

 5   against Vantage.

 6                 The argument that this is all

 7   meaningless, Your Honor, because the superior

 8   creditors, they are going to come first before

 9   anybody else, isn't supported.

10                 There is nothing in the disclosure

11   statement, nothing in the plan.  And maybe there

12   will be evidence today.  But nothing has shown that

13   they have convinced, that they have done what they

14   needed to do to perfect their interests in the

15   Caymans.  And that's a different issue than here.

16                 I did check.  A UCC was filed in the

17   U.S. in Texas, but that UCC is unclear.  And I think

18   I could challenge just that UCC based on Texas law.

19   But we don't have anything showing that they

20   perfected their interests under Cayman law as to the

21   shares of OGIL or to other assets.

22                 The only party that we see even

23   coming up as potential secured creditor is Wells

24   Fargo.  Yet, we have ten secured creditors that are

1    running today.  And Wells Fargo has shown on the

2    Maple Corporate Services Limited company register

3    that's attached to Mr. Su's -- I'm sorry --

4    Mr. Eldridge's statement.

5              There has been no briefing to the

6    Court on what's required to perfect an interest by

7    the debtors under Cayman law.  I will be quite

8    honest.  I am learning this as we go along, and I

9    just learned it myself over probably the last 12

10   hours.

11             But we knew at the outset that the

12   disclosure statement was inadequate to show that

13   there was anything to support the security interest

14   had been perfected.

15             The Debtors said that Mr. Su did not

16   cite any case law supporting standing.  We relied on

17   the same cases that the Debtors relied on.  We just

18   have a different interpretation or a different

19   stroke on it.  And that was Global Industrial

20   Technologies, which is kind of a watershed case.

21             THE COURT:  It is.

22             MR. BROWN:  We also distinguished the

23   issues and facts in this case from what the Court

24   did in the Natrol case, or the Three Leaf case, I



1  believe it's also referred to.

2  　　　　　THE COURT:  Yeah.

3  　　　　　MR. BROWN:  And this is a much

4  different case.  We understand the Court's concern

5  with being expedient, and we appreciate that.  We

6  understand that.

7  　　　　　But there is also the due process,

8  the transparency, and the disclosure concerns that

9  we don't have in this case, that you didn't have in

10  your other cases.  We don't have a disclosure -- we

11  don't a have a statement of financial affairs.  We

12  don't have schedules.  We didn't have any

13  continuances.  In Natrol there were continuances.

14  There were time for people to get up to speed after

15  the initial hearings.  There hasn't been any in this

16  case.

17  　　　　　Mr. Su, while being the chief party

18  that complained about the timing, was not the only.

19  Dave Rue also made an appearance at the last hearing

20  and raised some concerns, and I think were probably

21  cured by talking with the Debtors over those

22  concerns, but was concerned about the timing.

23  　　　　　THE COURT:  That is Mr. Ryan's

24  clients at the last hearing; right?



```
 1                    MS. BROWN:  I don't remember the
 2   counsel's name.  It's one of the shipbuilders.
 3                    MR. SCHROCK:  That is correct, Your
 4   Honor.
 5                    THE COURT:  Okay.
 6                    MR. BROWN:  One of the -- I'm trying
 7   not to duplicate the argument.
 8                    THE COURT:  No, that's fine.  Take
 9   your time.
10                    MR. BROWN:  Your Honor, in summary
11   form, let me make sure I have got all my exhibits
12   in.
13                    THE COURT:  Sure.
14                    MR. BROWN:  Exhibit 1, I believe, was
15   offered and admitted?
16                    THE COURT:  I think all the exhibits
17   have been admitted without objection.  Is that
18   correct?
19                    MR. SCHROCK:  Yes, Your Honor.
20                    THE COURT:  Okay.
21                    MR. BROWN:  Your Honor, if I may then
22   just offer Exhibit 3, which is Eldridge's first
23   supporting statement.
24                    THE COURT:  Um, right, because you
```



| | |
|---|---|
| 1 | have got the second one, which was Exhibit 7; right? |
| 2 | MR. BROWN:  Yes, Your Honor. |
| 3 | THE COURT:  I'll take that.  This |
| 4 | was, likewise, filed with the court; right? |
| 5 | Mr. Schrock, with the Court's rulings on |
| 6 | Mr. Eldridge's prior case presumably applying to |
| 7 | this, any objection to its admission? |
| 8 | MR. SCHROCK:  No, Your Honor. |
| 9 | THE COURT:  Very well.  It's |
| 10 | admitted. |
| 11 | MR. BROWN:  Thank you, Your Honor. |
| 12 | And the final exhibit I have is the winding up |
| 13 | petition, which I have listed as Exhibit 6. |
| 14 | THE COURT:  Okay. |
| 15 | MR. BROWN:  This is the winding up |
| 16 | petition in the (inaudible) -- |
| 17 | THE COURT:  Was this what was filed |
| 18 | by Wells Fargo?  Correct? |
| 19 | MR. BROWN:  Yes, Your Honor. |
| 20 | THE COURT:  The humble petition. |
| 21 | MR. BROWN:  (Laughter) |
| 22 | THE COURT:  You don't get a lot of |
| 23 | humility in this court.  (Laughter) |
| 24 | MR. BROWN:  I also filed with the |



1    Court the Doug Smith declaration that supported the

2    winding up petition.  And so I'll just reference

3    that also and ask the Court to take official notice

4    of that.

5              THE COURT:  So noted.  I have seen

6    it, and it's of record.

7              MR. BROWN:  Now to go into a

8    conclusion.

9              We believe that the plan is

10   predicated on using assets of Vantage which are

11   subject to potential preference and fraudulent

12   conveyance claims in the liquidation proceeding in

13   the Caymans, which is a proceeding that the Debtors

14   initially agreed to without authority, at the

15   detriment to shareholders' rights.

16              The shareholders have a right to have

17   a shareholder meeting.  There has not been a

18   shareholder meeting of the Debtors for over a year,

19   and there has been a concerted effort to not have a

20   shareholder meeting.

21              And the same part is that both the

22   Debtors and Vantage have the authority to call that

23   shareholder meeting and have not done so.  They did

24   not do so after they learned of the inaccuracies in

1    the restructuring agreement that was filed.  They

2    have not filed any updated SEC reports to let

3    shareholders know of the incorrect statements in the

4    restructuring agreement.  They haven't amended the

5    restructuring agreement to cure those problems.

6                    Shareholders are completely, other

7    than Su and those that are more sophisticated,

8    uninformed that these issues are transpiring here

9    based on the typical ways that shareholders would

10   look for information.  I believe that could

11   potentially arise to a regulation FE issue, as well.

12                   This was orchestrated, in our belief,

13   to have some procedural impropriety, having a Cayman

14   debtor which was supposed to file, then last minute

15   having Wells Fargo filing without any explanation to

16   anybody, even though everybody knew what the problem

17   was except for those that don't have sophisticated

18   attorneys with cross-national experience.

19                   It's not that Wells couldn't file the

20   liquidation; it was that Wells was doing so with

21   the -- not in tacit support, which was written, not

22   the tacit support of Vantage and the Debtors, but

23   the active engagement trying to circumvent the rules

24   in the Caymans to have a shareholder vote.

```
 1                    Because of the timing and the
 2    difficulty in having a certain plan without the
 3    liquidator being involved, and because Mr. Su is
 4    being personally treated differently than other
 5    entities and has potential rights to the race that
 6    is trying to be administered by the Debtors, we
 7    believe Su and F3 have standing based on the
 8    documents that were provided.  And this court has
 9    the right under 105 to grant equitable standing.
10                    And so we would argue that the Court
11    should grant equitable standing.  Su is not
12    attempting to defy this court's jurisdiction.  On
13    the jurisdictional arguments there is precedent for
14    the position we took in footnote three.
15                    THE COURT:  But let me ask you,
16    because you have touched on this issue about
17    equitable standing and the idea that there is a
18    party that ought to be here that is not, that does
19    not have a voice.
20                    And I think Mr. Schrock stated pretty
21    bluntly the Debtors' position and assessment.
22                    How is it that you could appear and
23    either have standing, right, or be granted standing
24    in order to address the gap that you have
```

 1   identified, and yet not subject yourself to the

 2   jurisdiction of this court?

 3                    MR. BROWN:  Your Honor, under the

 4   Baha Mar case where the arguments are that this is

 5   non-debtor property, there isn't subject matter

 6   jurisdiction, that it really should be dismissed

 7   versus a plan being confirmed, there is authority

 8   under Rule 12B that the parties would have the

 9   right --

10                    THE COURT:  This is in Baha Mar.  I

11   mean, in Baha Mar, you know, there is no allegation

12   that I don't have a big U.S. debtor with lots of

13   assets and lots of liabilities in front of me being

14   reorganized.

15                    Um, what was in front of Judge

16   Carey -- and, again, I only know what I read in the

17   Wall Street Journal -- but was a big project in

18   proceedings in the Bahamas.  I think it was the

19   largest construction project like in the Western

20   Hemisphere.  Under the jurisdiction and review of a

21   court there, proceedings filed here.  And, you know,

22   again, these -- and you have said it a couple times,

23   and I think you're right:  These arrangements are

24   inevitably enormously complicated.  Now we've got

1   U.S. entities, we've got foreign entities, et

2   cetera.

3                   But this is different.  This is

4   almost a reverse of Baha Mar.  Baha Mar had really

5   holding companies that were the U.S. entities, and

6   all the activity and all the action and all the

7   assets were in these subsidiaries.

8                   And if I don't have that right, then

9   forgive me.  But I think the reverse here is I have

10  got a whole -- I think what the Debtor is going to

11  say is we have a holding company in the Caymans

12  where there is jurisdiction -- that's where that

13  entity is; but if you want to know all the stuff,

14  Judge Shannon, that you like to fool around with by

15  calling all the ships and all the money and all the

16  stuff, it's all in front of you.

17                  MR. BROWN:  Your Honor, if I may.

18                  THE COURT:  So you didn't bring me a

19  ship?  (Laughter)

20                  MR. BROWN:  I could have if I, you

21  know, if I had a chance to fly to Taiwan, I'd

22  brought you a ship.

23                  THE COURT:  So you should think of

24  it.  (Laughter)



```
 1              MR. BROWN:  We'll do it next time,
 2  Your Honor.  I'm happy to oblige.
 3         (Laughter)
 4              THE COURT:  I got a picture.
 5              MR. BROWN:  I have pictures of ships.
 6  I do.  I do have pictures of ships.  So that means
 7  we win; right?  (Laughter)
 8              THE COURT:  They gave me a picture of
 9  a ship, too.  So, on that level, you all are at a
10  draw.
11              MR. BROWN:  Okay.  Your Honor, I
12  believe I'm at Exhibit 8, so I would like to hand up
13  what's Exhibit 8, which is the SEC Form 8K for
14  September 29, 2015.
15              THE COURT:  Very good.
16              MR. BROWN:  And I got a copy for the
17  Debtors, too.
18              THE COURT:  Thank you.
19              MR. BROWN:  The activity of the
20  Debtors was carried out for Vantage.  The activities
21  of the Debtors, as we heard at the hearing on the
22  January 7th hearing, they had to transfer contracts
23  from the Debtor to the subsidiaries because all the
24  employment was going through the Debtors.  The
```



1   officers were paid by Vantage -- I'm sorry.  All the

2   agreements were going through Vantage.  The officers

3   were paid through Vantage.

4                The headquarters of all these

5   operations were in Houston, where all the

6   administrative service were occurring through

7   Vantage.

8                If you go to -- I would like to offer

9   Exhibit 8 as an exhibit, Your Honor.

10               THE COURT:  Mr. Schrock, any

11  objection.

12               MR. SCHROCK:  No, Your Honor.

13               THE COURT:  Okay.

14               MR. BROWN:  If you go to page four of

15  14 -- and just for context, this is basically a

16  pitch piece for restructuring Vantage that was made

17  to Deutsche Bank Leveraged Finance Conf -- at the

18  Deutsche Bank Leveraged Finance Conference in

19  Scottsdale, Arizona.

20               When you go to page four, it states

21  number -- first line, "Vantage's liquidity position

22  is strong at about 250 million."  This is

23  September 29, 2015.  If we read the lining-up

24  petition, and if we read Doug Smith's affidavit,



1    Vantage has less than 10 million, I believe.

2                    So there is an issue right there

3    showing that Vantage Drilling Company had the money

4    in Vantage Drilling Company.

5                    Exhibit 4, if you look at this Power

6    Point, the only part of this is Vantage Drilling

7    Company.  Nothing about OGIL, no Vantage Deepwater.

8    It's all Vantage Drilling Company.

9                    It states that they have retired

10   about 400 million in debt.  They talk that they have

11   already hired Lazard.  So this isn't just something

12   the Debtors put together.  They already have

13   sophisticated restructuring folks.

14                   They also mention the restructuring

15   attorneys.  And this is what shareholders relied on.

16   This is what the public relies on.  This is what's

17   filed with the SEC.

18                   Then with respect to the jurisdiction

19   issue:  The relief we requested was quite limited

20   and, I believe, fell within the footnote.  We were

21   not asking for a final adjudication by this court on

22   any issues.

23                   What we asked for was, first, an

24   adjournment, and we would still reiterate that



1   request.  Second, we requested that the Court deny

2   the confirmation of the plan, which is not a final

3   order.  Granting confirmation is a final order.

4                    THE COURT:  Uh-huh.

5                    MR. BROWN:  Denying would allow for

6   additional efforts.  The Debtors have presented

7   nothing to show that the liquidator could not enter

8   into a deal that would save the companies also.

9                    Wells Fargo is working with the

10  liquidators.  They are appointing the liquidators.

11  There is no evidence to support that the liquidators

12  couldn't do a deal.

13                   It would have been an independent

14  deal with people with independent fiduciary duties

15  who don't wear multiple hats.

16                   Now, Mr. Eldridge's statement also

17  admitted that under Cayman law the liquidator of

18  Vantage could take control of all of the

19  subsidiaries.

20                   It is shown that today, or at least

21  as of January 12th, a subsidiary of Vantage is still

22  OGIL.  The liquidator would have a right to take

23  control of OGIL until those shares are transferred.

24  For these reasons, Your Honor, we believe that Mr.

1    Su has standing.

2                    THE COURT:  Okay.  Thank you.

3    Mr. Schrock?  Mr. Silfen, good to see you.  Welcome.

4    For Wells Fargo; correct?

5                    MR. SILFEN:  Yes, Your Honor.  Good

6    morning, Your Honor.  Andrew Silfen with Arent Fox,

7    counsel for Wells Fargo, in its capacity in what's

8    been referred to as the pre-petition secured

9    collateral agents and secured notes indentured

10   trustee.

11                    We have not taken a position in the

12   standing issue, and I did not want to interrupt

13   counsel.  But much of what was said was a mix of

14   testimony and argument.  And we have concern, to the

15   extent it is considered testimony, particularly as

16   it relates to any allegations or innuendoes or facts

17   with respect to Wells.

18                    So I would ask that either, to the

19   extent that it was testimony, that it be stricken

20   or, at the very least, a recognition that it's not

21   being offered as testimony just to illustrate the

22   point, the most recent at the end it was mentioned

23   that we were working with the liquidators in the

24   Cayman Islands.  There is no testimony or anything

```
 1   in evidence that we are working.  And I just use
 2   that to illustrate.
 3                   THE COURT:  So noted.  I'm certainly
 4   not going to strike anything.  I understand
 5   precisely the context in which I'm receiving
 6   argument and information from counsel.
 7                   I have admitted into evidence a
 8   number of documents.  I don't have a witness on the
 9   stand.  And I'm under no illusions that everybody is
10   on the same page or consenting to the position of
11   the other parties.
12                   So I think I can hear and consider
13   and evaluate.  And while I hear you loud and clear
14   on your concerns, I think that they are adequately
15   addressed by at least the Court's understanding of
16   the posture of the proceedings before me.
17                   MR. SILFEN:  Okay.  Thank you, Your
18   Honor.
19                   MR. BROWN:  Your Honor, if I may
20   apologize, I (inaudible) they had named the
21   liquidator.
22                   THE COURT:  No apology necessary.
23   Mr. Dunne.
24                   MR. DUNNE:  Good morning, Your Honor.
```



```
 1   Dennis Dunne from Milbank Tweed on behalf of the ad
 2   hoc committee of secured lenders.
 3                   I just want to make two points.  I'm
 4   not going to revisit the arguments that Mr. Schrock
 5   made.
 6                   I think, ultimately, this is an
 7   example of why stockholders of stockholders do not
 8   have standing in the underlying Debtors' case.  And
 9   it's crystal clear when you talk about there are
10   some allegations about my clients not being secured
11   creditors in the Vantage parent case in the Caymans.
12                   And let's just go through that for a
13   minute, because it shows how attenuated, how remote
14   those comments are to Mr. Su ever getting a recovery
15   or being affected by the arguments that they are
16   making.
17                   First of all, that's not an issue for
18   this court.  Whether or not our equity pledges are
19   properly perfected in the Vantage parent is not
20   anything we are asking this court to opine on or
21   find.
22                   It also doesn't matter.  Why?  We are
23   secured in the OGIL cases.  And, as Mr. Schrock
24   said, the value is woefully insufficient to go above
```

1   that level by more than a billion dollars.

2                   But the fact of whether it was

3   secured or not doesn't matter.  Let's assume we

4   weren't secured in these cases.  We are, and no one

5   has disputed it.  But, hypothetically, let's assume

6   we weren't secured.  We'd still have our unsecured

7   claims here that would mop up all the value of OGIL.

8                   Let's take it further and assume we

9   had no claims in OGIL.  We would then have the

10  equity pledge and the value bumped -- drove up to

11  Vantage parent, we would capture it through the

12  equity pledge.

13                  Let's assume for a second that that

14  equity pledge was not properly perfected.  We would

15  then still track that value as a result of our

16  unsecured parent claim, all before Mr. Su could

17  receive any recovery.

18                  That is how far afield we have gotten

19  with respect to this standing argument.  And that's

20  all I'm going to say today, Your Honor.

21                  THE COURT:  I will let her respond.

22  And then, Mr. Schrock, you can get the last word.

23                  MR. SCHROCK:  Sure.

24                  THE COURT:  Ms. Brown?



 1              MR. BROWN:  There was just some

 2  statements of law in that statement.  It does matter

 3  if clients are secured or not for the voting

 4  purposes.

 5              And with respect to OGIL, I raised

 6  the question of whether the security interests were

 7  valid.  Not as to Vantage.  I agree.  In this

 8  proceeding --

 9              THE COURT:  No.  I think you did

10  raise them as to Vantage.

11              MR. BROWN:  If I did, then I

12  misspoke.  In our pleading, we raise them as to

13  OGIL.

14              THE COURT:  You said that -- right.

15  What you said is that you saw that there were UCC-1s

16  filed, but they are in Texas, and it might be that

17  you could find some holes to poke in the UCC.

18              MR. BROWN:  Well, let me clarify.

19  OGIL is a Cayman company.  OGIL has to follow the

20  same rules as Vantage does as to security interests.

21  They have to follow the same Cayman procedures,

22  since they have a security interest in the shares of

23  OGIL.

24              We have not seen anything to support



```
 1   that those creditors have a security interest in the

 2   shares of OGIL.

 3                   THE COURT:  Okay.  I understand the

 4   argument.

 5                   MR. BROWN:  And that's why I pointed

 6   to the registered members of OGIL, not the

 7   registered members of Vantage.  So just to make that

 8   clear.

 9                   If there were unsecured claims,

10   you're right; it might have a very basic unsecured

11   claim.  But the unsecured claims did not vote in on

12   this plan.  They were deemed as unimpaired, although

13   we objected on that ground saying that they were

14   impaired because post-petition interest was not

15   being paid, but there is an impairment.

16                   But unsecured creditors were not even

17   allowed to vote on the plan.  They were structured

18   in a class that they weren't allowed.

19                   And if they were unsecured creditors,

20   they would not necessarily stand in front of Mr. Su,

21   because unsecured creditors only get what's

22   available for distribution to unsecured creditors.

23                   Mr. Su has claims against the assets

24   that hasn't been transferred yet.  They may end up
```



```
 1   getting less than Mr. Su, because Vantage owns

 2   100 percent of OGIL.

 3                     THE COURT:  Okay.  Mr. Schrock?  Oh.

 4   Yes, sir.

 5                     MR. KTSANES:  Yes.  I'll be very

 6   brief.

 7                     THE COURT:  Everybody says that.

 8   (Laughter)

 9                     MR. KTSANES:  James Ktsanes of Latham

10   and Watkins on behalf of World Bank of Canada, who

11   is the administrative agent under the revolving

12   credit facility.

13                     THE COURT:  Yes, sir.

14                     MR. KTSANES:  Just very briefly.

15   Wells Fargo is our collateral agent as well as the

16   collateral agent for both the broadened purpose of

17   the term loan facility and the notes.

18                     And I just wanted to make crystal

19   clear that our liens and claims are secured, and the

20   final cash collateral order entered last week proved

21   all that, that we are properly perfected on all of

22   our claims.  And that's all I wanted to say.

23                     THE COURT:  Mr. Schrock?

24                     MR. SCHROCK:  And, again, Your Honor
```



 1   for the record, Ray Schrock, Weil Gotshal, on behalf

 2   of the Debtors.

 3              Mr. Ktsanes stole my thunder on the

 4   cash collateral order, but that's okay.

 5              Your Honor, let me try and hit -- you

 6   know, there's a lot of points here, but let me try

 7   and hit the big ones.

 8              The share purchase agreement, which

 9   also was attached to our standing brief -- and we

10   have the amendments actually attached to the

11   standing brief, as well -- is indicative of one

12   fact:  Vantage bought the OGIL shares from Mr. Su.

13   We are not disputing that.

14              There is a Texas -- he is in Texas

15   litigation where he has sued non-debtor parties

16   about the share purchase agreement.  There is

17   nothing in the litigation at all that raises a claim

18   against the Debtor that says, you know, he is

19   seeking money damages to raise a claim.

20              That's insufficient when you have a

21   claim against a non-debtor and simply because the

22   allegations involve the Debtors' property.  And,

23   again, we're talking about the shares of OGIL which

24   are owned by Vantage.  It's not Debtor property, in

1  any event.  It's insufficient to grant them standing

2  here.

3               On the changes to the plan, let me

4  get to the exculpation point for a moment, because

5  there seems to be some confusion about that:  There

6  is a definition in the plan as filed, "release to

7  parties."  Okay?  It had substantively the same

8  releases that we are talking about in the amended

9  plan.

10              What we did is took out that from

11 that definition, created a new definition of the

12 exculpation parties, which basically mirrors it.

13 But if Your Honor, we walk you through the terms of

14 the plan, it's the same.  And there is not a

15 substantive change there, you know.  And these are

16 changes that when, you know, as you do, you work

17 through changes with the U.S. Trustee.

18              Your Honor, regarding the comments

19 about perfection, there is a final cash collateral

20 order in these cases.  We have stipulated to the

21 validity of the liens.  We, of course, have done our

22 homework in the Caymans as well as under New York

23 law where we have two and a half billion dollars of

24 debt governed by New York law.  There are valid

```
 1   share pledges and in favor of the collateral agent

 2   for the benefit of our secured creditors.

 3                  And, you know, under Cayman law --

 4   and I have been told by Cayman counsel you do

 5   something similar, which is you file, you know, a

 6   blank assignment form and, you know, have a

 7   collateral agent hold that.  And that's, you know,

 8   we have done what's required under the Cayman law,

 9   but that's frankly an issue not for today.  We are

10   not asking the Court to deal with that.

11                  Based on the statements of

12   Mr. Eldridge that have been admitted for purposes of

13   the Court dealing with, to the extent it deems

14   relevant, Cayman law, Mr. Eldridge can go through it

15   much more artfully than I can, goes up and explains

16   in detail why the Debtors did what they did based

17   upon a change in law that occurred in the Cayman

18   Islands at the end of November.

19                  Your Honor, we didn't -- I dispute,

20   strongly dispute all of the statements around

21   Vantage admitting it's doing something incorrect

22   under the RSA, that directors are violating

23   fiduciary duties, reg FD, Mr. DeClare, Mr. Bragg,

24   people getting, you know, their names thrown about
```

```
1    through the mud.  That is -- it's not evidence.  We

2    strongly dispute it.  And it shouldn't be considered

3    for purposes of standing in any event.

4              Mr. Su is not an officer or director

5    of the Debtors.  There is nothing -- there is no

6    claim against the Debtors, and there is nothing in

7    the way of aiding and abetting fiduciary duties.  If

8    anything, the directors and officers of Vantage and

9    OGIL did the only thing they could here, which is

10   reorganize the Debtors expeditiously so that the

11   company can survive.

12             Your Honor, on the comments around

13   the case that was cited for claims against the race

14   granting standing, again, when you look at the Texas

15   litigation, there is nothing in the Texas litigation

16   that even would make a claim against the race,

17   itself.  It's seeking money damages.

18             Now, Your Honor, to the extent you

19   find it relevant, at this time we would be prepared

20   to move to admit the declarations and the evidence

21   that we have here today so that the Court can

22   consider it in the context of standing, especially,

23   I would think, the declaration of Mr. Aebersold.

24             THE COURT:  Any objection?  I have
```



1  the declarations already in the binders, I believe.

2  Any objection?

3                    MR. BROWN:  (inaudible) in the

4  context of the standing dispute.

5                    THE COURT:  In the context of the

6  standing dispute.  All right.

7                    MR. BROWN:  Absent a witness

8  (inaudible)

9                    THE COURT:  No.  I think --

10                    MR. SCHROCK:  Your Honor, I mean we

11  can make everybody available for cross, but I will

12  defer to you as to --

13                    THE COURT:  No.  I think we have been

14  proceeding on a documentary record and on evidence,

15  and I don't think that there is a need to take that

16  next step.  But I will reserve myself the right to

17  change my mind.

18                    Here is what I want to do:  I

19  appreciate getting the argument.  I asked for it at

20  the outset.  I see this as a threshold issue, and

21  you have given me a lot.  I want the opportunity to

22  take a look at my notes and to determine the

23  standing question --

24                    MR. SCHROCK:  Okay.



```
 1                    THE COURT:  -- and rule.  And I don't

 2    know how long that will take, but I wouldn't go

 3    anywhere.  And we will figure out one way or the

 4    other.

 5                    If I rule that there is no standing,

 6    then, obviously, the matter would proceed without

 7    the objector's objections being prosecuted.

 8                    If I find that there is standing,

 9    then we are turning to the merits of it, and we'll

10    deal with the witnesses and any arguments as it

11    relates directly to confirmation.

12                    But I appreciate the submissions, the

13    briefing, and particularly the arguments as it

14    relates to standing.  But I need a few minutes to

15    make sure that I have my head around this.

16                    We will stand in recess.  Ms. Brown?

17                    MR. BROWN:  (Inaudible)

18                    THE COURT:  I want everybody to

19    remain standing -- yes, you can -- and we will see

20    how much pressure -- see how you do under pressure.

21                    MR. BROWN:  One, there is no final

22    cash collateral yet, because the PO period hasn't

23    run.  Two, the restructuring agreement is signed and

24    dated December 1st, which is a week after the case
```



1   law that it was cited to.

2                   THE COURT:  So noted.  All right.

3   Stand in recess.  Thank you.

4           (Recess)

5                   THE CLERK:  All rise.

6                   THE COURT:  Please be seated.  Thank

7   you for your patience.

8                   Okay.  The threshold matter before

9   the Court in the context of the Debtors'

10  confirmation hearing is whether or not the objector,

11  Nobu Su, Mr. Nobu Su, and F3 have standing to appear

12  and be heard in this court in the context of their

13  opposition and objections to plan confirmation.

14                  This was the subject of extensive

15  argument at last week's hearing and then was, I

16  think, thoroughly argued and briefed by the parties

17  and then argued today at the podium.

18                  Based upon the record before me, I

19  conclude that Mr. Su and F3 do not have standing to

20  appear and be heard in this proceeding.

21                  I start from what I think is an

22  axiomatic proposition.  Mr. Su appears in this court

23  as a shareholder of a shareholder of the debtor.

24  That shareholder of the debtor is not a debtor



1  before this court and is, in fact, involved in

2  proceedings that have been the subject of

3  substantial discussion between the parties.  Those

4  proceedings are in the Cayman Islands.

5            I also am aware and have been advised

6  by the parties that there will be proceedings

7  perhaps as soon as this afternoon in the Cayman

8  Islands regarding the parent proceedings, but they

9  are not before me.

10            But the fact remains that bankruptcy

11  standing is a threshold requirement, as standing is

12  for all federal courts, but bankruptcy standing is

13  its own particular breed of standing and requires

14  statement of or identification of a pecuniary or an

15  economic or a property interest before this court

16  that is susceptible to redress and as to which

17  parties should be able and afforded an opportunity

18  to address the Bankruptcy Court.

19            And in this instance, while I have

20  carefully considered the arguments that have been

21  raised -- and, again, I think Ms. Brown has

22  correctly characterized this, as many of these cases

23  present.  This is a complicated situation, but I

24  believe that I have had, over the course of the week

1   since last week's hearing, a sufficient opportunity

2   to understand and get my arms around the

3   relationship between these parties, the litigation

4   that is proceeding, not simply in the Caymans but

5   also in other jurisdictions, and the causes of

6   action claims and disputes between and among the

7   parties.

8                    And I am satisfied that any

9   connection between Mr. Su and F3 and its debtors to

10  attenuated to apply the predicate for standing to

11  appear and be heard and object in this court.

12                   I observed in a prior hearing, and I

13  will again find today, that it seems to me that

14  substantially all of the concerns and issues that

15  have been raised by and argued by Ms. Brown today

16  are properly addressed to the Caymans court.

17                   I make no comment on whether the

18  Caymans proceeding was properly initiated.  That is

19  certainly not my province to make a comment or

20  determination on.

21                   I make no comment about whether or

22  not parties have proceeded in accordance with

23  appropriate Cayman law as to liens, the assertion of

24  liens, the treatment of creditor rights, or other

1  proceedings before the Cayman court.

2              That is a court of competent

3  jurisdiction, I presume, and they will deal with it

4  as the rules and regulations and the law in the

5  Cayman Islands require.

6              But none of that materially impacts

7  or precludes this court's ability to move forward

8  today with the Debtors' request for confirmation of

9  their plan of reorganization.

10             I am, again, aware that Mr. Su and F3

11  have identified a significant issue or collection of

12  issues going, I guess, in both directions between

13  this corporate family and themselves, but that is

14  not sufficient to permit or authorize appearance and

15  litigation in this court.

16             Mr. Su and F3, but particularly Mr.

17  Su, since that's who we've mainly been talking

18  about, is a shareholder of a shareholder of the

19  Debtor.

20             I don't regard this matter as being

21  materially different from those circumstances that I

22  dealt with in the Natrol case.

23             And, again, I recognize I didn't

24  write an opinion, but I have dealt with it recently.



1    And the parties, I think, have pointed me to all of

2    the relevant and governing case law starting with

3    the Global case.

4               And as I said at the last hearing,

5    and I will repeat today, I am sympathetic to the

6    concerns of Mr. Su, that he wants to make sure that

7    he receives the appropriate and proper treatment.

8    But the forum in which to press his interests and

9    his rights is the Cayman Islands, and it is not in

10   this jurisdiction.

11              So based upon the record before me, I

12   will strike the objections that have been filed, and

13   I will not permit Mr. Su to appear and be heard and

14   to prosecute his objections as they relate to the

15   confirmation of the Debtors' plan.

16              I make one further comment:  These

17   are difficult circumstances for the Court -- for any

18   court to deal with when we have got courts of

19   different nationalities or different jurisdictions.

20   And we try and endeavor mightily, I think, to ensure

21   that there is both respect and comity accorded as a

22   baseline proposition, leaving aside all the trial

23   issues about comity and recognition.

24              And so I am, I think, careful and



1  diligent when I deal with this, whether I'm dealing

2  with another U.S. court or a foreign court, to

3  ensure that I am not intruding on another forum's

4  proper exercise of its authority.

5           And I'm confident today that I am not

6  doing so.  Because I am prepared to move forward

7  with the Debtors' confirmation.  I am aware that

8  there are proceedings that have been scheduled this

9  afternoon.

10           Other than having been handed the

11  submissions, I don't know much about that, and

12  that's fine.  It's not my problem.

13           I have asked and been advised by

14  counsel for the Debtor that, as my instincts would

15  indicate, the Debtor is not going to go effective on

16  this large and complex restructuring this afternoon

17  or tomorrow.  So it is my expectation that if there

18  are proceedings in the Cayman Islands that would

19  affect how the Debtor may move forward with the

20  reorganization that is subject to my review today,

21  then we may have further proceedings in this court.

22  And we would be so advised, and I would be guided by

23  the parties.

24           But the Debtor, Mr. Schrock, stood up

```
 1   at the outset and said that the proceedings in the
 2   Cayman Islands are the proceedings in the Cayman
 3   Islands.  The proceedings in this court are before
 4   this court.
 5                  I have a debtor that has properly
 6   filed and commenced a bankruptcy case before me,
 7   that has a plan pending for confirmation this
 8   afternoon, that has demonstrated substantial
 9   balloting and creditor support.  And I would be
10   prepared to move forward with that request for a
11   confirmation.
12                  Mr. Schrock, you may proceed.
13                  MS. BROWN:  Your Honor, may we be
14   excused?
15                  THE COURT:  Yes, if you wish.
16                  MS. BROWN:  Thank you.
17                  MR. SCHROCK:  Thank you, Your Honor.
18                  THE COURT:  Why don't we do this?  We
19   will take just a two-minute break.
20                  MR. SCHROCK:  Sure.
21                  THE COURT:  You folks can pack up.
22   And, again, I would thank you for moving on an
23   expedited basis and presenting your arguments that
24   were presented to me today.
```



```
 1                      And then we will reconvene in just a
 2    couple minutes.  And I'll really ask your pleasure
 3    as to how to proceed, so --
 4                      MR. SCHROCK:  Very well, Your Honor.
 5                      THE COURT:  We will go from there.
 6    Just a two-minute break.  Stand in recess.
 7                      MR. SCHROCK:  Thank you.
 8             (Recess)
 9                      THE CLERK:  All rise.
10                      THE COURT:  Please be seated.
11    Mr. Schrock, back at it.
12                      MR. SCHROCK:  Okay.  Thanks, Your
13    Honor.  Good afternoon.  Ray Schrock, Weil Gotshal
14    for the Debtors.
15                      Here is how we propose to proceed:
16    We would like to, now that we have an uncontested
17    confirmation, we would like to move the evidence
18    into the record.
19                      We do have a few changes that we
20    would like to just walk through with the Court.
21                      THE COURT:  Sure.
22                      MR. SCHROCK:  And then I think we
23    will distribute a revised confirmation order
24    reflecting those changes this afternoon.
```



1             THE COURT:  Okay.

2             MR. SCHROCK:  Okay.  Your Honor, at

3    this time I would move to admit the following

4    declarations:  A declaration of Christopher DeClare

5    in support of the Debtors' Chapter 11 petitions, at

6    Docket Number 17; the declaration of Christopher

7    DeClare in support of approval of the disclosure

8    statement, approval of the pre-petition solicitation

9    of votes, and support of the plan that's at Docket

10   Number 168; the declaration of Brandon Abersol in

11   support of the approval of disclosure statement, and

12   the plan that's at Docket Number 169; the

13   declaration of James Sullivan on behalf of Epic

14   Bankruptcy Solutions, the voting and tabulation

15   agent, at Docket Number 170; the declaration of

16   Richard Law in support of the private debtors that's

17   at Docket -- Exhibit A, Docket Number 181; and the

18   declaration of Seth Bullock in support of the reply

19   of the debtors to the (inaudible) objection.  That's

20   Exhibit B at Docket Number 181.

21             And I would also move to have the

22   Court take judicial notice of Docket Numbers 75, 96,

23   and 97 and 81, which are the affidavits of service

24   respectively for the affidavits of mailing for

```
 1   notice of commencement, publication, and

 2   solicitation package.

 3                    THE COURT:  Okay.  Before we get to

 4   the last affidavits mailing that you discussed, I

 5   would ask if anyone wishes to be heard or objects to

 6   the admission of the various declarations that have

 7   been identified by counsel in support of the

 8   Debtors' case in chief requesting confirmation of

 9   their plan of reorganization.  Very well.

10                    Each is submitted.  I would further

11   note that the Debtors have submitted a thorough

12   memorandum, which I have had an opportunity to

13   review, that addresses the gating issue of standing

14   but also addresses compliance with the relevant

15   statutory provisions 1129 and, to the extent

16   relevant, 1123.

17                    And having noted that those have been

18   addressed by way of memorandum, I will not oblige or

19   require the Debtor to walk through each of those --

20   each of those factors.

21                    MR. SCHROCK:  Thank you very much,

22   Your Honor.  And on the taking judicial notice on

23   the affidavits of mailing?

24                    THE COURT:  I will take judicial
```



1    notice of them.   They are of record.

2                    MR. SCHROCK:   Thank you, Your Honor.

3    Your Honor, before I turn it over to my colleague,

4    Mr. Morgan, just a quick note:   The Debtors are

5    going to -- you know, we will not go effective --

6    should the Court approve the plan, we don't plan to

7    go effective tomorrow.

8                    We will, of course, we're going to

9    endeavor to go effective here as quickly as we can,

10   given what's at stake for the company.

11                    We find it a bit ironic, given

12   everything we are arguing about over the last couple

13   days when, you know, Debtors do, of course, have a

14   restructuring transactions paragraph relating to

15   implementation in the plan.

16                    One of the reasons we chose the OGIL

17   structure was paradoxically because it would be

18   cheaper rather than forming a new Cayman entity and

19   transferring the assets of OGIL to a sister company

20   and going effective.   That restructuring transaction

21   paragraph is part of the plan in the confirmation

22   order.   And, if necessary, we intend to rely on it.

23                    THE COURT:   So noted.

24                    MR. SCHROCK:   Okay.



```
 1                    THE COURT:  Mr. Morgan.
 2                    MR. MORGAN:  Yes, sir.  Good morning,
 3   Your Honor.  Gabriel Morgan, Weil Gotshal, for the
 4   record.
 5                    So I'm here at the now slightly
 6   pedestrian task of walking through any changes that
 7   we have to the plan which we filed on Monday.
 8                    THE COURT:  Okay.
 9                    MR. MORGAN:  And I have a black line
10   with me that I could hand up.
11                    THE COURT:  That would be great.
12   Please.
13                    MR. MORGAN:  May I approach?
14                    THE COURT:  Yep.  Thank you.
15                    MR. MORGAN:  The changes to the plan
16   that we filed were really in two categories.  The
17   first, the technical adjustments that relate to
18   implementation mechanics.
19                    THE COURT:  Yeah.  I don't think --
20   we certainly don't need to walk through technical or
21   conforming changes.
22                    MR. MORGAN:  All right.  And then the
23   second category are comments that we received from
24   the United States Trustee.
```



```
1                    THE COURT:  Okay.  Very good.
2    Mr. Fox, good to see you.
3                    MR. FOX:  Good to see you, Your
4    Honor.
5                    MR. MORGAN:  The two of these that I
6    think merit mention, and Mr. Fox may have others --
7    I'm happy to go through them, as well.  The two that
8    merit mention, the first is the change with respect
9    to the exculpation.  And we have heard about that
10   earlier today.
11                   The nature of this change was that
12   the original plan provided for the release of
13   parties as a defined term within the plan to receive
14   an exculpation.
15                   We were contacted by Mr. Fox, who
16   asked that we carve this back such that the
17   exculpated parties would only be estate fiduciaries.
18   We agreed and --
19                   THE COURT:  I think that's consistent
20   with the way that the law has been evolving in this
21   jurisdiction.  And I had this issue in a hearing,
22   and your colleague -- I think Ms. Sarkisi -- raised
23   it.  And I think we have got case law that touches
24   on this issue.  So is this matter resolved, then
```

```
 1   from --

 2              MR. MORGAN:  It is, Your Honor.

 3              THE COURT:  Okay.

 4              MR. MORGAN:  And the only other

 5   change I would note, and just briefly, is a change

 6   to the mechanic for the disputed claims process.

 7              THE COURT:  Okay.

 8              MR. MORGAN:  And that's in 7.1 of the

 9   plan.  This, again, was a request from U.S. Trustee.

10   And the way we had originally configured the plan,

11   because unsecured claims are unimpaired --

12              THE COURT:  Right.

13              MR. MORGAN:  We had set it up such

14   that if a proof of claim were to be filed, it would

15   be deemed disallowed.

16              THE COURT:  Disallowed.

17              MR. MORGAN:  And then we could just

18   sort of progress from there.  Mr. Fox made the

19   argument to us that every creditor, every claimant

20   deserves the right to file a proof of claim, and we

21   should go through the process of seeking to object

22   to that claim.  We were willing to take the comment,

23   and we ended up with the language that we have in

24   7.1 currently.
```



```
 1                    THE COURT:  Give me just a moment to
 2    look at it.
 3                    MR. MORGAN:  Yes, Your Honor.
 4                    THE COURT:  So the point is that
 5    creditors that hold presumably scheduled claims need
 6    not file?
 7                    MR. MORGAN:  Yes, Your Honor.
 8                    THE COURT:  Or claims that the
 9    Debtors acknowledged?
10                    MR. MORGAN:  Correct.
11                    THE COURT:  But the creditors have a
12    right to file a proof of claim, and then you will
13    deal with that and, if need be, I will deal with
14    that at the appropriate time?
15                    MR. MORGAN:  Exactly, Your Honor.
16                    THE COURT:  Okay.  I get it.
17                    MR. MORGAN:  Okay.  So, other than
18    that, we think these are largely conforming changes
19    or these are the balance are conforming changes.
20    And I'll be happy to answer any other questions Your
21    Honor may have.
22                    THE COURT:  No.  If you will give me
23    just a moment to finish the page turning.
24                    MR. MORGAN:  Absolutely.
```



```
 1                    THE COURT:  Okay.  I think I
 2     understand the changes.  And I appreciate you
 3     walking me through.
 4                    MR. MORGAN:  As always.  So the next
 5     doctrine I would like to take a little time with,
 6     Your Honor, is the confirmation order.
 7                    THE COURT:  Very good.
 8                    MR. MORGAN:  I have a black line of
 9     changes to the version of what is filed on notice.
10                    THE COURT:  That would be great.
11     Thank you.
12                    MR. MORGAN:  Now, this black line had
13     very minimal changes.  We have just updating and
14     conforming changes.  We have --
15                    THE COURT:  I'm more worried about
16     conforming changes, dates, and docket numbers.
17                    MR. MORGAN:  Two to point out to Your
18     Honor.
19                    THE COURT:  Okay.
20                    MR. MORGAN:  The first is on Page 37,
21     at reference paragraph numbers that they change when
22     --
23                    THE COURT:  Very good.  Page 37.
24                    MR. MORGAN:  It's the removal of the
```



1    specific paragraph relating to the Debtors or the

2    Reorganized Debtors' establishment of the management

3    incentive program, that that act would be taken

4    after the effective date.  The U.S. Trustee made the

5    comment that it was not needed in the confirmation

6    order.

7                    THE COURT:  Yeah.  Otherwise, you are

8    implicating Bankruptcy, what, Code, Section 503,

9    perhaps, and so he caught you.

10                   MR. MORGAN:  And the other is on Page

11   50.  And this is -- this is an indemnity that the

12   Debtors have agreed to grant to Wells Fargo as the

13   collateral trustee.

14                   And, you know, as the record from

15   earlier today indicates, there are some parties that

16   object to the actions that everyone is taking with

17   respect to this transaction.  And, as such, Wells

18   requested and the Debtors agreed to an indemnity.

19                   THE COURT:  And these indemnity

20   arrangements, I expect, are consistent with what's

21   already in the operative documents between the

22   parties?  They seem pretty standard.

23                   MR. MORGAN:  That's my understanding,

24   yes, that they are standard.



```
1                    THE COURT:  Okay.  I understand.

2                    MR. MORGAN:  And that's a good segue

3    to how we would like to proceed with your -- at Your

4    Honor's permission.

5                    We have additional technical

6    adjustments coming from the -- from both the

7    collateral trustee as well as the RSA parties.  We

8    are trying to work through a few comments that

9    relate to plan implementation mechanics.

10                   What we would like to do is we have

11   been turning it during the hearing.  What we would

12   like to do is take a moment to go through it,

13   circulate a copy to the RSA parties and the --

14                   THE COURT:  Send it over.

15                   MR. MORGAN:  And then send it over.

16                   THE COURT:  That certainly sounds

17   fine.  It's obviously, as noted earlier, it's a

18   complex transaction, so I have no problem with the

19   parties -- I understand the transaction, at least to

20   the extent to which I need to.

21                   And, again, making sure that the

22   details of the transaction and the related order are

23   buttoned down is certainly fine with me.  So I would

24   be happy to entertain the order when it comes over.
```



```
 1              MR. MORGAN:  All right.  And with
 2   that, Your Honor, if there is no further questions.
 3              THE COURT:  You're asking me to
 4   confirm the plan?
 5              MR. MORGAN:  Yes.  Yes, please, Your
 6   Honor.  (Laughter)
 7              THE COURT:  I would ask if anyone
 8   wishes to be heard with respect to the Debtors'
 9   request for confirmation of their amended joint
10   prepackage Chapter 11 plan.
11              MR. FOX:  Good afternoon, Your Honor.
12              THE COURT:  Good to see you.
13              MR. FOX:  Tim fox On behalf of the
14   United States Trustee.  I just rise briefly to
15   confirm Debtors' counsel's representation as to the
16   resolution of my office's informal comments.  And
17   thank you for your time.
18              THE COURT:  Very good.  Thank you.
19   Mr. Silfen.
20              MR. SILFEN:  Good afternoon, Your
21   Honor.  Edward Silfen with Arent Fox, counsel for
22   the collateral agents and indentured trustees.
23              For the past ten days, the
24   professionals have been working tirelessly and
```



```
1   diligently almost 24/7 to address Wells Fargo's

2   issues and concerns, particularly with respect to

3   plan implementation mechanics, distribution

4   mechanics, and transactions that are contemplated

5   under the plan.

6                    As you have heard, we have reached

7   final understanding as to revisions both last night,

8   late last night, and during the hearing today.  So

9   we haven't had a full opportunity to review the

10  changes.  I think we are all on the same page.

11                   But I just wanted to alert Your Honor

12  that if there is an issue, we will let you know, but

13  I am hopeful and have a high degree of certainty

14  that there won't be.

15                   THE COURT:  Well, you folks have

16  demonstrated the ability to get me on the phone.

17  And, if you need me, I'll be here.

18                   MR. SILFEN:  All right.  Thank you.

19                   THE COURT:  All right.  Does anyone

20  else wish to be heard?

21                   All right.  Based upon the record

22  before me, I am satisfied that the Debtors have

23  carried their burden with respect to the relief

24  requested, and I will be prepared to enter an order
```



1  confirming the plan.

2              In so ruling, I note that the record

3  demonstrates through the declarations that have been

4  admitted that Debtors have conducted a pre-petition

5  solicitation.  And by Ms. Sullivan's declaration,

6  which has been submitted into evidence as a

7  validating certification or affidavit, the Debtors

8  have obtained overwhelming support from creditors

9  entitled to vote on the plan, sufficient certainly

10  to satisfy the statutory requirements associated

11  with plan confirmation.

12              I believe I am obliged as a threshold

13  matter to consider and approve the disclosure

14  statement.  And, again, in the absence of stated

15  opposition, I will be brief.

16              I am satisfied that the disclosure

17  statement provides more than sufficient information

18  to satisfy the requirements under Bankruptcy Code

19  Section 1125 in that I am satisfied that the

20  disclosure statement contains adequate information

21  to permit a hypothetical creditor or investor to

22  make an informed decision to vote for or against the

23  plan.

24              With respect to plan confirmation, as



1    noted, the Debtor submitted substantial affidavits

2    that have been submitted that have been taken

3    without opposition.

4              Those objections that have been

5    submitted in opposition to plan confirmation have

6    been stricken by order of the Court earlier in this

7    hearing based upon the Court's conclusion that the

8    party commencing or prosecuting those objections

9    lacks standing to appear and be heard in this court.

10             So what the Court is faced with,

11   then, is a consensual or unopposed confirmation

12   reflecting, of course, the input from the Office of

13   the United States Trustee, as well as, I'm sure, the

14   active involvement of various stakeholders in

15   finalizing the documents.

16             But the record here clearly reflects

17   that the Debtors have carried their burden under

18   Bankruptcy Code Section 1129.  And I note that at

19   the outset the Court has received and reviewed a

20   substantial memorandum that goes through all of the

21   elements identified under Section 1129 and, again,

22   to the extent relevant, Section 1123.

23             And without burdening the record in

24   the absence of opposition, I will find that the

1  Debtors have met each of those or have demonstrated

2  that certain of those statutory requirements or

3  conditions are not relevant to the matter before the

4  Court.

5          So based upon the record before me, I

6  am prepared to confirm the plan consistent with the

7  request of counsel and the Debtor.  And I would

8  entertain that order, as discussed by counsel, under

9  certification of counsel once parties have reached

10 agreement with respect to the form of order.

11         And as noted a moment ago, if there

12 are issues that cannot be resolved by wordsmithing

13 or by agreement between the parties, then I would

14 make myself available.

15         I would make the following further

16 observation:  This case has been presented on a

17 fairly expedited basis.  And I listened carefully to

18 Mr. DeClare's testimony, admittedly from the podium,

19 as well as his declaration, and counsel's

20 representations throughout the course of the case of

21 the need to move forward.

22         It is a challenge for the court to

23 balance the competing considerations of sufficient

24 time and opportunity for affected parties to get

1  their arms around complex transactions and the

2  business requirements that require that a

3  transaction get put together.

4         I think we have had a colloquy in

5  this case, but I will be candid that I am having

6  difficulty keeping all of my energy cases straight.

7  But the fact of the matter is that the circumstances

8  in a business environment in which the debtor --

9  this debtor operates, there is no uncertainty that

10  it is in absolute tumult.

11         And the only time I'm happy to be

12  aware of that is when I pull up to the pump.  But,

13  otherwise, it is keeping me particularly busy.  And

14  so I only cite this because there have been concerns

15  expressed about the pace of this proceeding.

16         But the fact of the matter is that I

17  am satisfied that the Debtor has demonstrated that,

18  frankly, the business realities require prompt

19  consideration in order to stabilize the business

20  that, by all accounts, is well managed, well run,

21  and well operated and just trying to deal with,

22  frankly -- I don't know that I would say it's

23  unprecedented, but it is a starkly challenging

24  business environment.

1           So I have noted that the Debtors have

2    carried their burden as to the elements, but I would

3    also -- I also think it was incumbent upon the Court

4    to observe that the timing and presentation of this

5    is similarly warranted by the record demonstrated by

6    the Debtor.

7           So, based upon that, I would be

8    prepared to enter that order, and I will do so

9    promptly.  Okay?  Mr. Morgan, anything further

10   today.

11          MR. MORGAN:  No.

12          THE COURT:  Let me ask you a

13   question, Mr. Schrock.  I don't necessarily need an

14   answer on this, but I guess I would like to share

15   with you the observations on the issues that I think

16   that I would anticipate may come up later.

17          You have got your confirmation.  I'm

18   prepared to enter that order.  And, again, I would

19   commend all of the parties on the challenging and

20   complex restructuring.

21          MR. SCHROCK:  Thank you, Your Honor.

22          THE COURT:  And, Mr. DeClare, I would

23   wish you all the best with managing the enterprise

24   on a going-forward basis.



1              As noted, there are proceedings that

2    are expected to occur this afternoon in the Caymans.

3    I make no comment, as I have said before, what's

4    going on there, the merits of those issues, or any

5    concerns that are going to be properly presented to

6    the Caymans.

7              I asked you a question earlier, and I

8    appreciate your prompt and candid answer that the

9    Debtor was not going to go effective this afternoon.

10             And I think you know the concern that

11   I am trying to, um, at least recognize, if not

12   necessarily vindicate.  And that is I don't know

13   what's going to happen in the Caymans.  I don't know

14   what further proceedings there will be.

15             I have ruled with respect to

16   standing, and I'm certainly comfortable with that

17   ruling.

18             The one situation I don't want to be

19   in is a circumstance where the Debtor is going

20   effective -- I don't want to say necessarily without

21   notice -- but where they are -- I don't want to

22   necessarily get blindsided by emergency proceedings

23   in this court --

24             MR. SCHROCK:  Yes, Your Honor.



```
1              THE COURT:  -- or be at odds, unless
2   circumstances require, with another court.
3              I'm not asking you to take any
4   further steps.  But you have seen in the Third
5   Circuit, at a minimum, there has been a measure of
6   evolution with respect to equitable mootness.  And,
7   again, I was kind of flip, but I have closed sales
8   out in that hallway.
9              MR. SCHROCK:  Yes, Your Honor.
10             THE COURT:  And I'm often aware that
11  people will do that.
12             So I guess I would like to know, to
13  the extent that you can share it with me now, what
14  the Debtors' expectations are timing wise?
15             And I'm not asking you to handicap
16  the Caymans' proceedings.  But all other things
17  being equal, in the absence of any impediment,
18  what's your timing?
19             MR. SCHROCK:  So, Your Honor, I
20  think, you know, we're going to move as quickly as
21  possible.
22             As you might imagine, with a global
23  operation that's going to be an international
24  corporate closing, effectively, with naval mortgages
```



```
1    and the like.  And we will likely -- we are going to

2    push, certainly, for next week.

3                    THE COURT:  Okay.

4                    MR. SCHROCK:  And move as

5    expeditiously as possible.  And I understand and

6    appreciate Your Honor where you are going with -- we

7    will certainly make sure the Court is not blindsided

8    by emergency --

9                    THE COURT:  To the extent.

10                   MR. SCHROCK:  -- at all possible.

11                   THE COURT:  Yeah.  And I don't want

12   anybody taking my comments today to mean that I am

13   tempering my ruling.

14                   MR. SCHROCK:  Yes.

15                   THE COURT:  I'm confirming your plan.

16   I want and expect that this company will go

17   effective and merge and succeed.

18                   MR. SCHROCK:  Yes.

19                   THE COURT:  But, yes, if something

20   happens or if there are issues --

21                   MR. SCHROCK:  We will make the Court

22   aware of it.

23                   THE COURT:  Yeah.  You know how to

24   get ahold of me.
```



```
 1                    MR. SCHROCK:  We do, Your Honor.

 2                    THE COURT:  With that observation,

 3     again I appreciate everyone's efforts to get to this

 4     point.  And, again, I would express my best regards

 5     to the Debtor on a going-forward basis to emerge and

 6     succeed again in what is admittedly a challenging

 7     environment.

 8                    Mr. Schrock, do we have anything

 9     further today?

10                    MR. SCHROCK:  No, Your Honor.  Just

11     on behalf of the Debtors and all their stakeholders,

12     we want to thank you for handling these cases.

13                    THE COURT:  No problem.  We will

14     stand in recess.  Thank you.

15                 (Adjourned 12:55 p.m.)

16

17

18

19

20

21

22

23

24
```



CERTIFICATE

I, Lorena J. Hartnett, a Notary Public and Registered Professional Reporter, do hereby certify that the foregoing is as accurate and complete a transcription as possible from the audio of the proceeding held at the time and place stated herein.

The said proceeding was recorded by another party and then reduced to typewriting under my direction. I was not present at said proceeding and am transcribing only that which is audible by means of audio recording.

I further certify that I am not a relative, employee, or attorney of any of the parties or a relative or employee of either counsel, and that I am in no way interested directly or indirectly in this action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office on this 15th day of January 2016.



_____

Lorena J. Hartnett, R.P.R.

**W&F**

**WILCOX & FETZER LTD**

Registered Professional Reporters
(302) 655-0477
www.wilfet.com

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 103 of 133 PageID #: 110

Bankruptcy Court for the District of Delaware                                    Transcript Of Electronic Recording
In Re: Offshore Group Investment Limited, et al.                                                January 14, 2016

**$**

**$60 (1)**
  45:7

**A**

**Abersol (1)**
  81:10

**abetting (5)**
  28:7 41:5,6,7 70:7

**abilities (1)**
  44:24

**ability (4)**
  18:9 36:4 76:7
  92:16

**able (3)**
  25:7 28:21 74:17

**above (1)**
  62:24

**absence (4)**
  37:2 93:14 94:24
  99:17

**Absent (1)**
  71:7

**absolute (1)**
  96:10

**Absolutely (1)**
  87:24

**accept (1)**
  12:17

**accepted (2)**
  17:6,8

**accordance (1)**
  75:22

**accorded (1)**
  77:21

**according (1)**
  43:3

**accordingly (1)**
  40:5

**accounts (1)**
  96:20

**accurate (1)**
  16:18

**acknowledged (3)**
  11:13 34:16 87:9

**acknowledges (1)**
  38:10

**act (3)**
  13:5 40:4 89:3

**acted (1)**
  40:8

**acting (1)**
  13:6

**action (5)**
  26:22 27:1 42:14
  55:6 75:6

**actions (2)**
  28:8 89:16

**active (2)**
  52:23 94:14

**activities (1)**
  56:20

**activity (2)**
  55:6 56:19

**acts (1)**
  7:10

**actually (5)**
  6:3,8 11:8 42:9
  67:10

**ad (1)**
  62:1

**add (1)**
  30:9

**additional (3)**
  6:18 59:6 90:5

**address (5)**
  6:10 20:21 53:24

**accordingly (1)**
  74:18 92:1

**addressed (3)**
  61:15 75:16 82:18

**addresses (2)**
  82:13,14

**adequate (1)**
  93:20

**adequately (1)**
  61:14

**adjourn (2)**
  16:2 17:2

**Adjourned (1)**
  101:15

**adjournment (3)**
  11:3 17:11 58:24

**adjudication (1)**
  58:21

**adjustments (2)**
  84:17 90:6

**administer (2)**
  27:24 45:11

**administered (1)**
  53:6

**administering (1)**
  28:5

**administrative (5)**
  3:17 39:12,13 57:6
  66:11

**admission (3)**
  31:4 50:7 82:6

**admit (4)**
  16:10 35:22 70:20
  81:3

**admitted (10)**
  12:13 34:9 37:14
  49:15,17 50:10 59:17
  61:7 69:12 93:4

**admittedly (3)**
  16:9 95:18 101:6

**admitting (1)**

**69:21**

**adopted (1)**
  19:10

**adverse (1)**
  28:24

**advised (3)**
  74:5 78:13,22

**Aebersold (3)**
  3:22 29:20 70:23

**affairs (1)**
  48:11

**affect (8)**
  6:9 7:9 18:9 25:1,4
  28:24 29:6 78:19

**affected (2)**
  62:15 95:24

**affidavit (14)**
  11:7 12:16 13:7,10
  34:13 35:5,5 36:9
  37:8,13 42:3 43:17
  57:24 93:7

**affidavits (9)**
  12:7,8 35:24 41:14
  81:23,24 82:4,23 94:1

**affiliates (2)**
  21:15 33:14

**afforded (1)**
  74:17

**afield (1)**
  63:18

**after (8)**
  7:7 8:3,10 11:9
  48:14 51:24 72:24
  89:4

**afternoon (13)**
  6:21 9:24 17:14
  74:7 78:9,16 79:8
  80:13,24 91:11,20
  98:2,9

**afterwards (1)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

17:19

**again (26)**
8:21 14:21 16:4
30:11 36:13 39:17
45:23 54:16,22 66:24
67:23 70:14 74:21
75:13 76:10,23 79:22
86:9 90:21 93:14
94:21 97:18 99:7
101:3,4,6

**against (20)**
23:18 25:18 26:5,
15,20 27:11 28:8 32:7
35:7 42:20 43:23
44:21 46:5 65:23
67:18,21 70:6,13,16
93:22

**agenda (1)**
5:16

**agent (8)**
4:10,11 66:11,15,
16 69:1,7 81:15

**agents (2)**
60:9 91:22

**ago (3)**
33:21 42:12 95:11

**agree (3)**
12:15,18 64:7

**agreed (5)**
44:15 51:14 85:18
89:12,18

**agreeing (1)**
14:4

**agreement (33)**
12:12,13,14,24
14:13 26:16 30:20
31:15,18,20,24 32:3,4
33:7 34:12,14,17,20
37:15,19 39:14 44:14,
16 45:8,8 52:1,4,5

67:8,16 72:23 95:10,
13

**agreements (2)**
32:15 57:2

**agrees (1)**
34:15

**ahold (1)**
100:24

**aiding (5)**
28:7 41:5,6,7 70:7

**alert (1)**
92:11

**allegation (2)**
40:7 54:11

**allegations (5)**
23:8 35:8 60:16
62:10 67:22

**alleged (1)**
26:21

**alleges (1)**
24:2

**alleging (1)**
28:1

**allow (4)**
19:20 22:12 28:17
59:5

**allowed (5)**
7:11 30:2 43:22
65:17,18

**allowing (1)**
8:2

**almost (2)**
55:4 92:1

**alone (1)**
11:23

**along (2)**
21:2 47:8

**already (7)**
31:3 34:3 35:10
58:11,12 71:1 89:21

**also (28)**
3:14,21,23 4:12
5:24 34:17 36:12 42:2
44:24 45:9,15 47:22
48:1,7,19 50:24 51:3
58:14 59:8,16 62:22
67:9 74:5 75:5 81:21
82:14 97:3,3

**alternative (1)**
38:12

**although (2)**
37:16 65:12

**Alvarez (2)**
4:3,7

**always (3)**
20:1 24:24 88:4

**amended (6)**
5:15 33:9,20 52:4
68:8 91:9

**amendments (1)**
67:10

**among (1)**
75:6

**amount (1)**
5:3

**analysis (1)**
29:3

**Andrew (1)**
60:6

**another (5)**
18:8 45:13 78:2,3
99:2

**answer (4)**
9:13 87:20 97:14
98:8

**anticipate (1)**
97:16

**anybody (5)**
29:15 30:6 46:9
52:16 100:12

**Anyone (6)**
30:8 44:1,8 82:5
91:7 92:19

**anything (18)**
8:16 9:2 10:7 14:4
15:5 26:21 33:5,23
45:17 46:19 47:13
60:24 61:4 62:20
64:24 70:8 97:9 101:8

**anywhere (1)**
72:3

**apologize (1)**
61:20

**apology (1)**
61:22

**appeal (1)**
45:21

**appear (8)**
23:3,6 53:22 73:11,
20 75:11 77:13 94:9

**appearance (2)**
48:19 76:14

**appears (1)**
73:22

**appellate (1)**
17:21

**apply (1)**
75:10

**applying (1)**
50:6

**appointing (1)**
59:10

**apposite (2)**
8:17 11:15

**appreciate (9)**
16:6 40:14 48:5
71:19 72:12 88:2 98:8
100:6 101:3

**approach (6)**
13:13 19:17 31:1

36:16 45:4 84:13

**appropriate (6)**
6:3 11:14 36:5
75:23 77:7 87:14

**appropriately (1)**
40:5

**approval (5)**
12:11 18:15 81:7,8,
11

**approvals (1)**
18:16

**approve (3)**
4:18 83:6 93:13

**approved (1)**
11:19

**arbitration (3)**
43:18 44:14,15

**Arent (2)**
60:6 91:21

**argue (4)**
5:21 32:6 41:13
53:10

**argued (5)**
5:17 32:7 73:16,17
75:15

**arguing (1)**
83:12

**argument (20)**
6:7 20:5 27:21,22
28:11 31:10,12 32:5
35:18 36:1 40:21 46:6
49:7 60:14 61:6 63:19
65:4 71:19 73:15
86:19

**argumentative (1)**
35:14

**arguments (9)**
9:8 53:13 54:4 62:4,
15 72:10,13 74:20
79:23

**arise (5)**
32:21 33:2,3 46:3
52:11

**Arizona (1)**
57:19

**arms (2)**
75:2 96:1

**around (8)**
10:23 15:8 55:14
69:20 70:12 72:15
75:2 96:1

**arrangements (2)**
54:23 89:20

**artfully (1)**
69:15

**aside (1)**
77:22

**asked (5)**
58:23 71:19 78:13
85:16 98:7

**asking (8)**
13:5 25:23 58:21
62:20 69:10 91:3 99:3,
15

**assert (2)**
26:3 32:18

**asserted (2)**
30:17 32:12

**asserting (2)**
25:24 27:10

**assertion (1)**
75:23

**asserts (3)**
26:14,23 27:16

**assessment (1)**
53:21

**assets (9)**
11:16 43:20 45:24
46:21 51:10 54:13
55:7 65:23 83:19

**assignment (1)**
69:6

**assist (1)**
40:24

**associated (1)**
93:10

**Associates (1)**
43:24

**assume (5)**
33:8 63:3,5,8,13

**attached (4)**
42:4 47:3 67:9,10

**attempt (2)**
22:4,6

**attempting (1)**
53:12

**attenuated (2)**
62:13 75:10

**attorney (3)**
35:24 36:1,14,16

**attorneys (2)**
52:18 58:15

**attorney's (1)**
35:21

**authority (8)**
12:18 17:1 21:12
38:14 51:14,22 54:7
78:4

**authorize (1)**
76:14

**available (3)**
65:22 71:11 95:14

**avoid (1)**
25:6

**aware (7)**
6:16 74:5 76:10
78:7 96:12 99:10
100:22

**away (1)**
29:9

**awhile (1)**
16:12

**axiomatic (1)**
73:22

## B

**back (4)**
10:16 38:19 80:11
85:16

**Baha (5)**
54:4,10,11 55:4,4

**Bahamas (1)**
54:18

**bakering (1)**
31:18

**balance (2)**
87:19 95:23

**balloting (1)**
79:9

**Bank (3)**
57:17,18 66:10

**Bankruptcy (12)**
19:12 21:13 34:2
45:11 74:10,12,18
79:6 81:14 89:8 93:18
94:18

**barred (1)**
36:14

**based (15)**
26:16 43:22 44:15
46:1,18 52:9 53:7
69:11,16 73:18 77:11
92:21 94:7 95:5 97:7

**baseline (1)**
77:22

**basic (2)**
40:3 65:10

**basically (3)**
8:15 57:15 68:12

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

**basis (8)**
11:23 27:3 41:6,8
79:23 95:17 97:24
101:5
**bearer (1)**
42:21
**become (1)**
24:10
**before (29)**
4:17 8:17 14:6,13
16:8,19 17:1 24:10
40:6 43:18 44:9 46:8
61:16 63:16 73:8,18
74:1,9,15 76:1 77:11
79:3,6 82:3 83:3
92:22 95:3,5 98:3
**behalf (12)**
3:6 6:15 7:19 26:18
32:12 35:13 62:1
66:10 67:1 81:13
91:13 101:11
**being (27)**
11:15 12:9,10
17:23 24:3 25:13,15
29:9 31:19 32:4 36:3
38:23 41:16 42:23
48:5,17 53:3,4 54:7,
13 60:21 62:10,15
65:15 72:7 76:20
99:17
**belief (1)**
52:12
**believe (22)**
7:21 11:22 14:1
16:16 17:10 19:2 21:5
28:10,18 30:15 48:1
49:14 51:9 52:10 53:7
56:12 58:1,20 59:24
71:1 74:24 93:12
**believes (1)**

44:22
**benefit (4)**
5:1 20:5 24:17 69:2
**Berkovich (1)**
3:8
**best (2)**
97:23 101:4
**better (1)**
16:7
**between (9)**
30:21 44:13 74:3
75:3,6,9 76:12 89:21
95:13
**bid (1)**
28:21
**big (3)**
54:12,17 67:7
**billion (4)**
29:9,17 63:1 68:23
**billions (1)**
29:16
**binders (1)**
71:1
**bit (2)**
17:23 83:11
**black (3)**
84:9 88:8,12
**blank (1)**
69:6
**blindsided (2)**
98:22 100:7
**blow (1)**
28:23
**bluntly (1)**
53:21
**board (3)**
39:7,9 41:24
**both (8)**
36:21 39:11 51:21
66:16 76:12 77:21
**bring (1)**

90:6 92:7
**bought (1)**
67:12
**bounce (1)**
17:15
**bound (2)**
35:21 36:18
**BR (1)**
27:8
**Bragg (1)**
69:23
**Brandon (2)**
3:21 81:10
**Brauder (1)**
6:15
**Brazil (1)**
22:18
**breach (2)**
32:22 41:13
**breached (1)**
32:23
**breaching (1)**
40:24
**break (2)**
79:19 80:6
**breed (1)**
74:13
**brief (6)**
6:18 41:9 66:6 67:9,
11 93:15
**briefed (1)**
73:16
**briefing (3)**
43:22 47:5 72:13
**briefly (4)**
30:6 66:14 86:5
91:14
**briefs (2)**
22:11 23:21
**bring (1)**

55:18
**British (2)**
36:21,22
**broadened (1)**
66:16
**broader (1)**
13:5
**brought (1)**
55:22
**Brown (68)**
10:16,17,22 13:12,
15 22:19 30:7,10,11
31:1,8 34:11 35:3,20
36:7 37:5,10,24 39:2,
6 40:14,19 41:4,11
42:2 44:5,7 45:4,6
47:22 48:3 49:1,6,10,
14,21 50:2,11,15,19,
21,24 51:7 54:3 55:17,
20 56:1,5,11,16,19
57:14 59:5 61:19
63:24 64:1,11,18 65:5
71:3,7 72:16,17,21
74:21 75:15 79:13,16
**Bullock (2)**
4:2 81:18
**bumped (1)**
63:10
**burden (3)**
92:23 94:17 97:2
**burdening (1)**
94:23
**business (9)**
14:10 17:9 28:16
29:24 96:2,8,18,19,24
**busy (1)**
96:13
**buttoned (1)**
90:23

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 107 of 133 PageID #: 114

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

# C

**Calder (1)**
4:14

**call (2)**
12:9 51:22

**calling (1)**
55:15

**Canada (1)**
66:10

**candid (4)**
16:10 17:8 96:5
98:8

**cannot (4)**
26:17,19 34:16
95:12

**capacity (1)**
60:7

**Capital (2)**
13:21 21:14

**Capital's (1)**
21:10

**capture (1)**
63:11

**care (1)**
23:3

**careful (1)**
77:24

**carefully (2)**
74:20 95:17

**Carey (1)**
54:16

**carried (4)**
56:20 92:23 94:17
97:2

**carve (1)**
85:16

**carved (1)**
24:14

**case (44)**
9:15 18:3,17 23:14,
22,24 26:7 27:7 38:11,
13 39:10 40:9 41:4,9
42:7 43:10,12,21,23
44:1,4 47:16,20,23,24,
24 48:4,9,16 50:6
54:4 62:8,11 70:13
72:24 76:22 77:2,3
79:6 82:8 85:23 95:16,
20 96:5

**cases (24)**
5:7 16:11 21:19
22:3 23:16,20 26:8,9,
15 27:4,9 28:3,5,12,
13 30:4 47:17 48:10
62:23 63:4 68:20
74:22 96:6 101:12

**cash (4)**
66:20 67:4 68:19
72:22

**cast (1)**
43:9

**categories (1)**
84:16

**category (1)**
84:23

**caught (1)**
89:9

**cause (1)**
28:22

**caused (1)**
26:18

**causes (3)**
26:22 27:1 75:5

**Cayman (36)**
4:14 6:19 7:7,9,12,
15 10:11,20 13:19
14:20 15:8,11 37:18,
20 46:20 47:7 52:13

59:17 60:24 64:19,21
69:3,4,8,14,17 74:4,7
75:23 76:1,5 77:9
78:18 79:2,2 83:18

**Caymans (24)**
7:19 9:3 13:4 15:20
16:3 18:12 20:15,17
40:12 41:21 42:18,22
46:15 51:13 52:24
55:11 62:11 68:22
75:4,16,18 98:2,6,13

**Caymans' (1)**
99:16

**Cayman's (1)**
14:24

**ceremonies (1)**
6:24

**ceremony (1)**
7:4

**certain (4)**
26:24 36:23 53:2
95:2

**certainly (11)**
13:21 17:1 61:3
75:19 84:20 90:16,23
93:9 98:16 100:2,7

**certainty (1)**
92:13

**Certificates (1)**
42:21

**certification (2)**
93:7 95:9

**cetera (1)**
55:2

**challenge (2)**
46:18 95:22

**challenged (2)**
29:13,13

**challenging (1)**
96:23 97:19 101:6

**chance (3)**
28:18,19 55:21

**change (9)**
13:21 68:15 69:17
71:17 85:8,11 86:5,5
88:21

**changes (17)**
7:16 68:3,16,17
80:19,24 84:6,15,21
87:18,19 88:2,9,13,14,
16 92:10

**Chapter (6)**
21:19 26:15 28:12,
13 81:5 91:10

**characterization (1)**
16:18

**characterized (1)**
74:22

**cheaper (1)**
83:18

**check (1)**
46:16

**chief (5)**
3:16 39:12,12
48:17 82:8

**chose (1)**
83:16

**Christopher (2)**
81:4,6

**circle (1)**
38:19

**Circuit (2)**
44:5 99:5

**circular (2)**
31:12 32:5

**circulate (1)**
90:13

**circumstance (1)**
98:19

**circumstances (4)**

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 108 of 133 PageID #: 115

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

76:21 77:17 96:7
99:2

**circumvent (1)**
52:23

**circumvented (1)**
38:9

**cite (4)**
23:14 43:21 47:16
96:14

**cited (5)**
23:20,22 41:9
70:13 73:1

**claim (23)**
22:5,6 25:8,18 26:3,
15,20,20 28:10 41:8
44:8 45:24 63:16
65:11 67:17,19,21
70:6,16 86:14,20,22
87:12

**claimant (1)**
86:19

**claims (25)**
7:16 23:18 24:23
27:11 29:18 32:7,14
41:12 44:11 46:1,2
51:12 63:7,9 65:9,11,
23 66:19,22 70:13
75:6 86:6,11 87:5,8

**clarify (1)**
64:18

**class (2)**
31:19 65:18

**clause (2)**
33:11,19

**clear (8)**
22:24 24:3 37:21
38:15 61:13 62:9 65:8
66:19

**clearer (1)**
19:22

**clearly (3)**
8:11 23:23 94:16

**CLERK (3)**
3:1 73:5 80:9

**client (2)**
35:15,20

**clients (4)**
35:16 48:24 62:10
64:3

**clients' (1)**
7:17

**close (1)**
26:21

**closed (2)**
17:20 99:7

**closetful (1)**
39:21

**closing (1)**
99:24

**co-counsel (1)**
3:9

**Code (4)**
36:11 89:8 93:18
94:18

**collateral (13)**
14:16 60:9 66:15,
16,20 67:4 68:19 69:1,
7 72:22 89:13 90:7
91:22

**colleague (3)**
3:8 83:3 85:22

**collection (2)**
46:4 76:11

**colloquy (1)**
96:4

**Columbian (1)**
36:21

**come (4)**
29:22 35:15 46:8
97:16

**comers (1)**
30:8

**comes (1)**
90:24

**comfortable (1)**
98:16

**coming (3)**
35:17 46:23 90:6

**comity (2)**
77:21,23

**commenced (3)**
18:3 38:22 79:6

**commencement (1)**
82:1

**commencing (2)**
40:8 94:8

**commend (1)**
97:19

**comment (7)**
75:17,19,21 77:16
86:22 89:5 98:3

**commentary (1)**
30:14

**comments (9)**
30:14 40:15 62:14
68:18 70:12 84:23
90:8 91:16 100:12

**commitment (1)**
4:24

**committed (1)**
17:5

**committee (1)**
62:2

**common (1)**
39:9

**companies (6)**
28:17 37:21 38:1
42:20 55:5 59:8

**company (22)**
5:2 6:9 14:4,19,19

21:15 24:10,10 28:24
29:9 38:1 47:2 55:11
58:3,4,7,8 64:19
70:11 83:10,19 100:16

**Company's (2)**
14:22 42:23

**competent (1)**
76:2

**competing (1)**
95:23

**complained (1)**
48:18

**completed (1)**
7:12

**completely (4)**
33:5 41:19 43:1
52:6

**complex (7)**
16:9 19:13 34:1
78:16 90:18 96:1
97:20

**compliance (1)**
82:14

**complicated (5)**
32:17 42:18 43:15
54:24 74:23

**concern (3)**
48:4 60:14 98:10

**concerned (1)**
48:22

**concerns (9)**
48:8,20,22 61:14
75:14 77:6 92:2 96:14
98:5

**concert (1)**
13:6

**concerted (1)**
51:19

**conclude (2)**
20:7 73:19

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

**conclusion (2)**
 51:8 94:7

**conclusory (1)**
 27:2

**concurrently (1)**
 18:17

**conditions (1)**
 95:3

**conducted (1)**
 93:4

**Conf (1)**
 57:17

**conference (2)**
 12:9 57:18

**confident (2)**
 22:16 78:5

**configured (1)**
 86:10

**confirm (9)**
 4:19 5:9 9:4 15:5
 16:19 18:10 91:4,15
 95:6

**confirmation (33)**
 3:13,18,24 4:4,8
 8:22 9:20 15:10 18:6
 20:23 30:3 59:2,3
 72:11 73:10,13 76:8
 77:15 78:7 79:7,11
 80:17,23 82:8 83:21
 88:6 89:5 91:9 93:11,
 24 94:5,11 97:17

**confirmed (1)**
 54:7

**confirming (2)**
 93:1 100:15

**conforming (5)**
 84:21 87:18,19
 88:14,16

**confusion (2)**
 14:1 68:5

**connection (1)**
 75:9

**conscious (1)**
 33:19

**consensual (4)**
 24:13 25:10,11
 94:11

**consent (1)**
 24:18

**consenting (1)**
 61:10

**consider (3)**
 61:12 70:22 93:13

**consideration (2)**
 16:24 96:19

**considerations (1)**
 95:23

**considered (3)**
 60:15 70:2 74:20

**consistent (4)**
 7:24 85:19 89:20
 95:6

**construction (1)**
 54:19

**constructive (1)**
 45:16

**cont (1)**
 33:2

**contacted (1)**
 85:15

**contains (1)**
 93:20

**contemplated (2)**
 31:21 92:4

**contemporaneous (1)**
 10:23

**contested (2)**
 20:23 23:8

**context (9)**
 6:6 36:2 57:15 61:5

 70:22 71:4,5 73:9,12

**continually (1)**
 42:6

**continuance (1)**
 7:7

**continuances (2)**
 48:13,13

**continue (1)**
 7:14

**continued (2)**
 7:18 42:10

**continues (1)**
 41:13

**contract (3)**
 28:20 32:22,23

**contracts (1)**
 56:22

**contractual (1)**
 26:11

**contrary (1)**
 39:14

**control (2)**
 59:18,23

**controls (1)**
 32:11

**conveyance (1)**
 51:12

**conveyances (1)**
 11:21

**convinced (1)**
 46:13

**cooperated (1)**
 14:14

**cooperating (1)**
 8:23

**coordination (1)**
 10:19

**copy (5)**
 30:20 34:12 36:8
 56:16 90:13

**corollary (1)**
 39:19

**corporate (5)**
 40:3 42:16 47:2
 76:13 99:24

**Correct (6)**
 15:22 49:3,18
 50:18 60:4 87:10

**correctly (1)**
 74:22

**could (27)**
 6:21 7:13,14 10:8,9
 12:15,24 13:18 19:22
 22:2 26:6 29:13 33:1,
 3 44:15 46:3,18 52:10
 53:22 55:20 59:7,18
 63:16 64:17 70:9
 84:10 86:17

**couldn't (2)**
 52:19 59:12

**counsel (21)**
 6:11 10:20 11:12
 14:15 25:19 35:14,18
 37:7,11 38:9,10 60:7,
 13 61:6 69:4 78:14
 82:7 91:21 95:7,8,9

**counsel's (3)**
 49:2 91:15 95:19

**countenance (1)**
 30:1

**counterclaim (1)**
 43:19

**couple (6)**
 29:7 33:21 40:16
 54:22 80:2 83:12

**course (7)**
 15:1 68:21 74:24
 83:8,13 94:12 95:20

**COURT (243)**
 3:2,11,15,20 4:1,5,

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 110 of 133 PageID #: 117

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

11,15 5:14 6:11 7:1,3,
8,10,15 8:5 9:9,12,15,
18,22 10:15,21 11:3
12:2,9 13:10,11,14,17,
19 14:6,7 15:8,13,23
16:12,16,20 18:4,8
19:5,15 21:2,13,24
22:7,9,21,24 23:2,5
29:2,5 30:1,5,12,24
31:2,6 34:6,9 35:2,10,
22,23 36:12,17,18
37:9,23 38:19,24 39:1,
1,5,17 40:12,13,18
41:2,10 42:1 43:6,17
44:3,6 45:3,5,22 46:3
47:6,21,23 48:2,23
49:5,8,13,16,20,24
50:3,4,9,14,17,20,22,
23 51:1,3,5 53:8,10,
15 54:2,10,21 55:18,
23 56:4,8,15,18 57:10,
13 58:21 59:1,4 60:2
61:3,22 62:18,20
63:21,24 64:9,14 65:3
66:3,7,13,23 69:10,13
70:21,24 71:5,9,13
72:1,18 73:2,6,9,12,
22 74:1,15,18 75:11,
16 76:1,2,15 77:17,18
78:2,2,21 79:3,4,15,
18,21 80:5,10,20,21
81:1,22 82:3,24 83:6,
23 84:1,8,11,14,19
85:1,19 86:3,7,12,16
87:1,4,8,11,16,22
88:1,7,10,15,19,23
89:7,19 90:1,14,16
91:3,7,12,18 92:15,19
94:6,9,10,19 95:4,22
97:3,12,22 98:23 99:1,

2,10 100:3,7,9,11,15,
19,21,23 101:2,13

**courtroom (3)**
3:16 14:15 17:22

**courts (4)**
7:13 22:11 74:12
77:18

**Court's (7)**
18:20 48:4 50:5
53:12 61:15 76:7 94:7

**created (1)**
68:11

**credible (1)**
17:8

**credit (1)**
66:12

**creditor (12)**
5:8 26:7,7,9 41:20
43:11,12 46:23 75:24
79:9 86:19 93:21

**creditors (13)**
39:8 46:8,24 62:11
65:1,16,19,21,22 69:2
87:5,11 93:8

**criminally (1)**
22:17

**cross (1)**
71:11

**crossed (1)**
10:24

**cross-national (1)**
52:18

**crystal (2)**
62:9 66:18

**cure (1)**
52:5

**cured (1)**
48:21

**current (2)**
27:15,16

**currently (5)**
16:24 40:17 44:18
46:1 86:24

---

**D**

---

**damages (4)**
25:22 26:5 67:19
70:17

**date (2)**
42:8 89:4

**dated (1)**
72:24

**dates (1)**
88:16

**Dave (1)**
48:19

**day (1)**
8:11

**days (4)**
33:21 42:12 83:13
91:23

**deal (18)**
10:9,9 19:2 31:22
32:9,10 43:19 59:8,12,
14 69:10 72:10 76:3
77:18 78:1 87:13,13
96:21

**dealing (4)**
33:5 35:24 69:13
78:1

**dealt (3)**
21:21 76:22,24

**debt (4)**
42:24 43:5 58:10
68:24

**Debtor (31)**
17:6,17 18:3 26:12
35:10 44:17 52:14
54:12 55:10 56:23

67:18,24 73:23,24,24
76:19 78:14,15,19,24
79:5 82:19 94:1 95:7
96:8,9,17 97:6 98:9,
19 101:5

**Debtors (74)**
3:6 5:1 6:19 7:9,24
8:19,23 9:7 11:11,13
21:14 23:18 24:5,7,12,
14 25:4,10,17,18,20
26:4,23 27:1,11,13,13
31:12 33:10 34:21
35:13 37:11 40:20,22
43:9 45:10 47:7,15,17
48:21 51:13,18,22
52:22 53:6 56:17,20,
21,24 58:12 59:6 67:2
69:16 70:5,6,10 75:9
80:14 81:16,19 82:11
83:4,13 87:9 89:1,12,
18 92:22 93:4,7 94:17
95:1 97:1 101:11

**Debtors' (30)**
3:16 4:10,17,19
9:22 10:13 11:12
16:17 17:7 18:9 24:11
28:6 30:9 37:7 38:10
41:17 43:4 53:21 62:8
67:22 73:9 76:8 77:15
78:7 81:5 82:8 89:2
91:8,15 99:14

**debts (1)**
24:1

**December (1)**
72:24

**decided (1)**
45:22

**decision (1)**
93:22

**declaration (11)**

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 111 of 133 PageID #: 118
Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.
Transcript Of Electronic Recording
January 14, 2016

36:10 51:1 70:23
81:4,6,10,13,15,18
93:5 95:19

**declarations (5)**
70:20 71:1 81:4
82:6 93:3

**DeClare (7)**
3:19 39:11 40:7
69:23 81:4,7 97:22

**DeClare's (2)**
39:20 95:18

**deemed (2)**
65:12 86:15

**deems (1)**
69:13

**Deepwater (1)**
58:7

**defects (1)**
38:21

**defer (1)**
71:12

**defined (1)**
85:13

**definition (4)**
38:4 68:6,11,11

**DeFrancheschi (1)**
3:9

**defy (1)**
53:12

**degree (1)**
92:13

**Delaware (1)**
40:2

**delay (5)**
6:5,9 15:9 44:21
46:4

**delaying (1)**
33:22

**delivered (1)**
31:20

**demand (1)**
43:18

**demonstrated (5)**
79:8 92:16 95:1
96:17 97:5

**demonstrates (1)**
93:3

**denied (1)**
11:3

**Dennis (1)**
62:1

**deny (2)**
16:1 59:1

**Denying (1)**
59:5

**deserves (1)**
86:20

**designed (1)**
14:1

**detail (2)**
26:24 69:16

**details (1)**
90:22

**determination (1)**
75:20

**determine (2)**
20:22 71:22

**determined (1)**
44:1

**determining (2)**
8:3 31:7

**detriment (1)**
51:15

**Deutsche (2)**
57:17,18

**difference (1)**
25:13

**different (14)**
17:22 18:11,13,16,
17 43:2 46:15 47:18,

18 48:4 55:3 76:21
77:19,19

**differently (5)**
18:1 24:3 25:14
27:19 53:4

**difficult (1)**
77:17

**difficulty (2)**
53:2 96:6

**dig (1)**
19:9

**diligent (1)**
78:1

**diligently (1)**
92:1

**direct (2)**
41:8 45:24

**direction (1)**
26:8

**directions (1)**
76:12

**directly (7)**
7:8 13:16 20:8
23:21 27:9 32:7 72:11

**director (11)**
3:22 4:3,7,9 24:4
27:12,14,15,20 31:14
70:4

**directors (12)**
23:23 24:13 25:13
33:17 39:7,9,18 40:11,
22,23 69:22 70:8

**disagree (2)**
19:1 40:21

**disallowed (2)**
86:15,16

**discharge (1)**
40:20

**disclosure (14)**
3:18 4:18 12:20

21:11 33:4 46:10
47:12 48:8,10 81:7,11
93:13,16,20

**discussed (2)**
82:4 95:8

**discussion (1)**
74:3

**dismissed (1)**
54:6

**disposed (1)**
44:9

**disposition (1)**
44:10

**dispute (6)**
29:15 69:19,20
70:2 71:4,6

**disputed (2)**
63:5 86:6

**disputes (2)**
32:2 75:6

**disputing (1)**
67:13

**distinguished (1)**
47:22

**distribute (1)**
80:23

**distribution (2)**
65:22 92:3

**Docket (9)**
81:6,9,12,15,17,17,
20,22 88:16

**doctrine (1)**
88:5

**documentary (1)**
71:14

**documents (6)**
5:11 31:9 53:8 61:8
89:21 94:15

**dollars (3)**
29:17 63:1 68:23

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

**done (8)**
  15:24 33:15,16
  38:8 46:13 51:23
  68:21 69:8
**double-checking (1)**
  42:10
**Doug (4)**
  41:14,16 51:1 57:24
**down (2)**
  18:12 90:23
**draw (1)**
  56:10
**Drilling (9)**
  14:3,18,19,22 15:5
  58:3,4,6,8
**drove (1)**
  63:10
**due (1)**
  48:7
**Dunne (3)**
  61:23,24 62:1
**duplicate (1)**
  49:7
**during (2)**
  90:11 92:8
**duties (7)**
  39:7,7,15 41:1
  59:14 69:23 70:7
**duty (1)**
  41:6
**dynamic (1)**
  16:8

### E

**Each (4)**
  82:10,19,20 95:1
**earlier (5)**
  85:10 89:15 90:17
  94:6 98:7

**earliest (1)**
  6:21
**early (1)**
  19:17
**economic (1)**
  74:15
**Edmund (1)**
  35:13
**Edward (1)**
  91:21
**effect (1)**
  11:5
**effective (13)**
  9:23 16:23 17:18,
  21 78:15 83:5,7,9,20
  89:4 98:9,20 100:17
**effectively (1)**
  99:24
**efficient (1)**
  20:19
**effort (4)**
  4:20 33:19 44:20
  51:19
**efforts (4)**
  44:21 46:4 59:6
  101:3
**either (4)**
  9:16 38:22 53:23
  60:18
**Eldridge (10)**
  4:13 11:7,11 12:16
  35:4 36:13,23 37:14
  69:12,14
**Eldridge's (5)**
  42:3 47:4 49:22
  50:6 59:16
**elements (3)**
  37:3 94:21 97:2
**else (5)**
  26:10 30:6,9 46:9

  92:20
**elsewhere (1)**
  16:21
**e-mails (1)**
  10:24
**emerge (2)**
  28:17 101:5
**emergency (3)**
  11:8 98:22 100:8
**employees (1)**
  5:2
**employment (1)**
  56:24
**encompanied (1)**
  13:7
**end (6)**
  15:8,14,14 60:22
  65:24 69:18
**endeavor (2)**
  77:20 83:9
**ended (1)**
  86:23
**Energy (2)**
  30:21 96:6
**engagement (1)**
  52:23
**enormously (1)**
  54:24
**enough (1)**
  23:11
**ensure (2)**
  77:20 78:3
**enter (9)**
  7:10,15 9:19 13:1
  26:19 59:7 92:24 97:8,
  18
**entered (5)**
  12:24 37:15,18
  39:13 66:20
**enterprise (1)**

  97:23
**entertain (2)**
  90:24 95:8
**entirety (1)**
  41:13
**entities (5)**
  39:19 53:5 55:1,1,5
**entitled (1)**
  93:9
**entity (2)**
  55:13 83:18
**environment (3)**
  96:8,24 101:7
**Epic (2)**
  4:10 81:13
**equal (1)**
  99:17
**equitable (4)**
  53:9,11,17 99:6
**equity (6)**
  29:15 32:5 62:18
  63:10,12,14
**especially (1)**
  70:22
**essentially (1)**
  37:3
**establishment (1)**
  89:2
**estate (1)**
  85:17
**et (1)**
  55:1
**ethical (1)**
  36:19
**evaluate (1)**
  61:13
**evaluation (1)**
  29:7
**even (12)**
  5:23 10:24 15:4

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 113 of 133 PageID #: 120

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

18:17 21:23 37:2
38:10 40:23 46:22
52:16 65:16 70:16

**event (2)**
68:1 70:3

**ever (4)**
15:4 24:8,10 62:14

**every (2)**
86:19,19

**everybody (6)**
13:18 52:16 61:9
66:7 71:11 72:18

**everyone (5)**
5:1 6:2 9:6 44:8
89:16

**everyone's (1)**
101:3

**everything (2)**
6:3 83:12

**evidence (15)**
9:7 14:10 26:24
34:5 36:2,6 46:12
59:11 61:1,7 70:1,20
71:14 80:17 93:6

**evolution (1)**
99:6

**evolving (1)**
85:20

**ex (1)**
34:3

**exactly (3)**
10:2,2 87:15

**example (2)**
22:2 62:7

**except (1)**
52:17

**exception (1)**
21:17

**exclude (1)**
33:19

**excluded (3)**
33:11,13,18

**exculpated (1)**
85:17

**exculpation (6)**
33:11,18 68:4,12
85:9,14

**excusable (1)**
37:17

**excused (1)**
79:14

**execute (1)**
45:18

**exercise (1)**
78:4

**exhibit (25)**
13:9,13 14:2 30:23
34:5,13 35:1,3,9
37:22 42:3,4 45:2
49:14,22 50:1,12,13
56:12,13 57:9,9 58:5
81:17,20

**exhibits (4)**
30:19 43:17 49:11,
16

**exists (1)**
20:6

**expect (2)**
89:20 100:16

**expectation (2)**
9:23 78:17

**expectations (1)**
99:14

**expected (1)**
98:2

**expedient (1)**
48:5

**expedited (2)**
79:23 95:17

**expeditiously (3)**

30:2 70:10 100:5

**expense (1)**
13:19

**experience (1)**
52:18

**explains (1)**
69:15

**explanation (1)**
52:15

**Explorer (1)**
45:13

**express (1)**
101:4

**expressed (1)**
96:15

**expressly (1)**
21:16

**extension (1)**
7:6

**extensive (1)**
73:14

**extent (13)**
7:9,23 10:6 16:2
60:15,19 69:13 70:18
82:15 90:20 94:22
99:13 100:9

**extinguish (1)**
44:10

**F**

**F2d (1)**
43:24

**F3 (16)**
6:15 13:21 20:11
21:10,14 30:21 32:4,9,
11,13 53:7 73:11,19
75:9 76:10,16

**F3's (1)**
32:2

**FAA (1)**
18:15

**face (2)**
17:8 45:7

**faced (1)**
94:10

**facility (2)**
66:12,17

**fact (9)**
13:18 24:6 33:9
63:2 67:12 74:1,10
96:7,16

**factors (1)**
82:20

**facts (3)**
35:16 47:23 60:16

**factual (1)**
26:24

**failed (1)**
23:14

**Fair (1)**
23:11

**fairly (1)**
95:17

**familiarity (1)**
36:21

**family (1)**
76:13

**far (1)**
63:18

**Fargo (10)**
41:19 46:24 47:1
50:18 52:15 59:9 60:4,
7 66:15 89:12

**Fargo's (1)**
92:1

**favor (2)**
27:17 69:1

**FD (1)**
69:23

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 114 of 133 PageID #: 121
Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.
Transcript Of Electronic Recording
January 14, 2016

**FE (1)**
  52:11
**feasibility (1)**
  11:22
**Federal (2)**
  36:10 74:12
**fell (1)**
  58:20
**few (5)**
  3:14 8:8 72:14
  80:19 90:8
**fiduciaries (2)**
  33:18 85:17
**fiduciary (11)**
  24:2 27:5 31:13,23
  33:9 39:15 41:1,6
  59:14 69:23 70:7
**figure (2)**
  11:4 72:3
**file (8)**
  22:4,5 52:14,19
  69:5 86:20 87:6,12
**filed (33)**
  5:9,15 6:18,23 8:10,
  10 10:19,22 11:9,9,10
  16:20 33:10,20 35:11,
  14 42:16 46:16 50:4,
  17,24 52:1,2 54:21
  58:17 64:16 68:6
  77:12 79:6 84:7,16
  86:14 88:9
**filing (5)**
  12:7,8 21:18,21
  52:15
**filings (1)**
  6:17
**final (9)**
  5:10 50:12 58:21
  59:2,3 66:20 68:19
  72:21 92:7

**finalizing (1)**
  94:15
**Finance (2)**
  57:17,18
**financial (1)**
  48:11
**financing (1)**
  28:23
**find (9)**
  5:23 19:19 62:21
  64:17 70:19 72:8
  75:13 83:11 94:24
**finding (1)**
  32:23
**fine (4)**
  49:8 78:12 90:17,23
**finish (1)**
  87:23
**firm (1)**
  4:13
**first (12)**
  3:10 21:5 30:19
  33:12 46:8 49:22
  57:21 58:23 62:17
  84:17 85:8 88:20
**five (1)**
  29:9
**flip (2)**
  17:23 99:7
**fly (1)**
  55:21
**folks (3)**
  58:13 79:21 92:15
**follow (4)**
  8:1 36:10 64:19,21
**following (4)**
  9:5 41:3 81:3 95:15
**fool (1)**
  55:14
**footnote (3)**

**21:8 53:14 58:20**
**foreclose (1)**
  14:16
**foregoing (1)**
  21:16
**foreign (2)**
  55:1 78:2
**forgive (1)**
  55:9
**form (7)**
  5:10 27:3,5 49:11
  56:13 69:6 95:10
**former (6)**
  24:9 27:7,14,15,17
  33:9
**forming (1)**
  83:18
**forth (1)**
  35:8
**forum (1)**
  77:8
**forum's (1)**
  78:3
**forward (17)**
  10:5 14:17 17:10
  18:9,21 19:20 20:9
  30:2 33:6 36:4 41:12
  44:15 76:7 78:6,19
  79:10 95:21
**four (3)**
  37:11 57:14,20
**Fox (10)**
  60:6 85:2,3,6,15
  86:18 91:11,13,13,21
**frankly (11)**
  5:24 10:5 16:10
  17:8 20:22 26:6 29:23
  36:6 69:9 96:18,22
**fraud (1)**
  26:20

**fraudulent (2)**
  11:21 51:11
**Freres (1)**
  3:23
**front (5)**
  21:9 54:13,15
  55:16 65:20
**frustrating (1)**
  17:21
**full (2)**
  31:18 92:9
**fully (1)**
  19:22
**further (14)**
  7:10 17:13 18:22
  20:16 63:8 77:16
  78:21 82:10 91:2
  95:15 97:9 98:14 99:4
  101:9

## G

**Gabriel (2)**
  3:8 84:3
**gap (1)**
  53:24
**gating (3)**
  19:24 20:1 82:13
**gave (1)**
  56:8
**general (2)**
  18:19 40:3
**generally (4)**
  19:10,18 36:1,15
**getting (6)**
  10:11 32:16 62:14
  66:1 69:24 71:19
**give (3)**
  19:5 87:1,22
**given (5)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

17:4 20:20 71:21
83:10,11

**Global (3)**
47:19 77:3 99:22

**goes (3)**
16:23 69:15 94:20

**going (45)**
4:21 8:24 9:2 10:2,
3,4 11:17 14:19,24
15:10 16:1 17:17 22:8
25:1 28:19,20,21,21,
22 29:11 32:18 34:24
42:14 43:14 46:8
55:10 56:24 57:2 61:4
62:4 63:20 76:12
78:15 83:5,8,20 98:4,
5,9,13,19 99:20,23
100:1,6

**going-forward (2)**
97:24 101:5

**gone (1)**
41:12

**good (23)**
3:3,4 4:1,15 6:12,
13 31:7 56:15 60:3,5
61:24 80:13 84:2 85:1,
2,3 88:7,23 90:2
91:11,12,18,20

**Gotshal (4)**
3:5 67:1 80:13 84:3

**gotten (1)**
63:18

**governed (1)**
68:24

**governing (1)**
77:2

**grant (5)**
13:20 53:9,11 68:1
89:12

**granted (3)**

24:22 25:15 53:23

**granting (4)**
24:18 25:9 59:3
70:14

**grants (1)**
46:3

**grave (1)**
14:9

**Great (3)**
31:2 84:11 88:10

**ground (1)**
65:13

**grounds (2)**
9:16 20:18

**Group (2)**
30:22 42:5

**groups (1)**
4:22

**guess (5)**
15:16 22:1 76:12
97:14 99:12

**guided (2)**
20:16 78:22

# H

**half (1)**
68:23

**hallway (1)**
99:8

**hand (4)**
34:24 37:21 56:12
84:10

**handed (3)**
14:2 34:3 78:10

**handicap (1)**
99:15

**handle (2)**
6:6 16:7

**handling (1)**

101:12

**happen (2)**
34:16 98:13

**happened (1)**
22:10

**happens (2)**
45:9 100:20

**happy (5)**
56:2 85:7 87:20
90:24 96:11

**hard (1)**
4:24

**hard-negotiated (1)**
4:20

**HARKIN (2)**
35:12,13

**harm (2)**
28:12 29:23

**hat (2)**
39:21,23

**hats (3)**
39:21 40:24 59:15

**havoc (1)**
29:23

**head (1)**
72:15

**headquarters (1)**
57:4

**hear (7)**
6:3,11 10:8 30:6
42:6 61:12,13

**heard (16)**
6:1 18:23 21:21
34:21 44:9 56:21
73:12,20 75:11 77:13
82:5 85:9 91:8 92:6,
20 94:9

**hearing (31)**
4:18 5:13,17 8:7,22
10:4,5,7 12:10 15:10

16:2 17:2,14 18:6
19:7 20:9 25:19 43:8
48:19,24 56:21,22
73:10,15 75:1,12 77:4
85:21 90:11 92:8 94:7

**hearings (1)**
48:15

**hearsay (2)**
22:20 35:16

**heck (1)**
19:16

**held (1)**
26:22

**Hemisphere (1)**
54:20

**high (1)**
92:13

**highlight (1)**
43:13

**highly (1)**
15:3

**himself (1)**
32:13

**hinder (2)**
44:21 46:4

**hinders (1)**
44:24

**hired (1)**
58:11

**hit (2)**
67:5,7

**hoc (1)**
62:2

**hold (3)**
39:18 69:7 87:5

**holding (2)**
55:5,11

**holds (1)**
27:21

**holes (1)**

64:17

**homework (1)**
68:22

**honest (1)**
47:8

**Honor (108)**
3:5 4:16 5:4,13,18,
20,23 6:6,14,16 8:4,6,
11,18 10:1,6,10,17
13:13,23,24 14:3,18,
21 15:3,7 21:1,4,20
22:15,23 23:12,13
25:3,16 26:2,17 27:5,
6,21 28:9 29:10 30:11
34:8 35:12,20 36:7
37:5,21 46:7 49:4,10,
19,21 50:2,8,11,19
54:3 55:17 56:2,11
57:9,12 59:24 60:5,6
61:18,19,24 63:20
66:24 67:5 68:13,18
69:19 70:12,18 71:10
79:13,17 80:4,13 81:2
82:22 83:2,3 84:3
85:4 86:2 87:3,7,15,
21 88:6,18 91:2,6,11,
21 92:11 97:21 98:24
99:9,19 100:6 101:1,
10

**Honor's (1)**
90:4

**hopeful (1)**
92:13

**host (1)**
36:18

**hot-button (1)**
23:8

**hours (1)**
47:10

**Houston (1)**

57:5

**However (2)**
35:17 37:20

**humble (1)**
50:20

**humility (1)**
50:23

**hypothetical (1)**
93:21

**hypothetically (1)**
63:5

**I**

**idea (1)**
53:17

**identification (1)**
74:14

**identified (5)**
20:21 54:1 76:11
82:7 94:21

**illegal (1)**
28:8

**illusions (1)**
61:9

**illustrate (2)**
60:21 61:2

**imagine (1)**
99:22

**immediately (1)**
17:18

**impact (2)**
16:22,22

**impacts (1)**
76:6

**impaired (1)**
65:14

**impairment (1)**
65:15

**impediment (1)**

99:17

**implementation (4)**
83:15 84:18 90:9
92:3

**implicating (1)**
89:8

**importantly (1)**
8:14

**improperly (1)**
41:23

**impropriety (1)**
52:13

**inaccuracies (1)**
51:24

**inadequate (2)**
12:21 47:12

**inappropriate (2)**
30:13 35:17

**inappropriately (1)**
40:8

**inaudible (6)**
50:16 61:20 71:3,8
72:17 81:19

**incentive (1)**
89:3

**inception (1)**
32:9

**inchoate (2)**
32:21,24

**inclined (1)**
13:20

**incorrect (4)**
11:16 27:10 52:3
69:21

**incumbent (1)**
97:3

**indeed (2)**
38:21 40:9

**indemnification (1)**
27:11

**indemnity (1)**
89:11,18,19

**indentured (3)**
14:14 60:9 91:22

**independent (3)**
7:18 59:13,14

**indicate (1)**
78:15

**indicates (1)**
89:15

**indicative (1)**
67:11

**indicted (1)**
22:18

**individuals (1)**
39:20

**induced (1)**
32:9

**Industrial (1)**
47:19

**inevitably (1)**
54:24

**informal (1)**
91:16

**information (4)**
52:10 61:6 93:17,20

**informed (1)**
93:22

**initial (1)**
48:15

**initially (1)**
51:14

**initiated (1)**
75:18

**injecting (1)**
41:23

**injunction (15)**
6:23 7:10,16 8:7,9
10:3,18 11:8,9,14
13:4,20 15:2 42:16

Case 1:16-cv-00047-UNA    Document 1-2    Filed 01/29/16    Page 117 of 133 PageID #: 124

Bankruptcy Court for the District of Delaware                                    Transcript Of Electronic Recording
In Re: Offshore Group Investment Limited, et al.                                                    January 14, 2016

**45:21**

**injunctive (3)**
   9:4 13:16 15:11

**innkeeper's (1)**
   43:9

**innuendoes (1)**
   60:16

**input (1)**
   94:12

**instance (1)**
   74:19

**instances (1)**
   22:11

**instincts (1)**
   78:14

**instructed (1)**
   37:7

**instrument (1)**
   26:10

**insufficient (4)**
   27:3 62:24 67:20
   68:1

**intend (1)**
   83:22

**intended (1)**
   10:18

**intercompany (1)**
   29:18

**interest (9)**
   26:10 31:16 42:20
   47:6,13 64:22 65:1,14
   74:15

**interests (6)**
   35:7 46:14,20 64:6,
   20 77:8

**interim (1)**
   7:2

**international (3)**
   32:17 34:1 99:23

**interpretation (1)**

**47:18**

**interrupt (1)**
   60:12

**intrinsic (1)**
   13:2

**introduce (2)**
   34:4 45:1

**introduction (1)**
   6:7

**introductions (1)**
   3:15

**intruding (1)**
   78:3

**Investments (1)**
   30:22

**investor (1)**
   93:21

**invoke (1)**
   22:6

**invoked (2)**
   18:4,20

**involve (1)**
   67:22

**involved (4)**
   5:1 32:20 53:3 74:1

**involvement (1)**
   94:14

**involving (3)**
   21:14 23:22 25:17

**ironic (1)**
   83:11

**irrelevant (2)**
   26:23 27:23

**Island (1)**
   14:24

**Islands (12)**
   4:14 6:20 14:20
   60:24 69:18 74:4,8
   76:5 77:9 78:18 79:2,3

**Islands' (1)**

**15:11**

**issue (31)**
   12:5 19:3,13,23,24
   20:1,6,8 25:20 28:5
   34:22 40:3,6,15,19
   42:7 45:23 46:15
   52:11 53:16 58:2,19
   60:12 62:17 69:9
   71:20 76:11 82:13
   85:21,24 92:12

**issued (1)**
   7:8

**issues (24)**
   6:10 10:11,20 11:5
   15:7,20 19:12 20:14
   23:9 32:17 39:3,4
   43:14 47:23 52:8
   58:22 75:14 76:12
   77:23 92:2 95:12
   97:15 98:4 100:20

**itself (3)**
   36:22 41:23 70:17

**J**

**jack (1)**
   31:19

**jack-ups (1)**
   32:1

**James (6)**
   4:9,13 35:4 43:24
   66:9 81:13

**January (4)**
   42:8,10 56:22 59:21

**joint (1)**
   91:9

**Journal (1)**
   54:17

**Judge (5)**
   8:1 17:15 19:10

**54:15 55:14**

**judicial (3)**
   81:22 82:22,24

**jurats (1)**
   36:9

**jurisdiction (19)**
   12:3 18:3,4,20
   21:12,24 22:6,9 43:6
   44:3 53:12 54:2,6,20
   55:12 58:18 76:3
   77:10 85:21

**jurisdictional (1)**
   53:13

**jurisdictions (3)**
   32:19 75:5 77:19

**K**

**keep (1)**
   33:24

**keeping (2)**
   96:6,13

**kept (1)**
   43:8

**kind (3)**
   28:14 47:20 99:7

**knew (2)**
   47:11 52:16

**knowingly (1)**
   39:14

**knows (3)**
   5:4 22:18 36:23

**KTSANES (5)**
   66:5,9,9,14 67:3

**L**

**lacked (1)**
   27:7

**lacks (2)**

Case 1:16-cv-00047-UNA Document 1-2 Filed 01/29/16 Page 118 of 133 PageID #: 125

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

11:22 94:9

**language (1)**
86:23

**large (1)**
78:16

**largely (2)**
15:17 87:18

**largest (1)**
54:19

**last (20)**
5:16,16 6:18 16:5
19:7 25:19 38:20 47:9
48:19,24 52:14 63:22
66:20 73:15 75:1 77:4
82:4 83:12 92:7,8

**late (1)**
92:8

**later (5)**
8:7,10 33:6 45:9
97:16

**Latham (1)**
66:9

**laughter (9)**
17:21 50:21,23
55:19,24 56:3,7 66:8
91:6

**Law (33)**
4:6 7:12 10:12 15:8
17:22 37:18,20,22
38:1,11 40:2 41:4,9
42:20 46:18,20 47:7,
16 59:17 64:2 68:23,
24 69:3,8,14,17 73:1
75:23 76:4 77:2 81:16
85:20,23

**Lazard (2)**
3:22 58:11

**Leaf (1)**
47:24

**learned (2)**

47:9 51:24

**learning (1)**
47:8

**Leasing (1)**
27:6

**least (7)**
7:7 40:2 59:20
60:20 61:15 90:19
98:11

**leaves (1)**
11:21

**leaving (1)**
77:22

**legal (2)**
30:3 32:17

**legitimate (1)**
38:23

**lenders (3)**
5:7 29:8 62:2

**less (2)**
58:1 66:1

**level (2)**
56:9 63:1

**Leveraged (2)**
57:17,18

**liabilities (1)**
54:13

**liability (1)**
23:22

**liable (1)**
24:1

**liens (7)**
33:1,3,6 66:19
68:21 75:23,24

**likely (2)**
20:18 100:1

**likewise (1)**
50:4

**Limited (5)**
30:22 36:21 42:17

47:2 58:19

**line (4)**
57:21 84:9 88:8,12

**lines (1)**
31:11

**lining-up (1)**
57:23

**liquidation (4)**
8:24 13:3 51:12
52:20

**liquidator (6)**
11:20 53:3 59:7,17,
22 61:21

**liquidators (4)**
59:10,10,11 60:23

**liquidity (1)**
57:21

**listed (3)**
31:17 42:23 50:13

**listen (1)**
15:9

**listened (1)**
95:17

**litigation (14)**
8:13 11:2 24:19,20
25:17,18 44:12 46:1
67:15,17 70:15,15
75:3 76:15

**little (4)**
17:22,23 18:11 88:5

**living (1)**
16:13

**loan (1)**
66:17

**lobby (2)**
17:18,20

**located (1)**
32:20

**long (1)**
72:2

**look (11)**
17:24 37:6,24 38:4
43:16 45:12 52:10
58:5 70:14 71:22 87:2

**lose (1)**
28:20

**lot (5)**
13:19 30:14 50:22
67:6 71:21

**lots (2)**
54:12,13

**loud (1)**
61:13

**M**

**made (7)**
32:8 33:19 48:19
57:16 62:5 86:18 89:4

**mailing (3)**
81:24 82:4,23

**mainly (1)**
76:17

**make (23)**
3:14 9:5 11:17
18:22 35:23 49:11
62:3 65:7 66:18 70:16
71:11 72:15 75:17,19,
21 77:6,16 93:22
95:14,15 98:3 100:7,
21

**makes (1)**
5:19

**making (3)**
36:17 62:16 90:21

**manage (1)**
5:6

**managed (2)**
19:9 96:20

**management (2)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

17:7 89:2

**managing (5)**
3:22 4:2,7,9 97:23

**Manges (1)**
3:5

**many (4)**
4:21 26:6 33:6
74:22

**Maple (1)**
47:2

**Maples (2)**
4:13 42:16

**Mar (5)**
54:4,10,11 55:4,4

**maritime (5)**
32:20,21 33:2,2,5

**marked (3)**
13:12 30:22 35:1

**Marsal (2)**
4:3,7

**material (1)**
28:24

**materially (2)**
76:6,21

**matter (21)**
7:4,18 12:3 16:18
21:13 35:8 40:1,2
43:6 54:5 62:22 63:3
64:2 72:6 73:8 76:20
85:24 93:13 95:3 96:7,
16

**May (24)**
13:13 16:22,22
18:10,10 21:3 27:1
31:1 35:1 37:21 38:1
45:4 49:21 55:17
61:19 65:24 78:19,21
79:12,13 84:13 85:6
87:21 97:16

**maybe (2)**

37:17 46:11

**McLaughlin (1)**
6:14

**mean (4)**
18:11 54:11 71:10
100:12

**meaningful (3)**
17:11 28:15 29:16

**meaningfully (1)**
20:23

**meaningless (2)**
40:20 46:7

**means (1)**
56:6

**measure (2)**
17:9 99:5

**mechanic (1)**
86:6

**mechanics (4)**
84:18 90:9 92:3,4

**meeting (7)**
38:7,16 39:16
51:17,18,20,23

**meets (1)**
42:21

**members (4)**
42:5,24 65:6,7

**memorandum (3)**
82:12,18 94:20

**mention (3)**
58:14 85:6,8

**mentioned (1)**
60:22

**merge (1)**
100:17

**merit (3)**
33:23 85:6,8

**merits (7)**
5:22 6:1 9:18 22:22
28:10 72:9 98:4

**Mersky (4)**
6:12,13,14,14

**met (2)**
30:3 95:1

**methodology (1)**
11:5

**mid-December (1)**
7:2

**mid-January (1)**
7:2

**might (6)**
17:15 18:17 22:13
64:16 65:10 99:22

**mightily (1)**
77:20

**Milbank (1)**
62:1

**million (4)**
45:7 57:22 58:1,10

**mind (4)**
71:17

**minimal (1)**
88:13

**minimum (1)**
99:5

**minute (2)**
52:14 62:13

**minutes (2)**
72:14 80:2

**mirrors (1)**
68:12

**mischaracterized (1)**
30:16

**misrepresentations (3)**
32:8,14 44:23

**misspoke (1)**
64:12

**mix (1)**
60:13

**moment (5)**

68:4 87:1,23 90:12
95:11

**Monday (1)**
84:7

**money (7)**
25:22 26:5 29:17
55:15 58:3 67:19
70:17

**Monsark (1)**
6:14

**months (3)**
4:21 16:14,14

**mootness (1)**
99:6

**mop (1)**
63:7

**more (7)**
5:8 43:15 52:7 63:1
69:15 88:15 93:17

**Morgan (35)**
3:8 83:4 84:1,2,3,9,
13,15,22 85:5 86:2,4,
8,13,17 87:3,7,10,15,
17,24 88:4,8,12,17,20,
24 89:10,23 90:2,15
91:1,5 97:9,11

**morning (8)**
3:3,4 6:12,13,17
60:6 61:24 84:2

**mortgages (2)**
43:1 99:24

**most (3)**
5:19 20:19 60:22

**motion (2)**
6:23 8:9

**move (24)**
3:12 6:7 14:17 16:2
17:2 18:9,21 19:18,20
20:8,9 30:2 36:4
70:20 76:7 78:6,19

Case 1:16-cv-00047-UNA    Document 1-2    Filed 01/29/16    Page 120 of 133 PageID #: 127

Bankruptcy Court for the District of Delaware                    Transcript Of Electronic Recording
In Re: Offshore Group Investment Limited, et al.                          January 14, 2016

79:10 80:17 81:3,21
95:21 99:20 100:4

**moving (4)**
17:10 20:20 21:2
79:22

**much (9)**
28:10 29:3 43:15
48:3 60:13 69:15
72:20 78:11 82:21

**mud (1)**
70:1

**multiple (2)**
4:22 59:15

**myself (3)**
47:9 71:16 95:14

## N

**name (1)**
49:2

**named (1)**
61:20

**names (1)**
69:24

**nationalities (1)**
77:19

**nations (1)**
22:4

**Natrol (3)**
47:24 48:13 76:22

**nature (1)**
85:11

**naval (1)**
99:24

**necessarily (6)**
40:10 65:20 97:13
98:12,20,22

**necessary (3)**
40:10 61:22 83:22

**need (11)**

15:15 19:11 71:15
72:14 84:20 87:5,13
90:20 92:17 95:21
97:13

**needed (5)**
10:8 15:19,19
46:14 89:5

**neither (1)**
28:4

**never (3)**
21:20 24:4 26:20

**new (5)**
7:3 68:11,22,24
83:18

**next (5)**
29:12 56:1 71:16
88:4 100:2

**night (4)**
5:16 6:18 92:7,8

**Nobu (3)**
6:15 73:11,11

**non-creditor (1)**
41:19

**non-debtor (12)**
12:3,4 21:15 25:12,
15 28:1,2 29:22 43:5
54:5 67:15,21

**None (3)**
23:18 38:8 76:6

**nor (4)**
21:15 24:8 29:13
36:9

**normally (1)**
36:9

**note (12)**
21:5 22:16 23:13
45:1,1,6,15 82:11
83:4 86:5 93:2 94:18

**noted (10)**
51:5 61:3 73:2

82:17 83:23 90:17
94:1 95:11 97:1 98:1

**notes (3)**
60:9 66:17 71:22

**nothing (11)**
9:3 10:13 46:10,11,
12 58:7 59:7 67:17
70:5,6,15

**notice (7)**
51:3 81:22 82:1,22
83:1 88:9 98:21

**noticed (1)**
12:19

**notices (1)**
12:23

**November (3)**
12:18 38:13 69:18

**Number (11)**
13:13 17:4 18:15
57:21 61:8 81:6,10,12,
15,17,20

**Numbers (3)**
81:22 88:16,21

## O

**object (4)**
22:19 75:11 86:21
89:16

**objected (2)**
30:12 65:13

**objection (20)**
5:22 8:2,3,10 10:23
18:6 21:8,9,10,21
23:10 31:3,5 34:6
49:17 50:7 57:11
70:24 71:2 81:19

**objectionable (1)**
30:15

**objections (9)**

7:20 20:13,17 72:7
73:13 77:12,14 94:4,8

**objector (1)**
73:10

**objector's (1)**
72:7

**objects (1)**
82:5

**obligations (1)**
36:19

**oblige (2)**
56:2 82:18

**obliged (1)**
93:12

**observation (4)**
17:13 18:23 95:16
101:2

**observations (2)**
30:9 97:15

**observe (4)**
15:16 36:13,20 97:4

**observed (2)**
16:10 75:12

**obtained (1)**
93:8

**obviously (3)**
20:14 72:6 90:17

**occur (1)**
98:2

**occurred (1)**
69:17

**occurring (1)**
57:6

**odds (1)**
99:1

**offer (5)**
30:23 34:4 35:9
49:22 57:8

**offered (2)**
49:15 60:21

Case 1:16-cv-00047-UNA Document 1-2 Filed 01/29/16 Page 121 of 133 PageID #: 128

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

**Office (2)**
3:11 94:12

**officer (12)**
3:17 24:4 27:7,12,
14,15,20 31:14 36:16
39:12,13 70:4

**officers (10)**
23:23 24:13 25:13
27:17 33:17 39:18
40:11 57:1,2 70:8

**office's (1)**
91:16

**official (1)**
51:3

**Offshore (2)**
30:21 42:5

**often (2)**
35:23 99:10

**OGIF (1)**
42:11

**OGIL (41)**
14:17 24:1,6 26:16,
18,18,20 27:21 31:13,
14,15,24 32:7,9 33:9
34:18,23 39:12 42:12
43:5 44:17 46:21 58:7
59:22,23 62:23 63:7,9
64:5,13,19,23 65:2,
6 66:2 67:12,23 70:9
83:16,19

**OGIL's (1)**
27:16

**once (1)**
95:9

**One (21)**
8:9 15:17 17:14
22:1 23:14,24 24:6
26:12 30:12 31:17
42:15 49:2,6 50:1
63:4 67:11 72:3,21

**77:16 83:16 98:18**

**ones (1)**
67:7

**only (15)**
28:5,14 30:12
32:11 33:12 46:22
48:18 54:16 58:6
65:21 70:9 85:17 86:4
96:11,14

**open (1)**
7:3

**opening (4)**
6:7,24 7:1,4

**operate (1)**
40:1

**operated (1)**
96:21

**operates (1)**
96:9

**operation (1)**
99:23

**operations (1)**
57:5

**operative (1)**
89:21

**opine (1)**
62:20

**opinion (1)**
76:24

**OPM (1)**
27:6

**opportunity (9)**
16:5 20:4 30:8
71:21 74:17 75:1
82:12 92:9 95:24

**opposite (1)**
26:8

**opposition (5)**
73:13 93:15 94:3,5,
24

**oppression (1)**
41:7

**orchestrated (1)**
52:12

**order (25)**
7:13,23 9:3,20 14:3
40:24 53:24 59:3,3
66:20 67:4 68:20
80:23 83:22 88:6 89:6
90:22,24 92:24 94:6
95:8,10 96:19 97:8,18

**original (1)**
85:12

**originally (2)**
33:16 86:10

**osert (1)**
22:5

**other (24)**
16:11,21 18:8 19:8
21:18 30:14 33:1,17
35:8 46:2,21 48:10
52:6 53:4 61:11 72:4
75:5,24 78:10 86:4
87:17,20 89:10 99:16

**others (3)**
27:18 40:8 85:6

**otherwise (8)**
22:13 24:23 27:14
28:24 29:23 31:24
89:7 96:13

**ought (1)**
53:18

**out (13)**
11:4 16:24 19:16
20:15 24:14,23 25:19
29:17 56:20 68:10
72:3 88:17 99:8

**outset (4)**
47:11 71:20 79:1
94:19

**outside (1)**
17:18

**over (16)**
8:21,21 12:3 27:18
29:16 43:7 45:17 47:9
48:21 51:18 74:24
83:3,12 90:14,15,24

**overwhelming (2)**
9:7 93:8

**overwhelmingly (1)**
5:5

**own (4)**
21:7 42:11 43:4
74:13

**owned (5)**
24:6,10 34:18
42:12 67:24

**owner (2)**
32:5,13

**owners (1)**
24:9

**ownership (1)**
34:23

**owns (3)**
43:4 44:19 66:1

---

**P**

---

**pace (1)**
96:15

**Pacific (1)**
31:18

**pack (1)**
79:21

**package (1)**
82:2

**page (13)**
21:9 31:17 37:6,10
45:12 57:14,20 61:10
87:23 88:20,23 89:10

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

92:10

**paid (3)**

57:1,3 65:15

**painstakingly (1)**

25:6

**pants (1)**

33:24

**paper (1)**

42:22

**papers (1)**

26:14

**paradoxically (2)**

25:3 83:17

**Paragraph (7)**

31:18 37:11 45:12
83:14,21 88:21 89:1

**parent (31)**

8:16,20,24 9:2
10:14 11:24 12:6
14:12 21:15 24:17,18,
20,22 25:2,5,12 28:8,
13,14 29:6,14,19,22
38:21 39:23 40:11
62:11,19 63:11,16
74:8

**part (8)**

14:22 31:6,22 34:7,
19 51:21 58:6 83:21

**parte (1)**

34:3

**participating (1)**

12:6

**participation (1)**

21:18

**particular (1)**

74:13

**particularly (5)**

60:15 72:13 76:16
92:2 96:13

**parties (38)**

10:8 12:19 16:7,11,
13 18:24 19:24 20:3,
11 22:5,12 27:19 40:4
54:8 61:11 67:15 68:7,
12 73:16 74:3,6,17
75:3,7,22 77:1 78:23
85:13,17 89:15,22
90:7,13,19 95:9,13,24
97:19

**partner (1)**

3:7

**parts (1)**

20:20

**party (15)**

7:19 8:20 11:20,24
19:19 21:21 23:9
24:18 26:5 35:7 36:3
46:22 48:17 53:18
94:8

**past (1)**

91:23

**patience (1)**

73:7

**pecuniary (1)**

74:14

**pedestrian (1)**

84:6

**pending (6)**

6:19 17:3 18:5,18
46:2 79:7

**people (5)**

26:6 48:14 59:14
69:24 99:11

**percent (10)**

5:6,6 32:4,13 34:18,
23 42:11,12 43:4 66:2

**perfect (3)**

42:20 46:14 47:6

**perfected (5)**

46:20 47:14 62:19

63:14 66:21

**perfection (1)**

68:19

**perhaps (4)**

20:16 23:8 74:7
89:9

**period (1)**

72:22

**permissible (1)**

38:24

**permission (1)**

90:4

**permit (3)**

76:14 77:13 93:21

**permitted (1)**

20:12

**personally (2)**

26:18 53:4

**petition (6)**

41:20 50:13,16,20
51:2 57:24

**petitions (1)**

81:5

**phone (2)**

4:13 92:16

**picture (2)**

56:4,8

**pictures (2)**

56:5,6

**piece (1)**

57:16

**pin (1)**

43:24

**pitch (1)**

57:16

**place (1)**

6:20

**plan (74)**

4:19 5:5,9,10,22
7:11 8:10,17 9:4,23

10:13 11:16,17,19,22,
22 14:9 15:6 16:19,23
18:5,10 21:11 24:8,8,
14 25:11,12 27:24
33:10,12,13,20 46:11
51:9 53:2 54:7 59:2
65:12,17 68:3,6,9,14
73:13 76:9 77:15 79:7
81:9,12 82:9 83:6,6,
15,21 84:7,15 85:12,
13 86:9,10 90:9 91:4,
10 92:3,5 93:1,9,11,
23,24 94:5 95:6
100:15

**Platinum (1)**

45:13

**plays (1)**

16:23

**pleading (1)**

64:12

**pleadings (3)**

26:21 43:4 45:20

**Please (5)**

3:2 73:6 80:10
84:12 91:5

**pleased (1)**

4:17

**pleasure (1)**

80:2

**pledge (3)**

63:10,12,14

**pledges (2)**

62:18 69:1

**pm (1)**

101:15

**PO (1)**

72:22

**podium (2)**

73:17 95:18

**point (18)**

Case 1:16-cv-00047-UNA    Document 1-2    Filed 01/29/16    Page 123 of 133 PageID #: 130

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

12:21 14:23 16:4
18:2 21:7 22:2 23:15,
21 24:7 27:6,6,9 58:6
60:22 68:4 87:4 88:17
101:4

**pointed (5)**
25:16,19 28:7 65:5
77:1

**points (4)**
6:5 8:8 62:3 67:6

**poke (1)**
64:17

**position (16)**
12:2,23 13:15
27:17 30:16 36:4
38:12,16 39:20 41:18,
22 53:14,21 57:21
60:11 61:10

**positions (1)**
39:19

**possible (4)**
10:19 99:21 100:5,
10

**possibly (1)**
26:17

**post-petition (1)**
65:14

**posture (2)**
13:21 61:16

**potential (6)**
11:20 26:22 46:2,
23 51:11 53:5

**potentially (1)**
52:11

**power (2)**
46:3 58:5

**practical (1)**
31:8

**practice (2)**
19:10 35:23

**precedent (1)**
53:13

**precisely (1)**
61:5

**precludes (1)**
76:7

**predicate (1)**
75:10

**predicated (3)**
16:3 29:6 51:10

**preference (1)**
51:11

**preferences (1)**
11:21

**prepackage (2)**
4:19 91:10

**prepackaged (1)**
14:9

**prepare (1)**
37:7

**prepared (8)**
7:22 70:19 78:6
79:10 92:24 95:6 97:8,
18

**pre-petition (3)**
60:8 81:8 93:4

**present (4)**
7:19 12:9 14:15
74:23

**presentation (1)**
97:4

**presented (4)**
59:6 79:24 95:16
98:5

**presenting (2)**
35:6 79:23

**presently (1)**
14:5

**preserved (1)**
21:17

**press (1)**
77:8

**pressure (2)**
72:20,20

**presumably (3)**
42:8 50:6 87:5

**presume (1)**
76:3

**pretty (4)**
36:23 38:15 53:20
89:22

**prevail (1)**
9:16

**prevent (3)**
8:15 42:16 45:17

**previously (1)**
30:6

**prior (2)**
50:6 75:12

**private (1)**
81:16

**privity (1)**
26:12

**probably (4)**
19:8 22:3 47:9
48:20

**problem (7)**
28:20,22 35:19
52:16 78:12 90:18
101:13

**problems (1)**
52:5

**procedural (1)**
52:13

**procedures (1)**
64:21

**proceed (15)**
5:12 7:22 9:13
12:12 15:19 19:1
20:20 21:3 32:3 36:6

**press (1)** 72:6 79:12 80:3,15
90:3

**proceeded (1)**
75:22

**proceeding (27)**
6:19 8:15,24 12:1
13:16 14:14,20,23,24
15:11 18:14 19:20
25:21,23 29:22 38:21
40:9 41:15,23 51:12,
13 64:8 71:14 73:20
75:4,18 96:15

**proceedings (32)**
8:17,20 12:7 13:3,
22 16:3,21 18:8,16
19:18 20:16 25:1
41:20 45:16 54:18,21
61:16 74:2,4,6,8 76:1
78:8,18,21 79:1,2,3
98:1,14,22 99:16

**process (7)**
7:14 16:23 42:19
43:2 48:7 86:6,21

**professionals (1)**
91:24

**program (1)**
89:3

**progress (1)**
86:18

**project (2)**
54:17,19

**promissory (2)**
45:1,6

**prompt (2)**
96:18 98:8

**promptly (2)**
19:18 97:9

**proof (3)**
86:14,20 87:12

**proofs (2)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

22:5,5

**proper (3)**
37:15 77:7 78:4

**properly (10)**
18:4,20 38:22
62:19 63:14 66:21
75:16,18 79:5 98:5

**property (21)**
12:1,4,4 14:22
24:11 25:20,24 26:1,4
28:1,2,4,6 34:22 42:7,
22 43:5 54:5 67:22,24
74:15

**propose (1)**
80:15

**proposed (2)**
9:19 14:5

**proposition (6)**
12:17 18:19 23:14
40:3 73:22 77:22

**prosecute (5)**
20:12 21:22 22:12
23:10 77:14

**prosecuted (1)**
72:7

**prosecuting (2)**
24:9 94:8

**protocol (1)**
8:2

**proved (1)**
66:20

**provided (2)**
53:8 85:12

**provides (2)**
38:6 93:17

**province (1)**
75:19

**provisions (1)**
82:15

**prudence (1)**

17:3

**prudent (1)**
19:11

**public (2)**
12:22 58:16

**publication (1)**
82:1

**PUC (1)**
18:15

**pull (1)**
96:12

**pump (1)**
96:12

**purchase (12)**
26:16 30:20 31:15,
17,20,24 32:3 44:13,
16 45:8 67:8,16

**purpose (3)**
17:12,20 66:16

**purposes (6)**
23:2 31:7 35:6 64:4
69:12 70:3

**pursue (2)**
7:20 32:13

**push (1)**
100:2

**put (6)**
9:15 39:21,22,23
58:12 96:3

## Q

**qualified (1)**
32:18

**quasi (1)**
22:1

**question (11)**
9:10 19:23 20:21
23:5 29:3 38:11 39:1
64:6 71:23 97:13 98:7

**questions (2)**
87:20 91:2

**quick (1)**
83:4

**quickly (2)**
83:9 99:20

**quite (2)**
47:7 58:19

**quote (1)**
21:10

## R

**race (9)**
32:15 43:20,23
44:8,9 45:10 53:5
70:13,16

**Rachel (1)**
6:14

**raise (3)**
64:10,12 67:19

**raised (8)**
10:7 11:6 19:12
48:20 64:5 74:21
75:15 85:22

**raises (1)**
67:17

**rather (1)**
83:18

**Ray (3)**
3:5 67:1 80:13

**Re (1)**
27:8

**reached (2)**
92:6 95:9

**read (5)**
21:10,20 54:16
57:23,24

**ready (1)**
9:7

**realities (1)**
96:18

**really (11)**
5:20 13:24 23:15
26:7 28:17 29:12
43:14 54:6 55:4 80:2
84:16

**reason (2)**
31:9 39:3

**reasons (4)**
19:6 42:15 59:24
83:16

**receive (2)**
63:17 85:13

**received (3)**
12:22 84:23 94:19

**receives (1)**
77:7

**receiving (1)**
61:5

**recent (1)**
60:22

**recently (1)**
76:24

**recess (6)**
72:16 73:3,4 80:6,8
101:14

**reclaim (1)**
25:23

**recognition (2)**
60:20 77:23

**recognize (7)**
7:13 23:6,7 36:13
40:4 76:23 98:11

**reconvene (1)**
80:1

**record (18)**
31:3,6 34:7 51:6
67:1 71:14 73:18
77:11 80:18 83:1 84:4

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

89:14 92:21 93:2
94:16,23 95:5 97:5

**recover (1)**
44:21

**recovery (3)**
28:15 62:14 63:17

**redress (1)**
74:16

**reference (2)**
51:2 88:21

**referencing (1)**
39:3

**referred (3)**
35:4 48:1 60:8

**refers (1)**
45:13

**reflecting (2)**
80:24 94:12

**reflects (2)**
29:8 94:16

**refused (1)**
22:12

**reg (1)**
69:23

**regard (1)**
76:20

**regarding (4)**
8:7 32:2 68:18 74:8

**regards (1)**
101:4

**register (4)**
42:4,23 43:1 47:2

**registered (2)**
65:6,7

**regroup (1)**
11:4

**regulation (1)**
52:11

**regulations (1)**
76:4

**regulatory (2)**
18:15,16

**reiterate (1)**
58:24

**relate (4)**
27:2 77:14 84:17
90:9

**related (10)**
15:19 22:2,14 26:4
32:14 33:14 39:19
44:16 45:24 90:22

**relates (5)**
44:13 45:10 60:16
72:11,14

**relating (2)**
83:14 89:1

**relationship (2)**
26:11 75:3

**release (8)**
24:9,21,23 25:11,
11,15 68:6 85:12

**releases (6)**
24:12,14,15,19
25:10 68:8

**releasing (1)**
27:13

**relevant (11)**
13:16 21:6 24:7
29:11 69:14 70:19
77:2 82:14,16 94:22
95:3

**relied (3)**
47:16,17 58:15

**relief (9)**
8:14 9:4 15:4,12,18,
19 38:23 58:19 92:23

**relies (1)**
58:16

**rely (1)**
83:22

**remain (1)**
72:19

**remains (1)**
74:10

**remedy (2)**
11:14 40:11

**remember (1)**
49:1

**remind (1)**
14:7

**remote (1)**
62:13

**removal (1)**
88:24

**removed (2)**
26:13 40:16

**renew (1)**
7:6

**reorganization (3)**
76:9 78:20 82:9

**reorganize (1)**
70:10

**reorganized (2)**
54:14 89:2

**repeat (1)**
77:5

**reply (2)**
6:18 81:18

**reports (1)**
52:2

**represent (1)**
42:22

**representation (2)**
35:21 91:15

**representations (1)**
95:20

**representative (1)**
41:17

**request (14)**
7:6,17,23 11:3 13:3,

4 16:1,19 59:1 76:8
79:10 86:9 91:9 95:7

**requested (5)**
38:23 58:19 59:1
89:18 92:24

**requesting (1)**
82:8

**require (5)**
76:5 82:19 96:2,18
99:2

**required (8)**
7:11 9:3 10:13 38:7,
17 39:16 47:6 69:8

**requirement (1)**
74:11

**requirements (5)**
30:3 93:10,18 95:2
96:2

**requires (4)**
12:11 17:3 42:23
74:13

**researched (1)**
19:15

**reserve (2)**
20:7 71:16

**reserved (2)**
5:18 21:17

**reserving (1)**
19:22

**resolution (6)**
21:13 38:3,3,5,17
91:16

**resolve (1)**
22:7

**resolved (2)**
85:24 95:12

**resources (1)**
17:5

**respect (20)**
10:18 11:15 18:24

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

20:5 30:18 37:13
58:18 60:17 63:19
64:5 77:21 85:8 89:17
91:8 92:2,23 93:24
95:10 98:15 99:6

**respectfully (3)**
10:10 19:1 29:24

**respectively (1)**
81:24

**respond (2)**
30:8 63:21

**response (3)**
10:15 28:11 43:18

**rest (1)**
40:12

**restraining (1)**
14:3

**restructuring (23)**
4:23 12:12,13,14
14:5,8,13 34:12,14,19
37:14 38:18 52:1,4,5
57:16 58:13,14 72:23
78:16 83:14,20 97:20

**result (3)**
6:17 11:18 63:15

**retaliatory (1)**
33:17

**retired (1)**
58:9

**returned (1)**
32:1

**reverse (2)**
55:4,9

**review (6)**
17:21 20:4 54:20
78:20 82:13 92:9

**reviewed (1)**
94:19

**revised (1)**
80:23

**revisions (2)**
37:22 92:7

**revisit (1)**
62:4

**revolving (2)**
5:7 66:11

**Richard (2)**
4:6 81:16

**riding (1)**
29:19

**right (37)**
4:11 15:21,21 21:2
23:9 30:10 32:2 35:11
43:12,23 44:9 48:24
49:24 50:1,4 51:16
53:9,23 54:9,23 55:8
56:7 58:2 59:22 64:14
65:10 71:6,16 73:2
84:22 86:12,20 87:12
91:1 92:18,19,21

**rights (12)**
21:16,22 22:7,13
25:2,5,24 32:12 51:15
53:5 75:24 77:9

**rigs (1)**
31:19

**rise (4)**
3:1 73:5 80:9 91:14

**risk (1)**
17:24

**risks (1)**
14:9

**Ronit (1)**
3:7

**Royal (1)**
7:1

**RSA (3)**
69:22 90:7,13

**Rue (1)**
48:19

**Rule (3)**
54:8 72:1,5

**ruled (1)**
98:15

**rules (7)**
32:20,21 36:10,18
52:23 64:20 76:4

**ruling (5)**
5:18 7:8 93:2 98:17
100:13

**rulings (1)**
50:5

**run (5)**
14:24 15:8,14
72:23 96:20

**running (2)**
33:24 47:1

**runs (1)**
15:15

**Ryan's (1)**
48:23

## S

**said (15)**
8:21 17:4 19:7,10
29:7 42:13 47:15
54:22 60:13 62:24
64:14,15 77:4 79:1
98:3

**sales (3)**
17:19,20 99:7

**same (12)**
10:24 21:23 42:24
45:18 47:17 51:21
61:10 64:20,21 68:7,
14 92:10

**Sarkisi (1)**
85:22

**satisfied (6)**

37:2 75:8 92:22
93:16,19 96:17

**satisfy (2)**
93:10,18

**save (3)**
13:18 28:16 59:8

**saw (4)**
19:23 37:9 41:10
64:15

**saying (2)**
21:23 65:13

**scenario (1)**
43:15

**scheduled (5)**
6:22 7:4 17:14 78:8
87:5

**schedules (1)**
48:12

**Schrock (76)**
3:3,4,5,21 4:2,6,12,
16 5:15 8:5,6 9:11,14,
17,21 10:1 13:24
15:21 16:15 19:4,14
20:24 21:4 22:23 23:1,
4,11 29:4,10 31:5
34:8 49:3,19 50:5,8
53:20 57:10,12 60:3
62:4,23 63:22,23 66:3,
23,24 67:1 71:10,24
78:24 79:12,17,20
80:4,7,11,12,13,22
81:2 82:21 83:2,24
97:13,21 98:24 99:9,
19 100:4,10,14,18,21
101:1,8,10

**scope (1)**
25:14

**Scottsdale (1)**
57:19

**seat (1)**

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 127 of 133 PageID #: 134

Bankruptcy Court for the District of Delaware                                    Transcript Of Electronic Recording
In Re: Offshore Group Investment Limited, et al.                                                 January 14, 2016

33:24

**seated (3)**
3:2 73:6 80:10

**SEC (3)**
52:2 56:13 58:17

**second (5)**
33:12 50:1 59:1
63:13 84:23

**secondarily (1)**
24:1

**secondary (1)**
23:22

**Section (10)**
37:20,24 38:5,5,6
89:8 93:19 94:18,21,
22

**secured (14)**
42:24 46:23,24
60:8,9 62:2,10,23
63:3,4,6 64:3 66:19
69:2

**security (5)**
47:13 64:6,20,22
65:1

**seek (2)**
15:11 24:9

**seeking (6)**
21:22 25:22 26:5
67:19 70:17 86:21

**seem (1)**
89:22

**seemed (1)**
33:16

**seems (3)**
36:4 68:5 75:13

**segue (1)**
90:2

**Send (2)**
90:14,15

**sense (1)**

5:19

**separate (2)**
40:24 45:7

**September (2)**
56:14 57:23

**serve (1)**
17:11

**service (2)**
57:6 81:23

**Services (5)**
4:8 27:7 30:21
42:17 47:2

**set (2)**
35:8 86:13

**Seth (2)**
4:2 81:18

**Seventh (1)**
44:5

**several (1)**
31:16

**sexier (1)**
18:12

**Shannon (2)**
8:2 55:14

**share (16)**
26:16 30:20 31:15,
17,20,24 32:3 42:21
44:13,16 45:8 67:8,16
69:1 97:14 99:13

**shareholder (21)**
23:19,19 29:21
38:7,16 39:16 41:7,8
43:10,11,11 51:17,18,
20,23 52:24 73:23,23,
24 76:18,18

**shareholders (10)**
12:22 28:9 38:9
39:8,15 51:16 52:3,6,
9 58:15

**shareholders' (1)**

51:15

**Shares (15)**
7:13 34:18 42:11,
13,14,17,21 44:17
45:18 46:21 59:23
64:22 65:2 67:12,23

**ship (3)**
55:19,22 56:9

**shipbuilders (1)**
49:2

**ships (3)**
55:15 56:5,6

**show (2)**
47:12 59:7

**showed (1)**
45:19

**showing (2)**
46:19 58:3

**shown (3)**
46:12 47:1 59:20

**shows (1)**
62:13

**sides (1)**
39:11

**signature (1)**
31:11

**signed (6)**
12:15 14:12 26:18
31:14 42:9 72:23

**significant (5)**
16:6 20:2 28:18,19
76:11

**Silfen (8)**
60:3,5,6 61:17
91:19,20,21 92:18

**silly (1)**
40:21

**similar (1)**
69:5

**similarly (1)**

97:5

**simply (5)**
20:8 26:3 33:23
67:21 75:4

**sister (1)**
83:19

**site (1)**
43:24

**situated (1)**
27:19

**situation (2)**
74:23 98:18

**slightly (1)**
84:5

**Smith (3)**
41:14,16 51:1

**Smith's (1)**
57:24

**solicitation (4)**
4:10 81:8 82:2 93:5

**Solutions (2)**
4:10 81:14

**solvent (1)**
29:9

**somebody (2)**
23:3 26:2

**somehow (1)**
28:3

**something (6)**
25:4 26:10 58:11
69:5,21 100:19

**sometimes (1)**
16:12

**somewhat (1)**
31:12

**soon (2)**
10:19 74:7

**sophisticated (3)**
52:7,17 58:13

**sorry (4)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

13:4 45:2 47:3 57:1

**sort (1)**

86:18

**sought (2)**

8:14 45:16

**sounds (1)**

90:16

**sovereign (1)**

22:4

**special (3)**

38:2,5,16

**specific (1)**

89:1

**specifically (6)**

9:1 21:8 31:21
33:10,13 45:9

**speculation (2)**

11:18 22:20

**speculative (3)**

15:3 27:2 28:10

**speed (3)**

16:13,17 48:14

**speedily (1)**

3:12

**spring (2)**

32:24 33:6

**Ss (1)**

38:6

**stabilize (1)**

96:19

**stake (1)**

83:10

**stakeholder (1)**

4:22

**stakeholders (2)**

94:14 101:11

**stand (6)**

61:9 65:20 72:16
73:3 80:6 101:14

**standard (3)**

24:12 89:22,24

**standing (68)**

5:18,21,24 7:21,22
8:4 9:8,16 19:2,13,19
20:1,6,6,7,10,11,18,
22 21:3,6 22:14 23:2,
15 26:3,6 27:3,8 28:4
29:5 30:4,7,18 43:22
47:16 53:7,9,11,17,23,
23 60:1,12 62:8 63:19
67:9,11 68:1 70:3,14,
22 71:4,6,23 72:5,8,
14,19 73:11,19 74:11,
11,12,13 75:10 82:13
94:9 98:16

**standpoint (1)**

7:17

**stands (1)**

36:24

**starkly (1)**

96:23

**start (2)**

30:19 73:21

**started (1)**

38:20

**starting (1)**

77:2

**state (1)**

37:6

**stated (4)**

22:11 44:7 53:20
93:14

**statement (24)**

3:18 4:18 11:13
12:20 21:11 33:4 35:4,
14,15 36:2 42:9 46:11
47:4,12 48:11 49:23
59:16 64:2 74:14 81:8,
11 93:14,17,20

**statements (9)**

12:8 17:6 35:6,16
36:17 52:3 64:2 69:11,
20

**States (12)**

3:11 7:13 11:12
12:16 36:15 38:1,13
57:20 58:9 84:24
91:14 94:13

**statutory (3)**

82:15 93:10 95:2

**step (2)**

26:13 71:16

**steps (3)**

40:10,16 99:4

**still (7)**

10:5 20:15 26:12
58:24 59:21 63:6,15

**stipulated (1)**

68:20

**stock (1)**

14:17

**stockholders (2)**

62:7,7

**stole (1)**

67:3

**stood (1)**

78:24

**straight (1)**

96:6

**Street (1)**

54:17

**stricken (3)**

20:18 60:19 94:6

**strike (2)**

61:4 77:12

**stroke (1)**

47:19

**strong (2)**

38:15 57:22

**strongly (2)**

69:20 70:2

**structure (1)**

83:17

**structured (2)**

14:8 65:17

**structures (1)**

37:16

**stuff (2)**

55:13,16

**Su (67)**

5:17,23 6:15 11:6
13:22 20:10 22:16
23:13,22,24 24:2,4,14,
20,22 25:7,16,22
26:14,17,23 27:10,13,
16 28:1,3 29:1 30:4,
16 31:13,23 32:6,11
33:3,8,11,20,22 37:22
44:13 45:2,17,24
47:15 48:17 52:7 53:3,
7,11 60:1 62:14 63:16
65:20,23 66:1 67:12
70:4 73:11,11,19,22
75:9 76:10,16,17 77:6,
13

**subject (12)**

12:3 18:5,14 21:23
43:6 45:15 51:11 54:1,
5 73:14 74:2 78:20

**submission (1)**

21:12

**submissions (6)**

16:6 20:3 23:7
36:17 72:12 78:11

**submit (1)**

22:8

**submitted (8)**

34:7 36:3 82:10,11
93:6 94:1,2,5

**subsidiaries (5)**

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 129 of 133 PageID #: 136

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

39:9 41:18 55:7
56:23 59:19

**subsidiaries' (1)**
43:20

**subsidiary (2)**
39:21 59:21

**substantial (4)**
74:3 79:8 94:1,20

**substantially (2)**
5:10 75:14

**substantive (3)**
21:22 22:7 68:15

**substantively (1)**
68:7

**succeed (2)**
100:17 101:6

**successful (2)**
4:23 45:20

**sued (1)**
67:15

**sufficient (6)**
5:8 75:1 76:14 93:9,
17 95:23

**suggested (2)**
8:1 11:8

**suggesting (1)**
23:24

**suggestion (1)**
9:6

**Sullivan (2)**
4:9 81:13

**Sullivan's (1)**
93:5

**summary (1)**
49:10

**summons (5)**
13:10 34:4,7,11
43:16

**superior (1)**
46:7

**supplement (1)**
5:10

**support (25)**
3:17,23 4:4,8,22
5:9 8:16 14:5,11,13
36:3 47:13 52:21,22
59:11 64:24 79:9 81:5,
7,9,11,16,18 82:7 93:8

**supported (3)**
5:5 46:9 51:1

**supporting (3)**
13:7 47:16 49:23

**supposed (3)**
39:22,23 52:14

**Supreme (1)**
45:21

**Sure (18)**
9:11 13:11,14
30:24 33:15 35:23
37:23 45:5 49:11,13
63:23 72:15 77:6
79:20 80:21 90:21
94:13 100:7

**survive (1)**
70:11

**Su's (8)**
13:13 21:7,10
25:19 34:5 44:12,21
47:3

**susceptible (1)**
74:16

**sworn (3)**
36:10 37:2,3

**sympathetic (1)**
77:5

**system (2)**
36:22,22

**T**

**tabulation (1)**
81:14

**tacit (2)**
52:21,22

**tactic (2)**
8:13 11:2

**tactics (1)**
30:1

**Taiwan (1)**
55:21

**taking (3)**
82:22 89:16 100:12

**talk (3)**
22:21 58:10 62:9

**talking (4)**
48:21 67:23 68:8
76:17

**task (1)**
84:6

**technical (3)**
84:17,20 90:5

**technically (2)**
7:3 12:8

**Technologies (1)**
47:20

**tempering (1)**
100:13

**temporary (1)**
45:20

**ten (2)**
46:24 91:23

**tensions (1)**
40:4

**term (2)**
66:17 85:13

**terms (3)**
12:14 29:5 68:13

**terribly (2)**
18:11,13

**testament (1)**

**4:24**

**testimony (7)**
37:4 60:14,15,19,
21,24 95:18

**Texas (11)**
25:17,18 41:4
45:21 46:17,18 64:16
67:14,14 70:14,15

**Thanks (2)**
20:24 80:12

**their (22)**
3:17 12:1 14:16
20:12 27:17 39:15,21,
23 41:1,12 46:14,20
69:24 73:12 76:9 82:9
91:9 92:23 94:17 96:1
97:2 101:11

**themselves (3)**
20:17 27:18 76:13

**There (97)**
5:3 6:19 7:3 8:3
10:3,4,4,7,13,19 14:9
16:21 17:9 20:15
24:13,16,19,21,23
25:10,12,17 26:12,12
28:4,18 30:14 32:22
33:1 34:11,17 38:11,
12,21 40:7 41:4 43:22
46:10,11 47:5,13 48:7,
13,14,15 51:17,19
53:13,17 54:5,7,11,21
55:12 58:2,2 59:11
60:24 62:9 64:1,15
65:9,15 67:14,16 68:5,
5,14,15,19,24 70:5,5,
6,15 71:15 72:5,8,21
74:6 77:21 78:8,17
80:5 86:18 89:15 91:2
92:12,14 95:11 96:9,
14 98:1,4,14 99:5

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

100:20

**therein (1)**
35:8

**they (80)**
8:10 12:14,24,24
14:23 15:2,4,18,18,19,
23 18:24 20:7 22:13
23:6 25:6 29:18 32:20,
21 33:10,13,19 35:17
37:17,18 38:13 39:7,
13,15,21,22,23,23
40:9 42:13,13 44:1,7
45:19,20 46:8,13,13,
13,19 51:23,24 52:1,4
56:8,22 58:9,10,10,12,
14 59:10 61:14,20
62:15 64:16,21,22
65:12,13,17,18,19,20,
24 69:16 70:9 74:8
76:3 77:14 83:1 88:21
89:22,24 98:21

**thing (2)**
25:6 70:9

**things (3)**
5:20 15:17 99:16

**think (71)**
5:19 6:2 7:24 9:12
10:23 15:3,12,17
16:17 17:2,3,24 18:19
19:11,21,21,24 20:4,
19 22:13 25:7 26:8
27:9,21,23 28:1 29:7,
10,15 31:2 35:16
36:15 40:7,15 46:17
48:20 49:16 53:20
54:18,23 55:9,10,23
61:12,14 62:6 64:9
70:23 71:9,13,15
73:16,21 74:21 77:1,
20,24 80:22 84:19

85:6,19,22,23 87:18
88:1 92:10 96:4 97:3,
15 98:10 99:20

**third (3)**
7:19 26:5 99:4

**thorough (1)**
82:11

**thoroughly (1)**
73:16

**though (2)**
38:20 52:16

**thought (2)**
10:6 30:13

**three (4)**
21:8 37:10 47:24
53:14

**threshold (6)**
19:3 40:2 71:20
73:8 74:11 93:12

**throughout (2)**
24:24 95:20

**thrown (1)**
69:24

**thunder (1)**
67:3

**Thursday (1)**
11:3

**Tim (1)**
91:13

**times (4)**
17:5 29:8 33:6
54:22

**timing (6)**
48:18,22 53:1 97:4
99:14,18

**tirelessly (1)**
91:24

**today (33)**
3:7,16 4:17 6:4 8:8,
18 9:13 10:13 12:10

14:16 18:7 42:13
44:18 46:12 47:1
59:20 63:20 69:9
70:21 73:17 75:13,15
76:8 77:5 78:5,20
79:24 85:10 89:15
92:8 97:10 100:12
101:9

**today's (1)**
16:2

**together (4)**
5:21,22 58:12 96:3

**told (2)**
15:17 69:4

**tomorrow (3)**
17:16 78:17 83:7

**took (3)**
38:11 53:14 68:10

**touched (1)**
53:16

**touches (1)**
85:23

**towards (1)**
3:12

**track (1)**
63:15

**tradition (1)**
30:12

**transaction (7)**
26:19 83:20 89:17
90:18,19,22 96:3

**transactions (4)**
16:14 83:14 92:4
96:1

**transcripts (1)**
19:9

**transfer (3)**
42:14 44:17 56:22

**transferred (4)**
7:14 34:19 59:23

65:24

**transferring (3)**
31:15 42:17 83:19

**transparency (1)**
48:8

**transparent (1)**
44:20

**transpiring (1)**
52:8

**treat (2)**
27:18 36:1

**treated (4)**
24:3 25:14 36:5
53:4

**treating (1)**
37:3

**treatment (2)**
75:24 77:7

**tremendous (1)**
5:3

**trial (1)**
77:22

**tried (2)**
25:6 43:13

**trouble (1)**
27:22

**true (2)**
26:17 36:12

**trust (1)**
45:17

**Trustee (11)**
3:11 14:15 60:10
68:17 84:24 86:9 89:4,
13 90:7 91:14 94:13

**trustees (1)**
91:22

**truth (1)**
35:7

**try (6)**
11:5 22:7 24:24

Case 1:16-cv-00047-UNA   Document 1-2   Filed 01/29/16   Page 131 of 133 PageID #: 138

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

67:5,6 77:20

**trying (11)**
29:22 33:24 40:15,
19 45:10 49:6 52:23
53:6 90:8 96:21 98:11

**Tuesday (1)**
6:24

**tumult (1)**
96:10

**turn (2)**
6:10 83:3

**turning (3)**
72:9 87:23 90:11

**Tweed (1)**
62:1

**two (10)**
15:16 37:6 42:12
62:3 68:23 72:23
84:16 85:5,7 88:17

**two-minute (2)**
79:19 80:6

**type (2)**
11:4,5

**typical (1)**
52:9

**U**

**UCC (4)**
46:16,17,18 64:17

**UCC-1s (1)**
64:15

**ultimately (1)**
62:6

**Um (5)**
17:17 35:22 49:24
54:15 98:11

**uncertainty (2)**
11:18 96:9

**unclear (1)**

46:17

**uncontested (1)**
80:16

**uncontroverted (1)**
14:10

**under (23)**
7:12 25:11 28:22
36:10 46:20 47:7 53:9
54:3,8,20 59:17 61:9
66:11 68:22 69:3,8,22
72:20 92:5 93:18
94:17,21 95:8

**underlying (2)**
7:16 62:8

**understand (14)**
10:21 19:12 41:2,
11 42:19 48:4,6 61:4
65:3 75:2 88:2 90:1,
19 100:5

**understanding (4)**
27:23 61:15 89:23
92:7

**understood (1)**
9:1

**undisputed (1)**
23:17

**unimpaired (2)**
65:12 86:11

**uninformed (1)**
52:8

**United (6)**
3:11 7:12 36:15
84:24 91:14 94:13

**unless (1)**
99:1

**unopposed (1)**
94:11

**unprecedented (1)**
96:23

**unrelated (1)**

33:3

**unsecured (10)**
63:6,16 65:9,10,11,
16,19,21,22 86:11

**unspecified (1)**
27:1

**until (2)**
7:7 59:23

**unusual (1)**
39:18

**up (30)**
14:2 16:12,16 19:9
28:23 29:19 32:24
34:1,3,24 37:21 38:2
41:14 46:23 48:14
50:12,15 51:2 56:12
63:7,10 65:24 69:15
78:24 79:21 84:10
86:13,23 96:12 97:16

**updated (2)**
12:22 52:2

**updating (1)**
88:13

**up-drilling (1)**
31:19

**upon (10)**
16:3 29:6 69:17
73:18 77:11 92:21
94:7 95:5 97:3,7

**urgency (1)**
17:9

**use (1)**
61:1

**using (3)**
27:17 28:2 51:10

**V**

**vacant (1)**
33:5

valid (2)
64:7 68:24

**Validating (2)**
4:11 93:7

**validity (1)**
68:21

**valuable (3)**
31:16,16 45:13

**Valuation (2)**
4:7 29:12

**value (6)**
17:9 45:7 62:24
63:7,10,15

**Vantage (85)**
8:16,20,23 9:2
11:24 12:6,13,18,23
13:2,5,6 14:3,18,19,
21 15:5 21:14 24:17,
18,20,22 25:2,5 28:8,
13,14 29:14,14,19
30:21 32:8 34:15,15,
18,23 37:12,15 38:8
39:8,13 40:23 41:1,17,
22,24 42:10,12 43:4
44:13,14,18,22 45:16,
19 46:5 51:10,22
52:22 56:20 57:1,2,3,
7,16 58:1,3,4,6,7,8
59:18,21 62:11,19
63:11 64:7,10,20 65:7
66:1 67:12,24 69:21
70:8

**Vantage's (6)**
11:16 12:11 34:22
38:9 42:6 57:21

**various (2)**
82:6 94:14

**venue (1)**
21:16

**version (1)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.

Transcript Of Electronic Recording
January 14, 2016

88:9

**versus (1)**
54:7

**vessel (1)**
45:14

**vessels (4)**
31:16,21 32:16,19

**vested (1)**
34:23

**view (2)**
16:4 18:2

**vindicate (1)**
98:12

**violated (1)**
37:18

**violating (1)**
69:22

**virtue (1)**
38:2

**voice (1)**
53:19

**void (2)**
32:1,4

**voluminous (1)**
44:12

**voluntarily (2)**
38:2,18

**voluntary (3)**
12:19,20 34:15

**vote (5)**
52:24 65:11,17
93:9,22

**votes (1)**
81:9

**voting (2)**
64:3 81:14

**W**

**walk (4)**

68:13 80:20 82:19
84:20

**walking (2)**
84:6 88:3

**Wall (1)**
54:17

**Walsh (1)**
19:11

**Walsh/Judge (1)**
8:1

**wanted (4)**
15:18 66:18,22
92:11

**wants (4)**
23:3,9 44:18 77:6

**warranted (1)**
97:5

**watershed (1)**
47:20

**Watkins (1)**
66:10

**way (10)**
20:20 21:18 24:16
28:14 37:16 70:7 72:3
82:18 85:20 86:10

**ways (1)**
52:9

**wear (1)**
59:15

**wearing (1)**
40:23

**week (6)**
16:5 38:20 66:20
72:24 74:24 100:2

**week's (2)**
73:15 75:1

**weight (1)**
27:22

**Weil (4)**
3:5 67:1 80:13 84:3

**Welcome (3)**
3:20 10:16 60:3

**Wells (15)**
41:19 46:23 47:1
50:18 52:15,19,20
59:9 60:4,7,17 66:15
89:12,17 92:1

**weren't (3)**
63:4,6 65:18

**Western (1)**
54:19

**whatever (1)**
19:8

**what's (16)**
12:4 22:10 34:24
43:14 44:3 47:6 56:13
58:16 60:7 65:21 69:8
83:10 89:20 98:3,13
99:18

**W-H-E-T (1)**
27:8

**whole (2)**
14:23 55:10

**willing (1)**
86:22

**Wilson (1)**
43:24

**win (1)**
56:7

**winding (4)**
41:14 50:12,15 51:2

**windup (4)**
12:19,20 34:15
38:18

**wing (1)**
32:24

**wise (1)**
99:14

**wish (4)**
18:24 79:15 92:20

97:23

**wishes (2)**
82:5 91:8

**within (3)**
17:1 58:20 85:13

**without (14)**
10:11 11:19 21:17,
17 26:23 33:23 49:17
51:14 52:15 53:2 72:6
94:3,23 98:20

**witness (5)**
3:17,23 4:3 61:8
71:7

**witnesses (3)**
6:8,8 72:10

**woefully (1)**
62:24

**word (1)**
63:22

**wordsmithing (1)**
95:12

**work (6)**
4:24 5:2,4 11:17
68:16 90:8

**worked (1)**
40:22

**working (5)**
3:12 59:9 60:23
61:1 91:24

**World (1)**
66:10

**worried (1)**
88:15

**wound (1)**
38:2

**wreak (1)**
29:23

**write (1)**
76:24

**written (1)**

Bankruptcy Court for the District of Delaware
In Re: Offshore Group Investment Limited, et al.
Transcript Of Electronic Recording
January 14, 2016

52:21

## Y

**year (1)**
51:18
**years (1)**
33:6
**Yep (1)**
84:14
**Yesterday (1)**
6:24
**York (2)**
68:22,24
**yourself (1)**
54:1

## 1

**1 (2)**
30:23 49:14
**10 (1)**
58:1
**100 (9)**
5:6 32:4,13 34:18,
23 42:11,12 43:4 66:2
**105 (1)**
53:9
**11 (6)**
21:19 26:15 28:12,
13 81:5 91:10
**1123 (2)**
82:16 94:22
**1125 (1)**
93:19
**1129 (3)**
82:15 94:18,21
**12 (1)**
47:9
**12:55 (1)**

101:15
**12B (1)**
54:8
**12th (3)**
10:22 42:10 59:21
**14 (1)**
57:15
**160 (1)**
43:24
**168 (1)**
81:10
**169 (2)**
43:24 81:12
**17 (1)**
81:6
**170 (1)**
81:15
**181 (2)**
81:17,20
**1992 (1)**
44:1
**1st (1)**
72:24

## 2

**2 (3)**
13:13 34:5 45:12
**2011 (1)**
38:12
**2013 (1)**
37:22
**2015 (3)**
38:13 56:14 57:23
**24/7 (1)**
92:1
**250 (1)**
57:22
**25th (1)**
12:18

**29 (2)**
56:14 57:23

## 3

**3 (1)**
49:22
**3:30 (2)**
6:20 7:5
**33 (1)**
27:8
**37 (2)**
88:20,23

## 4

**4 (2)**
37:22 58:5
**400 (1)**
58:10
**438 (1)**
27:9

## 5

**5 (1)**
45:2
**50 (1)**
89:11
**503 (1)**
89:8

## 6

**6 (2)**
42:8 50:13
**60 (3)**
38:5,6,6

## 7

**7 (5)**
35:1,3,9 42:3 50:1
**7.1 (2)**
86:8,24
**75 (1)**
81:22
**7th (1)**
56:22

## 8

**8 (4)**
45:12 56:12,13 57:9
**81 (1)**
81:23
**8K (1)**
56:13

## 9

**90 (2)**
37:20,24
**90B (1)**
38:2
**96 (1)**
81:22
**965 (1)**
43:24
**97 (1)**
81:23
**98.88 (1)**
5:6